1

2

3

4

Jeffrey N. Pomerantz (CA Bar No. 143717)
Jeffrey W. Dulberg (CA Bar No. 181200)
**PACHULSKI STANG ZIEHL & JONES LLP**
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
E-mail:jpomerantz@pszjlaw.com; jdulberg@pszjlaw.com

FILED & ENTERED

APR 14 2011

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** egarcia    **DEPUTY CLERK**

5

6

Conflicts Counsel for Contessa Premium Foods, Inc.,
Debtor and Debtor-in-Possession

7

8

9

10

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

11

12

13

In re:

CONTESSA PREMIUM FOODS, INC.[1]

                                    Debtor.

Case No.: 11-13454 (PC)

Chapter 11

**STIPULATED FINAL ORDER (A)
AUTHORIZING THE DEBTOR'S USE OF
CASH COLLATERAL,
(B) GRANTING ADEQUATE PROTECTION
TO WELLS FARGO BANK, NATIONAL
ASSOCIATION, AND (C) GRANTING
OTHER RELATED RELIEF**

14

15

16

17

18

19

20

21

<u>Final Hearing</u>
Date:   April 13, 2011
Time:   9:30 a.m.
Place:  Courtroom 1539
         Edward R. Roybal Federal Bldg.
         255 East Temple Street
         Los Angeles, CA 90012
Judge:  Hon. Peter H. Carroll

22

23

24

25

26

        This matter came before the Court on the emergency motion (the "<u>Motion</u>") of Contessa

Premium Foods, Inc. (the "<u>Debtor</u>") for interim and final orders pursuant to 11 U.S.C. §§ 105, 361,

362, 363, 364, 503 and 507 and Fed. R. Bankr. P. 2001, 4001 and 9014 and Bankr. C.D. Cal. L.R.

4001-2, (i) authorizing the use of "cash collateral," as such term is defined in section 363 of title 11,

27

28

[1] The Debtor is a California corporation, Fed. Tax I.D. No. 33-0020606.  The Debtor's address is 222 West 6th Street,
San Pedro, California 90731.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

United States Code, (the "Bankruptcy Code"), in which the Secured Lender (as defined below) has an interest, the ("Cash Collateral"), (ii) authorizing the issuance of postpetition documentary and import letters of credit for the limited purpose of acquiring inventory, (iii) providing adequate protection to the Secured Lender for, among other purposes, any diminution in value of the Secured Lender's interests in the Prepetition Collateral (as defined below), including the Cash Collateral, (iv) providing adequate protection to GE Capital Public Finance, Inc. ("GEPF") for any diminution in value of GEPF's asserted interests, secured or otherwise, in certain equipment financed by the IDB[2] and (v) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Order, and (v) requesting, pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") and the Central District of California's Local Rules of Bankruptcy Procedure, that a final hearing (the "Final Hearing") be held before this Court to consider entry of a final order approving (a) the Debtor's use of Cash Collateral and (b) the grant of adequate protection to the Secured Lender, all on a final basis (the "Final Order") as set forth in the Motion.[3]

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1) and Bankr. C.D. Cal. L.R. 4001-2, due and sufficient notice under the circumstances of the Motion and the Final Hearing having been provided by the Debtor as set forth in paragraph H below, and the interim hearings having been held on January 31, 2011, March 9, 2011 and March 30, 2011 (the "Interim Hearings"), and the Final Hearing having been held on April 13, 2011 with the appearances of all interested parties noted in the record of the Interim and Final Hearings, and upon consideration of all of the pleadings filed with this Court; and any objections to the relief requested in the Motion that have not been resolved having been overruled with respect to this Final Order; and upon the record made by the Debtor at the Final Hearing, and after due deliberation and consideration and good and sufficient cause appearing therefor:

---

[2] That certain Loan Agreement among GEPF, as lender, California Municipal Finance Authority, as Issuer, and Debtor, as borrower dated as of June 1, 2007, together with all schedules, UCC financing statements, and other related documents, shall be referred to as the "IDB."

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Prepetition Credit Agreement (as defined herein), as applicable.

LEGAL_US_W # 67199679.13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

**IT IS HEREBY STIPULATED BY THE UNDERSIGNED PARTIES:**

A.      On January 26, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under the Bankruptcy Code commencing this chapter 11 case (the "Case").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor has retained possession of its property and is authorized thereby, as debtor-in-possession, to continue the operation and management of its business.  No request has been made for the appointment of a trustee or examiner and none has been appointed.

B.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 4001(b), (c) and (d).  Venue of this Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      On February 8, 2011, the Office of the United States Trustee for the Central District of California (the "U.S. Trustee") appointed the Committee of Creditors (the "Committee") in this Case [Docket No. 65].

D.      After consultation with their attorneys and financial advisors, but without prejudice to the rights of the Committee, as set forth in paragraph 15 below, the Debtor admits, stipulates, acknowledges and agrees as follows (collectively subparagraphs (i) through (v) below shall be referred to herein as the "Debtor's Stipulations"):

(i)      Prepetition Credit Agreement.  Pursuant to that certain first lien credit agreement dated as of June 1, 2009 (as amended, supplemented, amended and restated or otherwise modified, the "Prepetition Credit Agreement"), by and between the Debtor and Wells Fargo Bank, National Association (the "Secured Lender"), the Secured Lender made loans and provided letters of credit and other financial accommodations to the Debtor.  The Prepetition Credit Agreement provides for a revolving credit facility ("Revolving Facility") in the aggregate principal amount of $17,050,000.  As of the Petition Date, the Debtor's obligations under the Prepetition Credit Agreement consisted of the outstanding Revolving Facility in the aggregate principal amount of $17,050,000, plus any accrued and unpaid

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

1   interest, fees, costs and expenses thereunder, (collectively, the "Prepetition Secured

2   Obligations").

3          (ii)     Prepetition Security Agreements.   Pursuant to (i) that certain Security

4   Agreement (Equipment) dated as of September 8, 2008 by and between the Debtor and the

5   Secured Lender, (ii) that certain Continuing Security Agreement (Rights to Payment and

6   Inventory) dated as of June 1, 2009 by and between the Debtor and the Secured Lender, and

7   (iii) the grant of security interests contained in section 1.4 of the Prepetition Credit

8   Agreement (each as amended, supplemented, amended and restated or otherwise modified,

9   the "Prepetition Security Agreements" and together with the Prepetition Credit Agreement

10  and all related documents, the "Secured Financing Documents")[4], between the Debtor and

11  the Secured Lender, the Debtor granted to the Secured Lender, valid and perfected first-

12  priority continuing liens on and security interests in (the "Prepetition Liens") substantially all

13  of the Debtor's inventory, accounts receivable, goods, certain machinery, equipment, and

14  general intangibles, including all proceeds thereof, all as more particularly described in the

15  Prepetition Security Agreements (collectively, the "Prepetition Collateral").[5]

16         (iii)    Validity and Priority of Prepetition Liens, Claims, and Prepetition Secured

17  Obligations.   The Prepetition Liens are valid, binding, enforceable, and perfected liens that

18  have priority over any and all other security interests in the Prepetition Collateral except for

19  certain liens permitted under Section 5.7 of the Prepetition Credit Agreement (the "Permitted

20  Liens") (to the extent any valid, properly perfected, unavoidable, and senior Permitted Liens

21  exist, they are referred to herein as the "Prior Liens").   In addition, (a) none of the Prepetition

22

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

---

23  [4] The Secured Lender also asserts a security interest in a depository bank account maintained with Wells Fargo Bank,
24  National Association pursuant to, among other things, that certain Security Agreement (Immediately Restricted Wells
    Fargo Bank, National Association Deposit Account) dated as of December 8, 2010 by and between the Debtor and the
    Secured Lender (the "Account Agreement").   The Debtor reserves its right to investigate and contest such asserted
25  interest at this time.   Accordingly, the Debtor's Stipulations shall not apply to the depository account referenced in the
    Account Agreement.

26  [5] For the avoidance of doubt, the Prepetition Collateral does not include the equipment subject to GEPF's security
27  interest under the IDB or the equipment GECC and FCS (each as defined in Paragraph 8 below) are leasing to the
    Debtor, or the proceeds thereof.   Further, this Order is without prejudice to the respective interests (and priorities) of the
28  Secured Lender, GEPF, GECC and FCS as between those creditors in respect to their collateral and leased equipment.

1    Liens are subject to avoidance, recharacterization or subordination pursuant to the

2    Bankruptcy Code or applicable nonbankruptcy law, (b) the Prepetition Secured Obligations

3    constitute allowed secured claims of the Secured Lender, which are legal, valid, binding and

4    non-avoidable obligations of the Debtor that, except for the stay of enforcement arising from

5    section 362 of the Bankruptcy Code, are enforceable in accordance with the terms of the

6    applicable Secured Financing Documents, (c) no offsets, defenses, challenges, claims, or

7    counterclaims of any kind or nature to any of the Prepetition Secured Obligations exist, and

8    no portion of the Prepetition Secured Obligations is subject to avoidance, recharacterization

9    or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (d) the

10   Debtor and its estate has no offsets, defenses, claims, objections, challenges, causes of action,

11   and/or choses in action, including, without limitation, Avoidance Actions (as defined below),

12   against the Secured Lender, and (e) any payments made on account of the Prepetition

13   Secured Obligations (i) have been payments out of the Prepetition Collateral, and (ii) have

14   not diminished any property otherwise available for distribution to unsecured creditors;

15       (iv)    Release of Claims.   The Debtor hereby waives and releases any claims,

16   offsets, defenses, or counterclaims arising under, or with respect or related to, the Secured

17   Financing Documents against the Secured Lender, or its officers, directors, employees,

18   attorneys, representatives, parent, affiliates, predecessors, successors, or assigns, whether

19   known or unknown, at law or in equity, from the beginning of the world through the date

20   hereof.

21       (v)    Waiver.   The Debtor waives any and all rights under sections 105 and 363 of

22   the Bankruptcy Code or otherwise to seek the use of Cash Collateral on any other terms

23   except as expressly provided for herein or as consented to by the Secured Lender.  Further,

24   the Debtor hereby agrees that until such time as all Prepetition Secured Obligations are

25   indefeasibly paid in full in cash and completely satisfied, the Debtor shall not in any way

26   prime or seek to prime or otherwise cause to be subordinate in any way, either the Prepetition

27   Liens or Adequate Protection Liens (as defined below) of the Secured Lender, by offering a

28   subsequent lender or any party-in-interest a superior or pari passu lien or claim pursuant to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

LEGAL_US_W # 67199679.13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   section 364(d) of the Bankruptcy Code; provided however, the Debtor is authorized to obtain

2   postpetition letters of credit, or renewals of prepetition letters of credit ("Postpetition Letters

3   of Credit"), as provided for herein, and obtain any replacement financing that satisfies and

4   pays the Prepetition Secured Obligations in full in cash at the closing of such replacement

5   financing.

6   For the avoidance of doubt, the Debtor's Stipulations shall be deemed to apply only to the Secured

7   Financing Documents and Wells Fargo Bank, National Association, as the Secured Lender.

8   Notwithstanding anything herein to the contrary, the Debtor's Stipulations shall not apply to (i)

9   Wells Fargo Bank Northwest, National Association, in connection with that certain Aircraft Lease

10  Agreement dated as of March 21, 2005, or any related agreement executed in relation thereto, or (ii)

11  the Account Agreement or the depository account referenced therein.

12        E.    The Debtor has an immediate and critical need to use Cash Collateral in order to

13  continue to operate its business and effectuate a reorganization of its business, subject to the terms of

14  this Final Order.  Absent entry of the Final Order, the Debtor's business, property and estate will be

15  immediately and irreparably harmed.   The Debtor's use of Cash Collateral has been deemed

16  sufficient to meet the Debtor's immediate post-petition, critical needs, subject to the terms of this

17  Final Order and all other agreements, documents, notes or instruments delivered pursuant hereto, or

18  thereto or in connection herewith or therewith, including, without limitation, the budget, attached as

19  Exhibit 1 hereto (the "Budget"). The Budget, and any supplement or modification thereto as allowed

20  pursuant to the terms of this Final Order, is an integral part of this Final Order and has been relied

21  upon by the Secured Lender in deciding to consent, or not otherwise object, to the entry of this Final

22  Order.

23        F.    Based on the record presented by the Debtor to this Court, the use of Cash Collateral

24  as provided in this Final Order has been negotiated in good faith at "arms length" between the

25  Debtor and the Secured Lender, and use of Cash Collateral by the Debtor shall be deemed to have

26  been extended, issued, or made, as the case may be, by the Secured Lender, in "good faith."

27        G.    As a result of the Debtor's use of Cash Collateral, and the imposition of the automatic

28  stay, the Secured Lender is entitled to receive adequate protection pursuant to sections 361, 362, and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

363 of the Bankruptcy Code to the extent of any diminution in the value of its interest in the Prepetition Collateral (including Cash Collateral) resulting from the Debtor's use, sale or lease of the Prepetition Collateral (including Cash Collateral) during this Case, or imposition of the automatic stay.  As adequate protection, the Secured Lender will receive: (1) the Adequate Protection Liens; (2) the Adequate Protection Superpriority Claim; and (3) the Adequate Protection Payments (each as defined below).

H.      Notice of the Motion and Final Hearing has been provided to (i) counsel to the Committee, (ii) the U.S. Trustee, (iii) counsel to the Secured Lender, (iv) counsel to GEPF, (v) the Debtor's other alleged secured creditors, (vii) counsel to Dedeaux Properties, LLC ("Dedeaux"), and (vii) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is entitled to receive notice under the Bankruptcy Rules, (collectively, the "Notice Parties").

**BASED ON THE RECORD OF THE FINAL HEARING, THE APPEARANCES OF ALL INTERESTED PARTIES THE MOTION AND THE STIPULATIONS, THE COURT FINDS THAT[6]:**

A.      The Court finds that notice of the Motion, as it relates to this Final Order, is, under the circumstances, sufficient under the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, sections 102(1) and 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b), (c) and (d) and 9014.

B.      Good cause has been shown for the entry of this Final Order.  Among other things, entry of this Final Order will minimize disruption of the Debtor's business and operations and permit the Debtor to meet payroll and other operating expenses and maintain customer confidence by demonstrating the ability to maintain normal operations.  The use of Cash Collateral and Postpetition Letters of Credit as contemplated hereby and by the Budget is intended by the Debtor to enable it to continue the operation of its business and maximize the value of its estate.

C.      The Debtor represents and it appears that the use of Cash Collateral,  adequate protection arrangements, and Postpetition Letters of Credit authorized hereunder have been negotiated in good faith and at arm's length, and the terms of such adequate protection arrangements

---

[6]      Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, pursuant to Bankruptcy Rule 7052.

and Postpetition Letters of Credit are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration.

D.    An immediate and critical need exists for the Debtor to be permitted access to Cash Collateral and Postpetition Letters of Credit to continue to operate its business.  Without access to Cash Collateral, the Debtor will not be able to pay its payroll and other direct operating expenses or to maintain vendor and customer support.

E.    The Debtor has requested immediate entry of this Final Order pursuant to Rule 4001 of the Bankruptcy Rules.  The permission granted herein to allow the Debtor to use Cash Collateral and Postpetition Letters of Credit is necessary to avoid immediate and irreparable harm to the Debtor.

F.    The Court concludes that entry of this Final Order is in the best interests of the Debtor and its estate and creditors as its implementation will, among other things, allow for the continued operation of the Debtor's existing business.

**BASED ON THE STIPULATIONS AND FINDINGS IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.    <u>Grant of Motion</u>.  The Motion is granted as provided for herein.

2.    <u>Authorization to Use Cash Collateral; Limitations on Use</u>.  Pursuant to the terms and conditions of this Final Order, and pursuant to section 363 of the Bankruptcy Code, the Debtor is authorized to use Cash Collateral to obtain documentary and import letters of credit as provided in this Final Order, and otherwise solely for the purposes identified in the Budget setting forth, on a line-item basis, the Debtor's anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtor expects to incur during each week of the Budget, <u>provided</u> <u>however</u>, that (i) unless specifically authorized in writing by the Secured Lender and the Committee, no Cash Collateral may be paid or transferred to any non-debtor affiliate of the Debtor and (ii) for any week in the Cash Collateral Budget (as defined below), the amounts for each line item may vary so long as, unless otherwise waived in writing by the Secured Lender and the Committee, the actual expenditures paid in connection with the Cash Collateral

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Budget (as defined below) beginning the week of April 8, 2011 do not exceed 110% of the aggregate projected expenditures set forth therein, measured on a rolling four-week basis.  The Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) prepared by the Debtor and approved by the Secured Lender and the Committee in writing (each such additional budget, a "Supplemental Approved Budget"), in each case without further notice, motion or application to, order of, or hearing before, this Court, provided, that if any such amendment would reduce the adequate protection or rent payments provided to GECC and FCS pursuant to this Final Order, such amendment will not be effective without GECC's and FCS' prior written consent or upon Order of the Court following appropriate notice and actual hearing.  The aggregate, without duplication, of all items in the Budget and any Supplemental Approved Budgets shall constitute a "Cash Collateral Budget").  The Cash Collateral Budget is an integral part of this Final Order and has been relied upon by the Secured Lender in deciding to consent, or not otherwise object, to the entry of this Final Order.

3.    Postpetition Letters of Credit.  To the extent provided for in the Cash Collateral Budget, the Debtor may use Cash Collateral to obtain from the Secured Lender postpetition documentary and import letters of credit (each, a "Postpetition Letter of Credit") to acquire postpetition inventory, provided that, (i) prior to the issuance of any Postpetition Letter of Credit the Debtor shall be required to obtain the consent of the Secured Lender; (ii) such Postpetition Letter of Credit shall be cash collateralized at 105% of its face value; and (iii) the Debtor may pay the customary fees or expenses and complete the customary documentation, as required by the Secured Lender in connection with the issuance of any Postpetition Letter of Credit.

4.    Adequate Protection Liens.  The Secured Lender is entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Prepetition Collateral.  As adequate protection for any diminution in value of the Secured Lender's interest in the Prepetition Collateral from and after the Petition Date, the Secured Lender is hereby granted, a valid, perfected and enforceable security interest (the "Adequate Protection Liens") equivalent to a lien granted under the sections 364(c) and (d) of the Bankruptcy Code in and upon all of the assets of

LEGAL_US_W # 67199679.13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Debtor in which the Secured Lender had a security interest prior to the Petition Date and hereby created after the Petition Date, wherever the assets are located, including without limitation, all of the Debtor's accounts, contract rights, inventory, machinery and equipment, vehicles, licenses, general intangibles, investment property, bank accounts, insurance proceeds, tax refunds, equity and stock interests in the Debtor and its direct and indirect subsidiaries, and including the Prepetition Collateral, all as more particularly described in the Prepetition Security Agreements, but excluding any causes of action under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions") and any proceeds thereof, whether such property was owned on the Petition Date or thereafter created, acquired or arising, and all improvements, additions and extensions thereto, all replacement thereof, all books and records with respect thereto and all products and proceeds of the foregoing (collectively, the "Collateral"). The Adequate Protection Liens shall be subject only to the Carve-Out, GEPF's security interests under the IDB and GECC's and FCS' rights and interests under the GECC Lease, and any Prior Liens. Except for the Adequate Protection Liens or as otherwise provided in this Final Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Debtor after the Petition Date is not and shall not be subject to any lien of any person resulting from any security agreement entered into by the Debtor prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtor that is subject to a Prior Lien. The Adequate Protection Liens herein granted: (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of the Secured Lender on the Petition Date; (ii) are and shall be valid, perfected, enforceable and effective as of the Petition Date without any further action by the Debtor or the Secured Lender, and without the necessity of the execution, filing or recordation of any financing statements, security agreements, filings with the United States Patent and Trademark Office, mortgages or other documents, obtaining control agreements or other agreements over bank accounts or possession of stock certificates; and (iii) shall secure the payment of indebtedness to the Secured Lender in an amount equal to any diminution in value of the Collateral. Notwithstanding the foregoing, the Secured Lender may, in its sole discretion, file such financing statements, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

statements, notices and other documents shall be deemed to have been filed or recorded at the time

and on the date of the commencement of this Case.

5.     **Adequate Protection Superpriority Claim.**  In addition to the Adequate Protection

Liens granted to the Secured Lender pursuant to this Final Order, the Secured Lender is hereby

granted an administrative claim under sections 503(b)(1), 507(a), and 507(b) of the Bankruptcy

Code (the "Adequate Protection Superpriority Claim") to the extent of any diminution in the value of

the Collateral, which shall have priority in this Case  and in any cases under chapter 7 of the

Bankruptcy Code upon conversion of this Case or any other action, case or proceeding related to or

arising out of any of the foregoing (collectively, the "Successor Case"), under sections 363(e),

363(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expenses

of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b),

506(c), 507, 546(c), 726, 1113 and 114 of the Bankruptcy Code and unsecured claims against the

Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever which

allowed claims shall be payable from and have recourse to all Collateral of the Debtor and all

proceeds thereof, but excluding proceeds of any Avoidance Actions and the Carve-Out.  Except as

permitted by this Final Order, including without limitation, the Carve-Out, no costs or expenses of

administration including, without limitation, Professional Fees (as defined below) allowed and

payable under sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or

may be incurred in this Case or in any Successor Case, and no priority claims are, or will be, senior

to, prior to, or on parity with the Adequate Protection Superpriority Claim.

6.     **Adequate Protection Payments to the Secured Lender.**  As additional adequate

protection, the Debtor shall pay to the Secured Lender cash payments of interest at the rate in effect

as of the Petition Date[7] and at the times required under the Prepetition Credit Agreement (the

"Interest Payments").  In addition, the Debtor shall pay to the Secured Lender the professional fees

and expenses (whether incurred before or after the Petition Date) of the Secured Lender, including,

without limitation, the reasonable fees and expenses of legal counsel, financial advisors, auditors,

---

[7] The Secured Lender reserves its right to request payment of interest on its claims at the default rate of interest, and all rights of the Debtor, the Committee, or any other party in interest to object to any such request are also reserved.

LEGAL_US_W # 67199679.13

appraisers and other consultants, within ten (10) business' days (if no written objection is received within such ten (10) business' day period) after such professional has delivered an invoice substantially in the form provided to the Debtor to date describing such fees and expenses; provided, however, that any such invoice may be redacted to protect privileged, confidential or proprietary information, with a copy of such invoices to the U.S. Trustee, counsel to Dedeaux, counsel to GEPF and counsel to the Committee (collectively, the Adequate Protection Expense Payments," and together with the Interest Payments, the "Adequate Protection Payments").  Any written objection to payment of the fees and expenses invoiced by or on behalf of the Secured Lender must contain a specific basis for the objection and quantification of the undisputed amount of the fees and expenses invoiced; failure to object with specificity or to quantify the undisputed amount of the invoice subject to such objection will constitute a waiver of any objection to such invoice.  None of such out-of-pocket costs, fees, charges, and expenses shall be subject to Court approval or required to be maintained in accordance with the U.S. Trustee Guidelines and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided however, if an objection to a professional's invoice is timely received, the Debtor shall only be required to pay the undisputed amount of the invoice and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

7.    Payment of Real Property Taxes on Leased Premises.  The Debtor shall pay to Dedeaux, with respect to real property taxes currently due on real property leased to the Debtor by Dedeaux or that will become due under that certain Standard Industrial/Commercial Single-Tenant Lease – Net dated as of August 1, 2005 by and between the Debtor and Dedeaux (the "Dedeaux Taxes"), (i) upon entry of this Final Order, the Dedeaux Taxes in the aggregate amount of $49,689.00 in respect of taxes attributable to the period of January 26, 2011, to April 30, 2011, plus, (ii) beginning on May 1, 2011 and on the first business day of each month thereafter, the Dedeaux Taxes in the amount of $15,668.50, each as reflected in the Budget attached hereto and as reflected in subsequent Cash Collateral Budgets.  For the avoidance of doubt, any real property tax amounts attributable to the month of January 2011 and prior to the Petition Date (the "Unpaid Taxes") shall not be deemed payable at this time pursuant to this Final Order, and the Debtor and Dedeaux reserve

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LEGAL_US_W # 67199679.13

their respective rights in respect of such Unpaid Taxes, including, without limitation, whether such Unpaid Taxes constitute administrative expenses of the Debtor's estate and/or are entitled to the benefits of section 365 of the Bankruptcy Code.

8.    Adequate Protection Payments to GEPF and Lease Payments to GECC/FCS.    In consideration for the use of equipment in which GEPF asserts an interest, secured or otherwise, arising under the IDB financing (the "IDB Equipment ") and as adequate protection for any diminution in value of GEPF's asserted interests, secured or otherwise, in the IDB Equipment from and after the Petition Date, the Debtor shall pay to GEPF, commencing as of the Petition Date, $40,000 per month (the "IDB Payments"); provided, however, that, as may be justified by subsequent determinations of value and other relevant factors, the Debtor reserves the right to assert a claim to "claw back" some or all of the IDB Payments, and GEPF reserves the right to assert a claim to additional adequate protection payments and administrative expense claims, including but not limited to a claim for priority under section 507(b) of the Bankruptcy Code.    In addition, pending further order of the Court, the Debtor shall pay all monthly rent due under the Master Lease Agreement dated as of October 25, 2007, as amended, and related equipment schedules between General Electric Corporation ("GECC") and debtor (the "GECC Lease").[8]

9.    Debtor's Obligations and Covenants.    In consideration for the use of the Cash Collateral and other Collateral and as further adequate protection, until the Debtor and the Debtor's counsel receives written notice of the termination (including, without limitation, notice sent by facsimile or electronic mail) of the Debtor's authorization to use Cash Collateral hereunder, the Debtor shall:

(a)    use Cash Collateral in accordance with the Cash Collateral Budget and approved variances;

(b)    deliver to the Secured Lender (with a copy to the Committee and Dedeaux) copies of all financial and other reports (including, but not limited to, borrowing base reports), notices and other financial analyses required to be delivered to the Secured Lender

---

[8] One of the equipment schedules was assigned by GECC to Farm Credit Services of Mid-America ("FCS").

LEGAL_US_W # 67199679.13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

under the Secured Financing Documents, and such other financial statements, information and reports that the Secured Lender shall reasonably request; provided, however, that (i) all reporting required to be delivered pursuant to Section 4.3(b) of the Prepetition Credit Agreement shall be due no later than thirty (30) days after and as of the end of the month, and (ii) all reporting required to be delivered pursuant to Section 4.3(c) of the Prepetition Credit Agreement shall be reportable on a bi-weekly basis beginning as of February 4, 2011, and due on the fifteenth (15th) and last day of each month, or, if such date falls on a Saturday, Sunday, or a day on which banks are required or permitted to be closed, the first business day thereafter;

(c)    deliver to the Secured Lender (with a copy to the Committee and Dedeaux) on or before 1:00 p.m. (prevailing Pacific Time) on Thursday of each week, in form and substance reasonably acceptable to the Secured Lender, a report (the "Variance Report") detailing actual cash receipts, disbursements and inventory levels for the immediately preceding week, noting therein all variances, including, without limitation, variances to cash balances on a week to week basis, in each case, from values set forth for such period in the Cash Collateral Budget, and shall include explanations for all material variances along with a certification by the chief financial officer of the Debtor;

(d)    not sell, lease or otherwise dispose of or transfer any Collateral (other than in the ordinary course of the Debtor's businesses) unless a sale, lease or other disposition of Collateral outside the ordinary course of business is approved and ordered by the Court following notice and a hearing;

(e)    maintain a minimum aggregate cash balance in its depository accounts (excluding payroll and tariff accounts), to be measured weekly on a cumulative two-week rolling basis, of no less than 75% of the "Ending Cash Balance" projected in the line item of the Cash Collateral Budget beginning the week ending on April 8, 2011, until the Termination Date;

(f)    maintain an equity cushion percentage of no less than 110% with respect to the actual eligible inventory and accounts receivable elements of the Collateral (excluding all

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS    AT LAW
LOS ANGELES , CALIFORNIA

cash) existing as of the Petition Date as to the Prepetition Secured Obligations (the "Minimum Equity Cushion"), to be measured pursuant to the formula detailed on Exhibit 1 attached hereto (the "Projected Borrowing Base") on a weekly basis from the "BBC" line item of the Projected Borrowing Base, beginning the week ending April 8, 2011 through the Termination Date;

(g)     the Debtor shall not increase the salaries, compensation, or bonuses to be paid to any insider of the Debtor, or to any other employee of the Debtor outside of the ordinary course of business, without the consent of the Secured Lender and the Committee, or as may be approved by the Court following appropriate notice and hearing.

10.     Insurance/Cash Management.   The Debtor shall maintain all necessary insurance, including, without limitation, life, fire, hazard, comprehensive, public liability, and workmen's compensation as may be currently in effect, and obtain such additional insurance in an amount as is appropriate for the business in which the Debtor is engaged, naming the Secured Lender as loss payee with respect thereto.   In allowing use of Cash Collateral as provided for herein, the Debtor is required to, among other things, maintain certain depository accounts currently held with the Secured Lender, to which the Secured Lender's liens and claims attach with respect to collections to the extent Debtor receives any such collections or proceeds from the Collateral.   Unless and until new procedures are established as may be required by the U.S. Trustee or otherwise, and, upon approval by the Court, the Debtor is authorized and directed to maintain its prepetition cash management system and bank account system described in its *Emergency Motion for Order Pursuant to 11 U.S.C. §§ 363, 1107 and 1108 Authorizing Maintenance of Existing Bank Accounts*, filed concurrently with the Motion.   Notwithstanding anything herein to the contrary, any and all rights of setoff held by the Secured Lender as of the Petition Date are preserved and have not been altered by the entry of this Final Order.

11.     Payment of Professional Fees and Expenses.   Subject to the terms and conditions contained in this Final Order, including without limitation, the Carve-Out, the Debtor may pay, on a provisional basis, the reasonable fees and expenses of its and the Committee's legal and financial advisors, in accordance with budgeted amounts contained in the Cash Collateral Budget and the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS   AT LAW
LOS ANGELES , CALIFORNIA

permitted variances applicable thereto.  Notwithstanding anything herein to the contrary, and except as provided in the Carve-Out, no Prepetition Collateral, Collateral, proceeds thereof, or Cash Collateral shall include, apply to, or be available for any fees or expenses incurred by any party, including the Debtor or the Committee, in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Secured Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization, or enforceability of, or asserting any defense, counterclaim, or offset to any of the Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Liens or the Adequate Protection Superpriority Claims (ii) asserting any claims or causes of action, including, without limitation, claims or actions to hinder or delay the Secured Lender's assertion, enforcement or realization on the Collateral in accordance with the Secured Financing Documents or this Final Order or any Avoidance Actions against the Secured Lender, or (iii) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against the Secured Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to the Prepetition Secured Obligations, or the adequate protection granted herein.  The foregoing shall not be construed to prohibit the Debtor or the Committee from using Cash Collateral for the purpose of conducting an investigation of any such claims, causes of action or similar matters described in subparagraphs (i) through (iii) of this paragraph.  Moreover, the foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the Debtor, the Secured Lender, the Committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of such amounts.

　　　12.    <u>Carve-Out and Reserve Account</u>.

　　　　　　(a) <u>Carve-Out</u>.  As used in this Final Order, the term "Carve-Out" means:  (i) unpaid fees of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) ("<u>Clerk Fees</u>" and "<u>UST Fees</u>" respectively); (ii) to the extent allowed at any time, whether by interim order, procedural order or otherwise, all unpaid fees and expenses ("<u>Professional Fees</u>") both provided

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES , CALIFORNIA

1    for in the Cash Collateral Budget and actually incurred by persons or firms

2    retained by the Debtor pursuant to section 327, 328 or 363 of the

3    Bankruptcy Code and any Committee (collectively, the "Professionals"), at

4    any time before or on the first business day following the delivery of a

5    Remedies Notice (as defined below), whether allowed by the Court prior to

6    or after the delivery of a Remedies Notice; and (iii) beginning the first day

7    following delivery of a Remedies Notice after the date of this Final Order, to

8    the extent allowed at any time, whether by interim order, procedural order or

9    otherwise, the payment of reasonable Professional Fees of Professionals in

10    an aggregate amount not to exceed $150,000; provided, however, that if

11    during the Waiting Period either the default giving rise to the Termination

12    Event is cured or waived or the Court enters an Order finding that there has

13    been no Termination Event, the Carve-Out shall be as set forth in clause (ii)

14    above.    Nothing in this Final Order shall impair the right of any party to

15    object to the reasonableness or allowance of any such fees or expenses to be

16    paid by the Debtor's estate.  The Carve-Out shall be senior to the security

17    interests in and liens on all of the Collateral, Adequate Protection Liens and

18    Adequate Protection Superpriority Claim provided for in this Final Order, as

19    well as any other claims or liens against the Debtor that may arise.  For

20    purposes of calculating the amount of Professional Fees permitted to be paid

21    to a Professional as part of the Carve-Out, the Carve-Out shall be reduced

22    by the aggregate amount of all prepetition retainers held by Professionals as

23    of the date of this Final Order provided, however, that in the event the

24    amount of Professional Fees allowed by the Court exceeds the Carve-Out,

25    nothing herein shall preclude the Court from directing the Debtor to make

26    payments to the professionals so as to effect a pro rata distribution to all

27    Professionals, after taking into account the Carve-Out, the prepetition

28    retainers, and any other sources of payment.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(b) <u>Reserve Account</u>.  As and when reflected in the Cash Collateral Budget, the Debtor shall transfer sufficient cash of the Estate in such amounts that would be sufficient to satisfy the UST Fees, Clerk Fees and Professional Fees set forth for such week in the Budget to the Pachulski Stang Ziehl & Jones LLP Client Trust Account (the "<u>Reserve Account</u>") to be held in a segregated account by Pachulski Stang Ziehl & Jones LLP for the benefit of the Professionals, the Clerk of the Court and the U.S. Trustee, to be applied to UST Fees when due, to Clerk Fees when payable, and to Professional Fees pursuant to one or more orders of the Bankruptcy Court (the "<u>Segregated Funds</u>").  Pachulski Stang Ziehl & Jones LLP shall treat the Segregated Funds in the Reserve Account with the same degree of care as it treats its own property.  If the Debtor's right to use Cash Collateral under this Final Order is terminated and the Reserve Account does not contain sufficient Segregated Funds to fund the Carve-Out (the "<u>Shortfall</u>") then (a) to the extent the Estate has sufficient funds on hand to do so, the Debtor shall transfer Cash Collateral in an amount up to the amount equal to the Shortfall to the Reserve Account notwithstanding the termination of Debtor's right to use Cash Collateral; or (b) to the extent the Estate does not have sufficient funds on hand to do so, any Cash Collateral coming into the Debtor's possession after the termination of the Debtor's authorization to use of Cash Collateral shall be transferred to the Reserve Account up to an amount equal to the Shortfall.  Without in any way limiting the Debtor's ability to use the Segregated Funds in the Reserve Account to pay Professional Fees, UST Fees and Clerk Fees as provided for in this Final Order, the Segregated Funds shall remain encumbered by and subject to the Prepetition Liens and the Adequate Protection Liens; <u>provided</u>, <u>however</u>, the Prepetition Liens, Adequate Protection Liens and the Adequate Protection Superpriority Claim are subordinate to the right of payment of the UST

LEGAL_US_W # 67199679.13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Fees, Clerk Fees and Professional Fees as provided herein.  To the extent the Segregated Funds in the Reserve Account are not used to pay UST Fees, Clerk Fees and Professional Fees authorized to be paid consistent with this Final Order, any such remaining amounts shall be subject to the Prepetition Liens and Adequate Protection Liens of the Secured Lender.

13.    <u>Termination</u>.  In the absence of a further order of this Court, and notwithstanding anything herein to the contrary (but subject to the Carve-Out), the Debtor shall no longer be authorized pursuant to this Final Order to use Cash Collateral after the earliest to occur of (i) the effective date of any plan of reorganization of the Debtor, (ii) July 15, 2011 (unless otherwise consented to by the Secured Lender), (iii) the closing date of a sale of all or substantially all of the Collateral securing the claims and obligations of the Secured Lender, and (iv) the date upon which any of the following events occurs (the earliest such date being referred to herein as the "<u>Termination Date</u>," and each of the following events, a "<u>Termination Event</u>"):

(a) the Debtor's failure to comply with any of the terms or provisions of this Final Order; <u>provided</u>, <u>however</u>, that upon the occurrence of a default under this Final Order caused by the Debtor's failure to meet the requirements of Paragraph 9(f) of this Final Order by its failing to maintain the Minimum Equity Cushion as measured for each week (each occurrence, a "<u>Borrowing Base Default</u>"), such Borrowing Base Default shall not result in a Termination Event unless the Debtor fails to comply with Paragraph 14(a) and (c) hereof;

(b) the failure of the Debtor to achieve any of the milestones as set forth below (with all dates subject to the Court's availability and docket):

(i)    Completion of a "book" in form and substance acceptable to the Secured Lender and the Committee detailing prospects for a sale of all or substantially all of the Debtor's assets on or before April 15, 2011;

(ii)    The Debtor to file a motion to approve sale and bidding procedures for all or substantially all of the Debtor's assets ("<u>Sale Motion</u>"), in form and substance acceptable to the Secured Lender and the Committee, by no later than April 19, 2011;

(iii)    Court hearing to consider the Sale Motion to be held no later than April 29, 2011;

(iv)    Entry of an order, in form and substance acceptable to the Debtor, the Secured Lender and the Committee, approving the Sale Motion on or before May 4, 2011;

LEGAL_US_W # 67199679.13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(v)    Court hearing to approve the sale of all or substantially all of the Debtor's assets to be held no later than June 15, 2011;

(vi)    Entry of an order or orders, as the case may be, each in form and substance acceptable to the Debtor, the Secured Lender and the Committee, approving the sale of all or substantially all of the Debtor's assets on or before June 20, 2011

(vii)    The closing of a sale of all or substantially all of the Debtor's assets as approved by the Court to be completed on or before July 1, 2011.

(c) any stay, reversal, vacatur or rescission of the terms of this Final Order, or any other modification of the terms of this Final Order that is not consented to by the Secured Lender;

(d) entry of an order by this Court or any other Court having jurisdiction over this Case approving any postpetition financing that is not consented to by the Secured Lender;

(e) entry of an order by this Court dismissing the Case or converting the Case to a case under chapter 7 of the Bankruptcy Code;

(f) the appointment of a trustee or the appointment of an examiner with enlarged powers in any of the Cases unless such appointment is approved by the Secured Lender; provided, however, that the Secured Lender (i) acknowledges that Daniel Scouler has been appointed in the nominal capacity of "Chief Restructuring Officer" to assist, represent and testify for the Debtor, but does not have the rights, duties and/or obligations of (and is not) an officer or director of the Debtor, and (ii) agrees that such appointment is not the appointment of a trustee or examiner pursuant to this subparagraph; or

(g) any of the Prepetition Liens, the Adequate Protection Liens, or any other liens granted to the Secured Lender pursuant to this Final Order shall cease to be valid, binding and perfected, first-priority and second priority liens as and to the extent provided in this Final Order.

Notwithstanding the occurrence of the Termination Date, all of the rights, remedies, benefits and protections provided to the Secured Lender and GEPF under this Final Order as of such Termination Date shall survive the Termination Date.

14.    Segregated Cash Collateral Account.    Notwithstanding anything herein to the contrary, the occurrence of a Borrowing Base Default shall constitute a Termination Event only if the Debtor fails to timely deposit funds into the Segregated Cash Collateral Account as required by Paragraph 14 hereof.

(a) Deposits.

(i)    Based upon reporting with respect to the Minimum Equity Cushion beginning the week ended April 8, 2011, upon the first occurrence of a Borrowing Base Default, the Debtor shall be required

LEGAL_US_W # 67199679.13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

to (i) open a segregated, non-interest bearing, "full dominion" depository account maintained with the Secured Lender (the "Segregated Cash Collateral Account") which shall be subject to a first priority perfected security interest in favor of the Secured Lender, and (ii) within two (2) business days of the Secured Lender providing written notice (including, without limitation, notice sent by facsimile or electronic mail) of such Borrowing Base Default to the Debtor and the Committee, deposit into the Segregated Cash Collateral Account the amount of the shortfall giving rise to such Borrowing Base Default.

(ii)     Upon any subsequent Borrowing Base Default, the Debtor shall be required to deposit into the Segregated Cash Collateral Account the amount of the shortfall giving rise to such Borrowing Base Default within two (2) business days of the Secured Lender providing written notice (including, without limitation, notice sent by facsimile or electronic mail) of such Borrowing Base Default to the Debtor and the Committee.

(iii)    Notwithstanding Paragraph 9(f) hereof any amounts deposited into the Segregated Cash Collateral Account shall be included with eligible accounts receivable and inventory to measure compliance with the Minimum Equity Cushion, and any Cash Collateral held in the Segregated Cash Collateral Account in excess of the amount needed to maintain compliance with the Minimum Equity Cushion shall be referred to as "Excess Cash Collateral."

(b)  Application of Proceeds.

(i)     The aggregate amount of Cash Collateral held in the Segregated Cash Collateral Account shall be paid to the Secured Lender as a permanent principal reduction of the Prepetition Secured Obligations either (x) by agreement of the Debtor, the Committee, and the Secured Lender, (y) upon the occurrence of a Termination Event and the issuance of a Remedies Notice following entry of this Final Order, unless during the Waiting Period the Court enters an Order finding that there has been no Termination Event, or (z) pursuant to an order of this Court following appropriate notice and a hearing.

(ii)    If the Segregated Cash Collateral Account holds Excess Cash Collateral when the Minimum Equity Cushion is measured pursuant to Paragraph 9(f) hereof, the Debtor shall, without further order of this Court, be allowed to withdraw such Excess Cash Collateral for use pursuant to the terms of this Final Order.

(c)  Actual Borrowing Base Shortfall as to Projected Borrowing Base.

(i)     If in any given week the actual Borrowing Base Default exceeds the projected shortfall represented by the Projected Borrowing Base (the "Additional Borrowing Base Shortfall") as set forth on Exhibit 1, a cash deposit equal to fifty percent (50%) of such Additional Borrowing Base Shortfall shall be deposited into the Segregated Cash Collateral Account pursuant to subparagraph (a)(i) of this Paragraph 14, and a cash payment equal to fifty percent (50%) of such Additional Borrowing Base Shortfall shall be paid to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Secured Lender as a permanent principal reduction of the Prepetition Secured Obligations.[9]

2    15.    <u>Investigation Period</u>.  Notwithstanding anything herein to the contrary, until 12:00

3    a.m. (prevailing Pacific time) April 12, 2011 (the "<u>Investigation Termination Date</u>") the Committee

4    shall be entitled to investigate the validity, amount, perfection, priority, and enforceability of the

5    Secured Lender's liens, claims and security interests and the obligations arising under the Secured

6    Financing Documents, or to assert any other claims or causes of action against the Secured Lender

7    held by the Debtor's estate.  If the Committee determines that there may be a challenge to the

8    Secured Lender's Prepetition Liens, claims or security interests, by the Investigation Termination

9    Date, the Committee may file a motion or otherwise initiate an appropriate action to seek standing

10    by the Investigation Termination Date (either, a "<u>Standing Motion</u>") to prosecute an objection or

11    claim related thereto.  If such Standing Motion is not filed on or before the Investigation

12    Termination Date (or such other later date as extended by the written consent of the Debtor and the

13    Secured Lender, the Debtor's Stipulations and any consideration granted as adequate protection

14    hereunder in this Final Order shall be irrevocably binding on all creditors, interest holders, any

15    successor trustee, and all parties-in-interest without further action by any party or this Court.  Unless

16    the Secured Lender and the Debtor each consents in writing to an extension, the Investigation

17    Termination Date as to the Prepetition Credit Agreement, Secured Lender, Prepetition Liens and the

18    Prepetition Secured Obligations or may not be extended, unless cause therefor is shown and only

19    upon notice to the Secured Lender and the Debtor and the filing of a motion and scheduling of a

20    hearing date before the expiration of the applicable Investigation Termination Date.

21    16.    <u>Remedies</u>.  The Secured Lender shall provide the Debtor, counsel for the Committee,

22    counsel for Dedeaux, counsel to GEPF and the U.S. Trustee with written notice (including, without

23    limitation, notice sent by facsimile or electronic mail) of the occurrence of a Termination Event (the

24    "<u>Remedies Notice</u>").    Unless otherwise Ordered by the Court, upon the expiration of five

25    (5) business days after the Debtor, counsel for Dedeaux, counsel for the Committee, counsel for

26    _____

[9] By way of example only, the week ended April 15 shows a Projected Borrowing Base shortfall of $745,000.  If the

27    actual shortfall for such week would be $795,000, then the Debtor would deposit an additional $25,000 into the Segregated Cash Collateral Account, and $25,000 would be paid to the Secured Lender as a permanent principal

28    reduction of the Prepetition Secured Obligations.

GEPF and the U.S. Trustee's receipt of the Remedies Notice (the "Waiting Period")[10], the automatic stay provisions of section 362 of the Bankruptcy Code shall be deemed vacated and modified automatically to the extent necessary to permit the Secured Lender to exercise its rights and remedies against all or a portion of the Collateral, including, but not limited to, setoff of any existing Cash Collateral securing the Prepetition Secured Obligations, collection of accounts receivable and application of the proceeds thereof in partial satisfaction of the Prepetition Secured Obligations. During the Waiting Period, the Debtor shall be authorized to use Cash Collateral only for payment of the Carve-Out or the Adequate Protection Payments, unless consented to by the Secured Lender in writing or as otherwise permitted by order of this Court. Following the Waiting Period and upon termination of the Debtor's authorization to use Cash Collateral, the Debtor may pay any unpaid postpetition administrative expenses provided for under the Cash Collateral Budget so long as such expenses were actually incurred prior to termination. The Debtor, the Committee, Dedeaux, and the U.S. Trustee shall have the burden of proof at any hearing on any request by them to re-impose or continue the automatic stay of section 362(a) of the Bankruptcy Code, use Cash Collateral, or to obtain any other injunctive relief, and nothing in this Final Order shall limit the Debtor's ability or authority to seek the use of Cash Collateral on a non-consensual basis. Upon the issuance of a Remedies Notice, the Secured Lender agrees that any request by the Debtor to consider the use of Cash Collateral on a non-consensual basis may be heard on an expedited, emergency basis.

17.    <u>Monitoring of Collateral</u>.    The Debtor shall permit representatives, agents and/or employees of the Secured Lender and the Committee to have reasonable access to their premises and their records during normal business hours (without unreasonable interference with the proper operation of the Debtor's business) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may request. The Secured Lender shall be permitted to retain expert consultants, financial advisors and other professionals for the purpose of monitoring and conducting a full appraisal of the Collateral, and the reasonable fees and expenses of such professionals shall be paid by the Debtor as part of the Adequate Protection Expense Payments. To

---

[10] For the avoidance of doubt, and notwithstanding anything herein to the contrary, the Waiting Period shall not apply the Secured Lender's rights and remedies pursuant to Paragraph 14 hereof.

LEGAL_US_W # 67199679.13

the extent such appraisals are not otherwise protected from disclosure by the attorney-client privilege or work product doctrine or any other similar rule as to non-disclosure, copies of such appraisals shall be provided to the Debtor and the Committee.

18.    <u>Right to Credit Bid</u>.    As consideration for its consent to the Debtor's use of the Secured Lender's Cash Collateral, the Secured Lender shall have the right to "credit bid" some or all of the allowed amount of the Secured Lender's claims during any sale of all or substantially all of the Prepetition Collateral as part of sales occurring pursuant to section 363 of the Bankruptcy Code or otherwise which are included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.    The foregoing shall not be construed as a waiver or limitation of any right to "credit bid" otherwise held by the Secured Lender or other creditors pursuant to section 363 of the Bankruptcy Code.

19.    <u>Access to Leased Premises</u>.    Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the Secured Lender contained in this Final Order, or otherwise available at law or in equity, upon five (5) business days written notice (including, without limitation, notice sent by facsimile or electronic mail) to the landlord of any leased premises that a Termination Event (as defined hereinafter) has occurred under this Final Order, the Secured Lender may, subject to such landlord's rights under applicable law and any separate agreement by and between such landlord and the Secured Lender (each, a "<u>Separate Agreement</u>"), including, but not limited to, that certain Agreement and Acknowledgement of Security Interest dated as of June 1, 2009, by and among the Debtor, the Secured Lender, and Dedeaux, enter upon any leased premises of the Debtor for the purpose of exercising any remedy with respect to Prepetition Collateral located thereon which is otherwise available under the Secured Financing Documents, provided that, subject to the terms of such Separate Agreement, the Secured Lender shall only pay rent of the Debtor that first accrues after the Secured Lender's written notice referenced above and that is payable during the period of such occupancy by the Secured Lender, calculated on a per diem basis.    Nothing herein shall require the Secured Lender to assume any lease as a condition to the rights afforded to the Secured Lender in this paragraph.

LEGAL_US_W # 67199679.13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS  AT LAW
LOS ANGELES , CALIFORNIA

20.    <u>Section 506(c) and 552(b) Waivers</u>.  Without the prior written consent of the Secured Lender, which consent shall not be implied from any action, inaction, or acquiescence by the Secured Lender, and so long as the Debtor is authorized to use the Cash Collateral of the Secured Lender either by consent or by order of the Court, no costs or expenses of administration that have been or may be incurred in the Cases at any time shall be charged against the Secured Lender or any of their claims pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise, nor shall such costs or expenses be charged against the Collateral unless and until all Prepetition Secured Obligations have been indefeasibly paid in full and in cash (if approved by the Court).  The "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be waived. Further, the Secured Lender shall not be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to any of the Collateral.   This paragraph 20 is without prejudice to the contentions and defenses of any other creditors in response to any attempt by the Debtor to assert claims against them pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code, or otherwise.

21.    <u>Further Adequate Protection</u>.  Nothing in this Final Order waives any rights of the Secured Lender to request at any time that the Court provide additional or further protection of its interest in the Prepetition Collateral (including the Cash Collateral), or to seek further or additional adequate protection in the event the adequate protection provided herein proves to be inadequate, or the rights of the Debtor or the Committee to contest any such request.

22.    <u>Reservation of Rights Against Guarantors</u>.  Notwithstanding anything herein to the contrary, neither the entry of this Final Order nor the Secured Lender's consent to the Debtor's use of Cash Collateral pursuant to the Cash Collateral Budget and the terms of this Final Order shall constitute a waiver, release, or modification of any claims or causes of action held by the Secured Lender against the guarantors of the Prepetition Secured Obligations as set forth in section 1.5 of the Prepetition Credit Agreement (the "<u>Guarantors</u>").  Further, neither the entry of this Final Order nor the Secured Lender's consent to the Debtor's use of Cash Collateral pursuant to the Cash Collateral Budget and the terms of this Final Order shall constitute a defense to any claim or cause of action held by the Secured Lender against the Guarantors.   The Secured Lender's rights against each Guarantor are reserved and fully preserved.   Likewise, this Order shall not constitute a defense,

1   waiver, release, or modification of any claims or causes of action held by GEPF, GECC or FCS in

2   connection with any guaranties they hold against the guarantors thereunder, and their rights in

3   respect of any such guaranties and against such guarantors are reserved and fully preserved.

4       23.   No Duty to Monitor Compliance.  The Secured Lender may assume the Debtor will

5   comply with this Final Order and the Cash Collateral Budget and shall not (i) have any obligation

6   with respect to the Debtor's use of Cash Collateral, (ii) be obligated to ensure or monitor the

7   Debtor's compliance with any financial covenants, formulae, or other terms and conditions of this

8   Final Order or the Prepetition Credit Agreement or (iii) be obligated to pay (directly or indirectly

9   from Cash Collateral) any expenses incurred or authorized to be incurred pursuant to this Final

10  Order or be obligated to ensure or monitor that such Cash Collateral exists to pay such expenses.

11      24.   Survival; Successors and Assigns.  The provisions of this Final Order shall be binding

12  upon and inure to the benefit of the Secured Lender, GEPF, GECC and FCS and the Debtor and their

13  respective successors and assigns (including, to the extent permitted by applicable law, any chapter 7

14  or chapter 11 trustee or other fiduciary hereafter appointed or elected for the estate or as a legal

15  representative of the Debtor or with respect to the property of the estates of the Debtor).  If an order

16  dismissing any of this Case under section 1112 of the Bankruptcy Code or otherwise is at any time

17  entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code)

18  that the Adequate Protection Superpriority Claim, Adequate Protection Liens, and any other

19  replacement security interests and liens and other protections afforded or granted to the Secured

20  Lender pursuant to this Final Order as of the date of such dismissal shall continue in full force and

21  effect and shall maintain their priorities as provided in this Final Order until all obligations in respect

22  thereof shall have been paid and satisfied in full (and that such Adequate Protection Superpriority

23  Claim and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all

24  parties in interest).  Notwithstanding any reversal, stay, modification or vacation of this Final Order,

25  any use of Cash Collateral and issued Postpetition Letters of Credit prior to such reversal, stay,

26  modification or vacation shall be governed in all respects by the original provisions of this Final

27  Order, and the Secured Lender shall be entitled to all the rights, remedies, privileges and benefits

28  granted herein with respect to such use.

LEGAL_US_W # 67199679.13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

25.    <u>Findings of Fact and Conclusions of Law</u>.  This Final Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof.

###

DATED: April 14, 2011

United States Bankruptcy Judge

- 27 -

**APPROVED AS TO FORM AND CONTENT:**

Dated:  April 13, 2011

**KELLEY DRYE & WARREN LLP**

By: *Craig Wolfe*
     Craig A. Wolfe

Counsel to Debtor and Debtor-in-Possession,
Contessa Premium Foods, Inc.

Dated:  April 13, 2011

**ARENT FOX LLP**

By: _____
     Mette Kurth

Proposed Counsel to the Committee of
Creditors

Dated:  April 13, 2011

**DAVIS WRIGHT TREMAINE LLP**

By: _____
     Harvey Schochet

Counsel to General Electric Capital
Corporation, GE Capital Public Finance, Inc.,
and Farm Credit Services of Mid-America

Dated:  April 13, 2011

**PAUL, HASTINGS, JANOFSKY &
WALKER LLP**

By: _____
     Jesse H. Austin, III
     Cynthia M. Cohen

Counsel to Wells Fargo Bank, National
Association

Dated:  April 13, 2011

**DLA PIPER LLP**

By: _____
     George B. South, III

Counsel to Dedeaux Properties LLC

Dated: April ___, 2011

_____
THE HONORABLE PETER H. CARROLL
UNITED STATES BANKRUPTCY JUDGE

**APPROVED AS TO FORM AND CONTENT:**

Dated:  April 13, 2011

**KELLEY DRYE & WARREN LLP**


By: _____
    Craig A. Wolfe


Counsel to Debtor and Debtor-in-Possession,
Contessa Premium Foods, Inc.

Dated:  April 13, 2011

**PAUL, HASTINGS, JANOFSKY &
WALKER LLP**


By: _____
    Jesse H. Austin, III
    Cynthia M. Cohen

Counsel to Wells Fargo Bank, National
Association



Dated:  April 13, 2011

**ARENT FOX LLP**

By: _____
    Mette Kurth


Proposed Counsel to the Committee of
Creditors

Dated:  April 13, 2011

**DLA PIPER LLP**


By: _____
    George B. South, III


Counsel to Dedeaux Properties LLC

Dated:  April 13, 2011

**DAVIS WRIGHT TREMAINE LLP**


By: _____
    Harvey Schochet


Counsel to General Electric Capital
Corporation, GE Capital Public Finance, Inc.,
and Farm Credit Services of Mid-America




Dated: April ___, 2011

_____
THE HONORABLE PETER H. CARROLL
UNITED STATES BANKRUPTCY JUDGE

**APPROVED AS TO FORM AND CONTENT:**

Dated:  April 13, 2011

**KELLEY DRYE & WARREN LLP**

By: _____
     Craig A. Wolfe

Counsel to Debtor and Debtor-in-Possession,
Contessa Premium Foods, Inc.

Dated:  April 13, 2011

**ARENT FOX LLP**

By: _____
     Mette Kurth

Proposed Counsel to the Committee of
Creditors

Dated:  April 13, 2011

**DAVIS WRIGHT TREMAINE LLP**

By: _____
     Harvey Schochet

Counsel to General Electric Capital
Corporation, GE Capital Public Finance, Inc.,
and Farm Credit Services of Mid-America

Dated:  April 13, 2011

**PAUL, HASTINGS, JANOFSKY &
WALKER LLP**

By: _____
     Jesse H. Austin, III
     Cynthia M. Cohen

Counsel to Wells Fargo Bank, National
Association

Dated:  April 13, 2011

**DLA PIPER LLP**

By: _____
     George B. South, III

Counsel to Dedeaux Properties LLC

Dated: April ___, 2011

_____
THE HONORABLE PETER H. CARROLL
UNITED STATES BANKRUPTCY JUDGE

**APPROVED AS TO FORM AND CONTENT:**

Dated: April 13, 2011

**KELLEY DRYE & WARREN LLP**


By: _____
    Craig A. Wolfe


Counsel to Debtor and Debtor-in-Possession,
Contessa Premium Foods, Inc.

Dated: April 13, 2011

**PAUL, HASTINGS, JANOFSKY &
WALKER LLP**


By: _____
    Jesse H. Austin, III
    Cynthia M. Cohen

Counsel to Wells Fargo Bank, National
Association

Dated: April 13, 2011

**ARENT FOX LLP**


By: _____
    Mette Kurth


Proposed Counsel to the Committee of
Creditors

Dated: April 13, 2011

**DLA PIPER LLP**


By: _____
    George B. South, III


Counsel to Dedeaux Properties LLC

Dated: April 13, 2011

**DAVIS WRIGHT TREMAINE LLP**

By: _____
    Harvey Schochet

Counsel to General Electric Capital
Corporation, GE Capital Public Finance, Inc.,
and Farm Credit Services of Mid-America

Dated: April ___, 2011

_____
THE HONORABLE PETER H. CARROLL
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Budget and Projected Borrowing Base**

**Contessa Premium Foods**
**13 Week Cash Flow**

| week of case | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| Friday Week ending | 4/1 | 4/8 | 4/15 | 4/22 | 4/29 | 5/6 | 5/13 | 5/20 | 5/27 | 6/3 | 6/10 | 6/17 | 6/24 | 7/1 |
| Beginning Book Cash Balance | 3,963,277 | 3,757,777 | 2,845,150 | 3,015,650 | 3,088,550 | 3,387,050 | 2,135,384 | 2,061,884 | 1,858,784 | 1,965,284 | 1,575,617 | 1,364,117 | 1,295,017 | 1,713,517 |
| Float |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| **Receipts** |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Gross AR | 1,731,000 | 2,248,000 | 2,248,000 | 2,248,000 | 2,248,000 | 2,128,000 | 2,128,000 | 2,128,000 | 2,128,000 | 1,904,000 | 1,904,000 | 1,904,000 | 1,904,000 | 1,904,000 |
| Proceeds from Sale of Ineligible Shrimp |  |  |  |  |  |  |  |  |  | 200,000 | 200,000 | 200,000 |  |  |
| City Seafood Deposits (COD portion) | - | - | - | - | - | - | - | - | - |  |  |  |  |  |
| LESS: Trade Spend Deductions | (115,000) | (115,000) | (115,000) | (115,000) | (115,000) | (63,000) | (63,000) | (63,000) | (63,000) | (86,500) | (86,500) | (86,500) | (86,500) | (79,000) |
| Total Cash Receipts | 1,616,000 | 2,133,000 | 2,133,000 | 2,133,000 | 2,133,000 | 2,065,000 | 2,065,000 | 2,065,000 | 2,065,000 | 2,017,500 | 2,017,500 | 2,017,500 | 1,817,500 | 1,825,000 |
| Raw Material Purchases | 1,185,600 | 1,413,500 | 1,413,500 | 1,413,500 | 1,413,500 | 1,619,500 | 1,619,500 | 1,619,500 | 1,619,500 | 1,077,000 | 1,077,000 | 1,077,000 | 1,077,000 | 1,077,000 |
| Post Filing payments COD/in Advance |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Inventory Purchases, Raw Materials | 1,185,600 | 1,413,500 | 1,413,500 | 1,413,500 | 1,413,500 | 1,619,500 | 1,619,500 | 1,619,500 | 1,619,500 | 1,077,000 | 1,077,000 | 1,077,000 | 1,077,000 | 1,077,000 |
| **Wages** |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Payroll (Bi-weekly) |  | 282,000 |  | 282,000 |  | 282,000 |  | 282,000 |  | 282,000 |  | 282,000 |  | 282,000 |
| 401-k Funding |  | 27,600 |  | 27,600 |  | 27,600 |  | 27,600 |  | 27,600 |  | 27,600 |  | 27,600 |
| Benefits | 88,000 |  |  |  | 88,000 |  |  |  |  | 88,000 |  |  |  | - |
| Employee Expense Reimbursement | 15,000 | 15,000 | 15,000 | 15,000 | 11,000 | 13,000 | 13,000 | 13,000 | 13,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 |
| Temp Labor | 85,000 | 85,000 | 85,000 | 85,000 | 85,000 | 85,000 | 85,000 | 85,000 | 85,000 | 85,000 | 85,000 | 85,000 | 85,000 | 85,000 |
| **Rents** |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Offices rent | 52,000 |  |  |  |  | 52,000 |  |  |  | 52,000 |  |  |  | 52,000 |
| Plant rent | 126,000 |  |  |  |  | 126,000 |  |  |  | 126,000 |  |  |  | 126,000 |
| Utilities |  |  | 45,000 |  |  |  | 45,000 |  |  |  | 45,000 |  |  |  |
| DART Storage | 4,900 |  |  |  |  | 4,900 |  |  |  | 4,900 |  |  |  | 4,900 |
| RE Property Taxes | - | 49,527 |  |  |  | 15,667 |  |  |  | 15,667 |  |  |  |  |
| Tariff (daily) | 21,000 | 28,000 | 28,000 | 28,000 | 28,000 | 32,000 | 32,000 | 32,000 | 32,000 | 21,000 | 21,000 | 21,000 | 21,000 | 21,000 |
| Cold Storage | 47,000 | 47,000 | 47,000 | 47,000 | 47,000 | 47,000 | 47,000 | 47,000 | 47,000 | 47,000 | 47,000 | 47,000 | 47,000 | 47,000 |
| Trucking | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 |
| Other Taxes | 25,000 |  | 2,000 |  |  |  | 2,000 |  |  |  | 2,000 |  |  | 2,000 |
| Brokerage/Commissions | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 |
| Insurance |  |  | 32,000 |  |  |  | 32,000 |  |  |  | 32,000 |  |  | 32,000 |
| Other | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 |
| Coupons (weekly on Mondays) | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Bank Fees / Audits | 10,000 |  |  |  |  | 10,000 |  |  |  | 10,000 |  |  |  | 8,000 |
| Restructuring Legal & Professional Fees: |  |  |  |  |  | 640,000 |  |  |  |  | 630,000 |  |  | 595,000 |
| Accrued Professional Fees |  | 658,000 |  |  |  |  |  |  |  |  |  |  |  |  |
| Court/Trustee Fees |  | 20,000 |  |  |  |  |  |  |  |  |  |  |  |  |
| Utilities Deposit |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Plant relocation Costs |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| Interest Payments (1st) |  | 96,000 |  |  |  | 92,000 |  |  |  | 92,000 |  |  |  | 92,000 |
| IDB Loan (1st) |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| GE Photovoltaic Roofing Lease. (2nd) |  | 36,000 |  |  |  | 36,000 |  |  |  | 36,000 |  |  |  |  |
| Wells Fargo Loan Paydown |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
| GE HVAC Lease (15th) |  |  | 133,000 |  |  |  | 133,000 |  |  |  | 133,000 |  |  |  |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GE Adequate Protection Payment | | 126,000 | | | | | 40,000 | | | | 40,000 | | | | 40,000 |
| PACA Payments | | | | | | | | | | | | 200,000 | 200,000 | 200,000 | |
| New Plant Expenditures | | | | | | | | | | | | | | | |
| Total Disbursements | | 1,821,500 | 3,045,627 | 1,962,500 | 2,060,100 | 1,834,500 | 3,316,667 | 2,138,500 | 2,268,100 | 1,958,500 | 2,407,167 | 2,229,000 | 2,086,600 | 1,399,000 | 2,660,500 |
| Disbursement fast rolling four weeks | | 7,414,500 | 8,519,727 | 8,783,227 | 8,569,727 | 8,424,727 | 9,175,767 | 9,349,767 | 8,927,367 | 8,685,767 | 8,773,567 | 8,482,767 | 8,481,267 | 8,121,767 | 8,724,100 |
| Net Cash flow | | (205,500) | (912,627) | 170,500 | 72,900 | 298,500 | (1,251,667) | (73,500) | (203,100) | 106,500 | (389,667) | (211,500) | (69,100) | 418,500 | (835,500) |
| Ending Book Cash | | 3,757,777 | 2,845,150 | 3,015,650 | 3,088,550 | 3,387,050 | 2,135,384 | 2,061,884 | 1,858,784 | 1,965,284 | 1,575,617 | 1,364,117 | 1,295,017 | 1,713,517 | 878,017 |
| Equity Cushion Account Balance | | | 600,000 | 675,000 | 745,000 | 790,000 | 850,000 | 630,000 | 410,000 | 200,000 | - | 150,000 | 310,000 | 480,000 | 650,000 |
| **Ending Cash Balance** | | **3,757,777** | **2,245,150** | **2,340,650** | **2,343,550** | **2,597,050** | **1,285,384** | **1,431,884** | **1,448,784** | **1,765,284** | **1,575,617** | **1,214,117** | **985,017** | **1,233,517** | **228,017** |
| **Cumulative two week cash balance test** | | | | | | | | | | | | | | | |
| | Sales | 1,807,400 | 2,113,750 | 2,113,750 | 2,113,750 | 2,113,750 | 2,409,750 | 2,409,750 | 2,409,750 | 2,409,750 | 1,603,000 | 1,603,000 | 1,603,000 | 1,603,000 | 1,603,000 |
| Quick BBC | | | | | | | | | | | | | | | |
| A/R | | 11,164,935 | 11,030,685 | 10,896,435 | 10,762,185 | 10,627,935 | 10,909,685 | 11,191,435 | 11,473,185 | 11,754,935 | 11,453,935 | 11,152,935 | 10,851,935 | 10,550,935 | 10,249,935 |
| Less: City Seafood | | (1,776,704) | (1,776,704) | (1,776,704) | (1,776,704) | (1,776,704) | (1,776,704) | (1,776,704) | (1,776,704) | (1,776,704) | (1,776,704) | (1,776,704) | (1,776,704) | (1,776,704) | (1,776,704) |
| Net AR | | 9,388,231 | 9,253,981 | 9,119,731 | 8,985,481 | 8,851,231 | 9,132,981 | 9,414,731 | 9,696,481 | 9,978,231 | 9,677,231 | 9,376,231 | 9,075,231 | 8,774,231 | 8,473,231 |
| Shrimp | | 14,604,914 | 14,728,837 | 14,852,760 | 14,976,683 | 15,100,606 | 15,268,086 | 15,435,565 | 15,603,044 | 15,770,523 | 15,881,593 | 15,992,664 | 16,103,734 | 16,214,805 | 16,325,875 |
| less ineligible Shrimp | | (962,551) | (962,551) | (962,551) | (962,551) | (962,551) | (962,551) | (962,551) | (962,551) | (962,551) | (962,551) | (962,551) | (962,551) | (962,551) | (962,551) |
| Net Eligible Shrimp | | 13,642,363 | 13,766,286 | 13,890,209 | 14,014,132 | 14,138,055 | 14,305,535 | 14,473,014 | 14,640,493 | 14,807,972 | 14,919,042 | 15,030,113 | 15,141,183 | 15,252,254 | 15,363,324 |
| Prepaid Shrimp | | - | | | | | | | | | | | | | |
| Vegetable and GCM | | 5,795,643 | 5,718,681 | 5,641,718 | 5,564,756 | 5,487,793 | 5,381,911 | 5,276,028 | 5,170,146 | 5,064,263 | 4,993,853 | 4,923,443 | 4,853,033 | 4,782,623 | 4,712,213 |
| less Packaging | | (635,984) | (676,225) | (676,225) | (676,225) | (676,225) | (676,225) | (676,225) | (676,225) | (676,225) | (676,225) | (676,225) | (676,225) | (676,225) | (676,225) |
| less Obsolete Rm | | - | | | | | | | | | | | | | |
| less Obsolete FG | | (390,927) | (390,927) | (390,927) | (390,927) | (390,927) | (390,927) | (390,927) | (390,927) | (390,927) | (390,927) | (390,927) | (390,927) | (390,927) | (390,927) |
| Net Eligible Vegetable and GCM | | 4,768,732 | 4,651,528 | 4,574,566 | 4,497,603 | 4,420,641 | 4,314,758 | 4,208,876 | 4,102,993 | 3,997,111 | 3,926,701 | 3,856,291 | 3,785,881 | 3,715,471 | 3,645,061 |
| Gross Eligible | | | | | | | | | | | | | | | |
| A/R | | 6,571,761 | 6,477,786 | 6,383,811 | 6,289,836 | 6,195,861 | 6,393,086 | 6,590,311 | 6,787,536 | 6,984,761 | 6,774,061 | 6,563,361 | 6,352,661 | 6,141,961 | 5,931,261 |
| Shrimp | | 8,185,418 | 8,259,772 | 8,334,125 | 8,408,479 | 8,482,833 | 8,583,321 | 8,683,808 | 8,784,296 | 8,884,783 | 8,951,425 | 9,018,068 | 9,084,710 | 9,151,352 | 9,217,995 |
| | | - | | | | | | | | | | | | | |
| Vegetable and GCM | | 2,622,803 | 2,558,341 | 2,516,011 | 2,473,682 | 2,431,353 | 2,373,117 | 2,314,882 | 2,256,646 | 2,198,411 | 2,159,686 | 2,120,960 | 2,082,235 | 2,043,509 | 2,004,784 |
| BBC | | 17,379,982 | 17,295,899 | 17,233,948 | 17,171,998 | 17,110,047 | 17,349,524 | 17,589,001 | 17,828,479 | 18,067,956 | 17,885,172 | 17,702,389 | 17,519,606 | 17,336,823 | 17,154,040 |
| Cash | | | | | | | | | | | | | | | |
| Total Coverage | | 17,379,982 | 17,295,899 | 17,233,948 | 17,171,998 | 17,110,047 | 17,349,524 | 17,589,001 | 17,828,479 | 18,067,956 | 17,885,172 | 17,702,389 | 17,519,606 | 17,336,823 | 17,154,040 |
| **Equity Cushion Test** | | 1.100 | 1.100 | 1.101 | 1.100 | 1.100 | 1.100 | 1.100 | 1.100 | 1.100 | 1.100 | 1.100 | 1.100 | 1.100 | 1.110 |
| | | (600,000) | (675,000) | (745,000) | (790,000) | (850,000) | (630,000) | (410,000) | (200,000) | 25,000 | (150,000) | (310,000) | (480,000) | (650,000) | (950,000) |
| | | (600,000) | (75,000) | (70,000) | (45,000) | (60,000) | 220,000 | 220,000 | 210,000 | 225,000 | (175,000) | (160,000) | (170,000) | (170,000) | (300,000) |
| Equity Cushion Account Balance | | | 600,000 | 675,000 | 745,000 | 790,000 | 850,000 | 630,000 | 410,000 | 200,000 | - | 150,000 | 310,000 | 480,000 | 650,000 |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **10100 Santa Monica Boulevard, 11th Floor, Los Angeles, CA 90067**

A true and correct copy of the foregoing document *[PROPOSED]* **STIPULATED FINAL ORDER (A) AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO WELLS FARGO BANK, NATIONAL ASSOCIATION, AND (C) GRANTING OTHER RELATED RELIEF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:** On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 13, 2011** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**By Personal Delivery**
Honorable Peter H. Carroll, United States Bankruptcy Judge
United States Bankruptcy Court - Central District of California
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Bin outside of Suite 1534
Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 13, 2011 | Megan J Wilson | /s/ Megan J Wilson |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* **F 9013-3.1.PROOF.SERVICE**

**NOTE TO USERS OF THIS FORM**:

**1)**  Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
**2)**  The title of the judgment or order and all service information must be filled in by the party lodging the order.
**3)  Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
**4)  Category II.** below:  List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) *[ENTERED]* **STIPULATED FINAL ORDER (A) AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION TO WELLS FARGO BANK, NATIONAL ASSOCIATION, AND (C) GRANTING OTHER RELATED RELIEF** was entered on the date indicated as   Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (</u>**"**<u>NEF</u>**"**<u>)</u>** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **April 13, 2011**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

⊠  Service information continued on attached page

**II.  <u>SERVED BY THE COURT VIA U.S. MAIL:</u>** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐  Service information continued on attached page

**III.  <u>TO BE SERVED BY THE LODGING PARTY</u>**: Within 72 hours after receipt of a copy of this judgment or order which bears an   Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

⊠  Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                   **F 9021-1.1.NOTICE.ENTERED.ORDER**

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Russell Clementson     russell.clementson@usdoj.gov
- Bradley L Cornell    bcornell@cornell-lawfirm.com
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- M Douglas Flahaut    flahaut.douglas@arentfox.com
- Jeffrey B Gardner    Jeff.Gardner@sbgk.com, mary.do@sbgk.com
- Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
- Jeffrey S Goodfried    jgoodfried@perkinscoie.com
- Peter L Isola    peterisola@dwt.com
- John H Kim    jkim@cookseylaw.com
- Andy Kong    Kong.Andy@ArentFox.com
- Mette H Kurth    kurth.mette@arentfox.com
- Katie A Lane    lane.katie@arentfox.com
- Nicole S Magaline    nmagaline@schiffhardin.com
- Scotta E McFarland    smcfarland@pszjlaw.com, smcfarland@pszjlaw.com
- Frank F McGinn    ffm@bostonbusinesslaw.com
- Lawrence H Meuers    lmeuers@meuerslawfirm.com,
  sdefalco@meuerslawfirm.com;nbucciarelli@meuerslawfirm.com;lcastle@meuerslawfirm.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Bertrand Pan    bertrand.pan@dlapiper.com
- Jeffrey N Pomerantz    jpomerantz@pszjlaw.com
- Kurt Ramlo    kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com
- Christopher O Rivas    crivas@reedsmith.com
- Katherine A Traxler    katietraxler@paulhastings.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Joseph M VanLeuven    joevanleuven@dwt.com
- Elizabeth Weller    dallas.bankruptcy@publicans.com
- Marc J Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
- Craig A Wolfe    kdwbankruptcydepartment@kelleydrye.com

**III.  TO BE SERVED BY THE LODGING PARTY**:

**Contessa Premium Foods**
**Chapter 11 Case No. 2:11-bk-13454-PC**
**2002 Mailing List**

**Debtor**
Contessa Premium Foods, Inc.                    United States Trustee
Attn:  Suzanne Nuzzi                    Office of the United States Trustee
222 West 6th Street                    725 S Figueroa St., 26th Floor
San Pedro, CA  90731                    Los Angeles, CA 90017

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_January 2009_                                        **F 9021-1.1.NOTICE.ENTERED.ORDER**

Internal Revenue Service
Small Business/Self-Employed Division
Insolvency Unit, Area West, Territory 14, Gp7
Mail Stop 5022
300 N. Los Angeles Street
Los Angeles, CA 90012

**Counsel to Creditors Committee**
ARENT FOX LLP
Attn: Mette H. Kurth, Esq., Aram Ordubegian, Esq., Andy
Kong, Esq., and M. Douglas Flahaut, Esq.
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065

**Committee Member**
Band D Foods
c/o Timothy B. Andersen, President
3494 S. TK Avenue
Boise, Idaho 83705

**Committee Member**
BrucePac
c/o Glen Golomski, President/CEO
811 North 1 st Street
Silverton, OR 97381

**Committee Member**
Dedeaux Properties, LLC.
c/o Robert Santich, Mgr & Executive V.P.
c/o Ashok Aggarwal, Sr. V.P. Finance
1430 S. Eastman Avenue
Los Angeles, CA 90023

**Committee Member**
Pacific Southwest Container
c/o James D. Mayol, Secretary/General Counsel
P.O. Box 3049
Modesto, CA 95353

**Committee Member**
Sage V Foods, Inc.
c/o Victor P. Vegas, President
12100 Wilshire Blvd., Suite 605
Los Angeles, CA 90025

**Secured Lender**
Wells Fargo Bank, N.A.
Art Brokx, SVP/Loan Team Manager
333 South Grand Avenue, Suite 940
Los Angeles, CA 90071

**Attorneys for Wells Fargo Bank**
John Francis Hilson, Esq.
Connie L. Hilton, Esq.
Cynthia Cohen, Esq.
Paul Hastings Janofsky & Walker
515 South Flower St., 25th Floor
Los Angeles, CA  90071

**Attorneys for Wells Fargo Bank**
Jesse H. Austin, III
Partner, Corporate Department
600 Peachtree Street, N.E.,
Twenty-Fourth Floor
Atlanta, GA 30308
United States of America

**Secured Lender**
General Electric Capital Corp.
Dale Shores, VP, Restructuring
3 Capital Drive
Mail Station 1-3
Eden Prairie, MN 55344

**Counsel to GECC**
Davis Wright Tremaine LLP
865 South Figueroa
Los Angeles, CA 90017

**Requests for Special Notice**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                **F 9021-1.1.NOTICE.ENTERED.ORDER**

**Counsel to GECC**
Harvey S. Schochet
Peter L. Isola
Davis Wright Tremaine LLP
505 Montgomery Street, Ste 800
San Francisco, CA 94111

**Attorneys for Dedeaux Properties**
George B. South III
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104

Laura A. Meyerson
Senior Attorney
Southern California Edison Company
2244 Walnut Grove Ave., 3rd Floor
Rosemead, CA  91770

**Attorneys for U.S. Foodservice**
Louis T. Delucia, Esq.
Alyson M. Fiedler, Esq.
SCHIFF HARDIN LLP
900 Third A venue
New York, New York 10022

**Attorneys for Patterson Vegetable Company and**
**Coastal Green Vegetable Company**
David M. Gilmore, Esq.
Marcus D. Magness, Esq.
Tracie L. Goodwin, Esq.
Gilmore, Wood, Vinnard & Magness
P.O. Box 28907
Fresno, CA 93729-8907

**Counsel to Dedeaux Enterprises (a/k/a DART)**
John J. Duffy, Esq.
DLA Piper LLC
550 South Hope Street, Ste. 2300
Los Angeles, CA 90071

**Attorneys for Dedeaux Properties**
Bertrand Pan (SBN 233472)
DLA Piper LLP (US)
550 South Hope Street Suite 2300
Los Angeles, California 90071

Roy L. Bennett, Senior Credit Officer
Farm Credit Services of Mid-America
1601 UPS Drive
Louisville, KY  40223

**Attorneys for U.S. Foodservice**
Nicole S. Magaline, Esq.
Schiff Hardin LLP
2 One Market
Spear Street Tower, 32nd Fl.
3 San Francisco. CA 94105

Jeffrey Michael Goldman
Pepper Hamilton LLP
4 Park Plaza, Suite 1200
Irvine, CA 92614

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                  **F 9021-1.1.NOTICE.ENTERED.ORDER**