Craig A. Wolfe (CA Bar No. 200870)
Jason R. Alderson (CA Bar No. 233176)
**KELLEY DRYE & WARREN LLP**
101 Park Avenue
New York, New York 10178-0002
Telephone: (212) 808-7800
Facsimile:  (212) 808-7897
E-mail:  cwolfe@kelleydrye.com; jalderson@kelleydrye.com
*Counsel for Debtor*

Jeffrey N. Pomerantz (CA Bar No. 143717)
Jeffrey W. Dulberg (CA Bar No. 181200)
**PACHULSKI STANG ZIEHL & JONES LLP**
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
E-mail: jpomerantz@pszjlaw.com; jdulberg@pszjlaw.com
*Local/Conflicts Counsel for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>CONTESSA PREMIUM FOODS, INC.,<br><br>Debtor.[1] | Case No.:  2:11-bk-13454-PC<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER (A) APPROVING SALE PROCEDURES, INCLUDING BREAK-UP FEE, IN CONNECTION WITH THE PROPOSED SALE AT AUCTION OF THE CONTESSA ENTERPRISE; (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF REAL AND PERSONAL PROPERTY LEASES AND EXECUTORY CONTRACTS IN CONNECTION THEREWITH; (C) APPROVING SALE OF ALL OR CERTAIN CONTESSA ENTERPRISE ASSETS TO THE HIGHEST AND BEST BIDDER AT AUCTION; AND (D) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MARC BILBAO**<br><br>**Hearing**<br>Date:  May 4, 2011<br>Time: 9:30 a.m. (PT)<br>Place: Courtroom 1539<br>         Edward R. Roybal Federal Bldg.<br>         255 East Temple Street<br>         Los Angeles, CA 90012<br>         Judge: Peter H. Carroll |

---

[1]   The Debtor is a California corporation, Fed. Tax I.D. No. 33-0020606.  The Debtor's address is
222 West 6th Street, 8th Floor, San Pedro, California 90731.

**TO THE HONORABLE PETER H. CARROLL, UNITED STATES BANKRUPTCY JUDGE, AND ALL PARTIES ENTITLED TO NOTICE:**

**PLEASE TAKE NOTICE** that a hearing (the "Sale Procedures Hearing") will be held on **May 4, 2011 at 9:30 a.m. (prevailing Pacific Time)** before the Honorable Peter H. Carroll in Courtroom 1539, Edward R. Roybal Federal Bldg., 255 East Temple Street, Los Angeles, California to consider the motion (the "Motion") of Contessa Premium Foods, Inc., a California corporation, debtor and debtor in possession herein (the "Debtor") for an order substantially in the form attached as **Exhibit A** to the Motion (the "Sale Procedures Order"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):

(a) approving proposed sale procedures, including a break-up fee, substantially in the form attached as **Exhibit A** to the Sale Procedures Order (the "Sale Procedures") in connection with the proposed sale at auction (the "Auction") of substantially all of the Debtor's assets (the "Contessa Enterprise") or certain segments thereof as follows:  (i) the Debtor's intellectual, real and personal property and leasehold interests in a large, state of the art, environmentally friendly food processing plant located in the City of Commerce, California (the "Green Cuisine Plant"), (ii) the Debtor's business, including intellectual property, relating to the production of premium seafood, primarily comprised of the sourcing and distribution of frozen shrimp products from Southeast Asia (the "Seafood Business"),[2] and/or (iii) the Debtor's business, including intellectual property, relating to the development and production of

---

[2] For the avoidance of doubt, the Seafood Business does not include any interest in any foreign shrimp provider.

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

restaurant quality frozen meals, fruits and vegetable blends (the "Convenience Meals Business", together with the Seafood Business, the "Non-Plant Businesses"));

(b) confirming June 13, 2011 as the date of the Auction, and a date and time convenient to the Court, but no later than June 15, 2011, as the date of the hearing to consider approval of the sale of the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise (the "Sale Approval Hearing");

(c) approving the form and manner of the Debtor's notice of the respective dates, times and places for the Auction and Sale Approval Hearing, including the time for filing of any objections to the approval of the Sale (the "Sale Notice"), substantially in the form attached as **Exhibit B** to the Motion;

(d) approving at the Sale Approval Hearing the highest and best bid selected by the Debtor at the Auction in accordance with the Sale Determination Process (as defined below);

(e) approving procedures for the assumption and assignment of real and personal property leases and executory contracts in connection with the Sale Procedures and Auction;

(f) authorizing the Debtor under the Sale Procedures and in accordance with the Sale Determination Process and following consultation with GE Capital Public Finance ("GECPF"), and with General Electric Capital Corporation ("GECC") and Dedeaux Properties, LLC ("Dedeaux", together with GECC, the "Plant Lease Parties"), to seek to reject the Green Cuisine Plant leases and abandon the other Green Cuisine Plant assets by serving and filing a notice of lease rejection substantially in the form attached as **Exhibit C** to the Motion; and

(g) granting such other relief as is fair and equitable.

**PLEASE TAKE FURTHER NOTICE** that the Sale Procedures are summarized in the attached Memorandum of Points and Authorities.  In case of any conflicts or omissions, the Sale Procedures Order and the Sale Procedures attached as Exhibit A to the Sale Procedures Order shall govern.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Procedures, the Debtor proposes to sell each of the Green Cuisine Plant, the Non-Plant Businesses, and/or the Contessa Enterprise based upon the highest and best bid or bids received at Auction, followed by the proposed approval of such highest and best bid or bids at the Sale Approval Hearing, free and clear of all liens, claims, interests and encumbrances whatsoever, pursuant to sections 363(b), (f) and (m) of the Bankruptcy Code.

In implementing the Sale Procedures, including but not limited to the selection of the highest and best bid or bids received at the Auction, the Debtor and its professionals will fully consult with and provide timely information to each of the Official Committee of Unsecured Creditors (the "Committee") and Wells Fargo Bank, N.A. ("Wells Fargo").  The Debtor and its professionals will use all commercially reasonable efforts to obtain the support of the Committee and Wells Fargo for each sale determination made by the Debtor (the "Sale Determination Process").

The Debtor will immediately give written notice, including notice of the terms and conditions of sale and a copy of the applicable Form Agreement (as defined below), of such highest and best bid or bids received at the Auction for each of the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise, to Wells Fargo and GECPF, the Committee, the Plant Lease Parties, and any other party known to assert a security interest or other interest in the assets to be sold, all counterparties to real estate leases or executory contracts to be assumed and assigned to such bidder or bidders, and any other party that requests to receive such notice on or

before the hearing on this Motion, and will file the same with the Court at least 24 hours prior to the Sale Approval Hearing.  As set forth in the proposed Sale Notice, objections to the sale of the Green Cuisine Assets, the Non-Plant Businesses and/or the Contessa Enterprise to the highest and best bidder or bidders (as applicable) shall be set forth in writing and shall specify with particularity the grounds for such objections and other statements of position and shall be filed with the Court on or before the Sale Approval Hearing.

**PLEASE TAKE FURTHER NOTICE** that the Debtor has not selected a stalking horse bidder or bidders for the sale of the Green Cuisine Plant, the Non-Plant Assets and/or the Contessa Enterprise, and has yet to determine the terms and conditions of any such sale.  The Debtor, based upon the expressions of interest received from Qualified Bidders (as defined in the Sale Procedures), in its reasonable business judgment and in accordance with the Sale Determination Process, may designate one or more of such Qualified Bidders as a stalking horse bidder and provide a break-up fee.  As set forth in the Sale Procedures, the Debtor will immediately provide written notice of such stalking horse bidder or bidders, including the applicable Form Agreement(s), to all Qualified Bidders, GECPF, and the Plant Lease Parties, and file such notice with the Court.

**PLEASE TAKE FURTHER NOTICE** that the Debtor is in the process of finalizing a form of asset purchase agreement ("Form Agreement").  The proposed Form Agreement will be filed with the Court as a supplement to this Motion no later than two (2) days prior to the Sale Procedures Hearing.

**PLEASE TAKE FURTHER NOTICE** that the Debtor has marketed the assets that comprise the Contessa Enterprise both prepetition through its financial advisor, Scouler & Company, LLC, and postpetition through its retention of Imperial Capital, LLC as its investment

banker ("<u>Imperial</u>").[3]  As a result of these efforts, the Debtor and Imperial have contacted (or

been contacted by) over 145 potential purchasers, including both strategic and financial buyers.

Of these, approximately 60 have executed non-disclosure agreements for additional information

and access to the Debtor's data rooms.  The Debtor and Imperial, as of the date hereof, are in the

process of negotiating another approximately 5 non-disclosure agreements.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice, the

accompanying Memorandum of Points and Authorities, the Declaration of Marc Bilbao attached

as **<u>Exhibit D</u>** to the Motion, the statements, arguments and representations of counsel who

appear at the Sale Procedures Hearing, the  record in this case, and any other evidence properly

before the Court prior to or at the Sale Procedures Hearing and all matters of which this Court

may properly take judicial notice.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 6004-

1(b)(4), any objection or other response to the Sale Procedures set forth in detail in the

Memorandum of Points and Authorities attached hereto must be (a) filed with the Clerk of the

Court for the Los Angeles Division at the Edward R. Roybal Federal Bldg., 255 East Temple

Street, Los Angeles, CA 90012; (b) served upon counsel for the Debtor as follows:  Kelley Drye

& Warren LLP, 101 Park Ave., New York, NY 10178, Attn.: Craig A. Wolfe Esq.(email:

Cwolfe@KelleyDrye.com); (c) the Office of the United States Trustee as follows:  725 S.

Figueroa St., 26th Floor, Los Angeles, CA 90017, Attn.:  Russell Clementson, Esq.; (d) Wells

Fargo Bank, N.A. as follows:  Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree St., N.E.,

24th Floor, Atlanta, GA 30308, Attn.: Jesse H. Austin, III, Esq. (email:

jessaustin@paulhastings.com); (e) General Electric Capital Corporation and GE Capital Public

---

[3]    The Application of Debtor and Debtor in Possession to Employ Imperial Capital, LLC, as Investment
Banker to the Debtor, *Nunc Pro Tunc* to February 22, 2011, was filed on March 28, 2011and is
pending before the Bankruptcy Court (Dkt. No. 157).

Finance, Inc. as follows:  Davis Wright Tremaine LLP, 505 Montgomery St., Ste. 800, San

Francisco, CA 94111, Attn.: Harvey S. Schochet, Esq. (email: harveyschochet@dwt.com); (f)

Dedeaux Enterprises, LLC as follows:  DLA Piper LLP, 1251 Avenue of the Americas, New

York, NY 10020, Attn.: George B. South III, Esq. (email: george.south@dlapiper.com); (g)

counsel to the Official Committee of Unsecured Creditors as follows:  Arent Fox LLP, Gas

Company Tower, 555 West Fifth St., 48th Floor, Los Angeles, CA 90013, Attn.: Mette H. Kurth,

Aram Ordubegian, and Katie Lane (email: kurth.mette@arentfox.com, lane.katie@arentfox.com,

and ordubegian.aram@arentfox.com); and (h) delivered as a courtesy copy to the Chambers of

Judge Peter H. Carroll, United States Bankruptcy Court, Edward R. Roybal Federal Bldg., 255

East Temple Street, Los Angeles, CA 90012, at least one (1) day prior to the Sale Procedures

Hearing, or by such other time as may be ordered by the Court.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule

9013-1(h), the failure to timely file and serve a response in accordance with the Local

Bankruptcy Rules may be deemed by the Court to be consent to the granting of the relief

requested in the Motion.

**PLEASE TAKE FURTHER NOTICE** that the Debtor served this Notice,[4] by overnight

mail, upon (a) the Office of the United States Trustee; (b) counsel to the Official Committee of

Unsecured Creditors; (c) Wells Fargo Bank, N.A. and its counsel, Paul, Hastings, Janofsky &

Walker LLP; (d) counsel to General Electric Capital Corporation and GE Capital Public Finance,

Inc.; (e) counsel to Dedeaux Enterprises, LLC; (f) all counterparties to the Green Cuisine Plant

Leases and other Executory Contracts (as defined in the Motion); (g) the Internal Revenue

---

[4]    As limited by the Order Establishing Notice Procedures And Permitting Debtor and Debtor-In-
Possession to Serve Insured Depository Institutions By First Class Mail, entered on February 1,
2011 (Dkt. No. 32).

1 | Service So. Cal.; and (h) all entities on the Rule 2002 service list as of the date of entry of the

2 | Sale Procedures Order.[5]

3 |     **WHEREFORE**, the Debtor respectfully requests that the Court enter the Sale Procedures

4 | Order substantially in the form annexed to the Motion as __**Exhibit A**__:  (a) approving the Sale

5 | Procedures, including break-up fee, in connection with the sale at Auction of the Contessa

6 | Enterprise; (b) approving procedures for the assumption and assignment of real and personal

7 | property leases and executory contracts in connection therewith; (c) approving the sale of all or

8 | certain Contessa Enterprise assets to the highest and best bidder at Auction; and (d) granting

9 | such other relief as is fair and equitable.

Dated:     April 26, 2011                    PACHULSKI STANG ZIEHL & JONES LLP

By:     _/s/ Jeffrey W. Dulberg_____
                Jeffrey N. Pomerantz (CA Bar No. 143717)
                Jeffrey W. Dulberg (CA Bar No. 181200)
                *Local/Conflicts Counsel for Debtor*


                    KELLEY DRYE & WARREN LLP

                    Craig A. Wolfe (CA Bar No. 200870)
                    Jason R. Alderson (CA Bar No. 233176)
                    *Counsel for Debtor*

---

[5]     Imperial will provide notice of this Motion and Sale Procedures Hearing to all entities who
have executed non-disclosure agreements with the Debtor in connection with the potential
acquisition of any or all of the Contessa Enterprise or who have otherwise expressed to the
Debtor an interest in purchasing the Contessa Enterprise or any part thereof.

# MEMORANDUM OF POINTS AND AUTHORITIES
## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................................1

II.    STATEMENT OF FACTS ..................................................................................................3

    A.    Jurisdiction And Venue ...........................................................................................3

    B.    General Background .................................................................................................4

III.    THE SALE PROCEDURES ..............................................................................................11

    A.    Overview Of The Relief Requested .......................................................................11

    B.    The Proposed Sale Procedures ..............................................................................12

    C.    Objections To The Sale Of Contessa Enterprise Assets To The Winning
           Bidder or Bidders ..................................................................................................25

IV.    ARGUMENT ....................................................................................................................26

    A.    Cause Exists To Approve The Sale Of The Green Cuisine Plant, The
           Non-Plant Businesses And/Or The Contessa Enterprise Under Section
           363(b) Of The Bankruptcy Code ..........................................................................26

    B.    This Court Is Empowered To Approve The Fair And Reasonable Sales
           Procedures ..............................................................................................................27

    C.    The Debtor Will Be Able To Sell The Green Cuisine Plant, The Non-
           Plant Businesses And/Or The Contessa Enterprise Free And Clear Of
           Liens, Interests Or Encumbrances Under Section 363(f) Of The
           Bankruptcy Code ..................................................................................................30

    D.    The Assumption And Assignment Procedures Will Expedite The Sale
           Process And Should Be Approved ........................................................................31

V.    CONCLUSION ................................................................................................................32

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

- i -

## MEMORANDUM OF POINTS AND AUTHORITIES
## TABLE OF AUTHORITIES

**Page**

### <u>CASES</u>

*Calpine Corp. v. O'Brien Environmental Energy, Inc.,*
  181 F.3d 527 (3rd Cir. 1999) ................................................................29, 30

*Doehring v. Crown Corp (In re Crown Corp.),*
  679 F.2d 774 (9th Cir. 1982) ....................................................................27

*Equity Funding Corp. of America v. Finance Associates (In re Equity*
  *Funding Corp.),*
  492 F.2d 793 (9th Cir. 1974) ....................................................................27

*Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.),*
  107 F.3d 558 (8th Cir. 1997) ....................................................................27

*In re 995 Fifth Ave. Assocs., L.P.,* 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989),
  *rev'd in part on other grounds,* 963 F.2d 503 (2d Cir. 1992) ................28, 29

*In re Atlanta Packaging Products, Inc.,*
  99 B.R. 124 (Bankr. N.D. Ga. 1988) ........................................................27

*In re Canyon Partnership,*
  55 B.R. 520 (Bankr. S.D. Cal. 1985) ........................................................26

*In re Continental Airlines, Inc.,*
  780 F.2d 1223 (5th Cir. 1986) ..................................................................26

*In re Crowthers McCall Pattern, Inc.,*
  114 B.R. 877 (Bankr. S.D.N.Y. 1990) ......................................................28

*In re Curlew Valley Associates,*
  14 B.R. 506 (Bankr. D. Utah 1981) ..........................................................26

*In re Financial News Network, Inc.,*
  126 B.R. 152 (S.D.N.Y. 1991), appeal dismissed, 931 F. 2d 217 (2d
  Cir. 1991) ..................................................................................................28

*In re Hupp Industrial, Inc.,*
  140 B.R. 191 (Bankr. N.D. Ohio 1992) ....................................................29

*In re Lionel Corp.,*
  722 F.2d 1063 (2d Cir. 1983)....................................................................26

*In re Moore,*
  110 B.R. 924 (Bankr. C.D. Cal. 1990) ......................................................26

*In re Table Talk, Inc.,*
  53 B.R. 937 (Bankr. D. Mass. 1985) ........................................................28

*Official Committee of Subordinated Bondholders v. Integrated Resources,*
*Inc. (In re Integrated Resources, Inc.),*
147 B.R. 650 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir.
1993) ...................................................................................................................28, 29

*Walter v. Sunwest Bank (In re Walter),*
83 B.R. 14 (B.A.P. 9th Cir. 1988) ..................................................................26

## STATUTES

11 U.S.C. § 105 ...........................................................................................................3

11 U.S.C. § 363 ................................................................................................. *passim*

11 U.S.C. § 365 ..............................................................................................3, 23, 31

28 U.S.C. § 1102 ........................................................................................................4

28 U.S.C. §§ 1408 ......................................................................................................3

28 U.S.C. §§ 157 .....................................................................................................2, 3

## FED. R. BANKR. PROC.

Rule 2002 ..................................................................................................................15

Rule 6004 ....................................................................................................................3

Rule 6006 ...............................................................................................................3, 32

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

## MEMORANDUM OF POINTS AND AUTHORITIES[1]

## I.
## INTRODUCTION

The relief requested by this motion ("Motion") is critical to the Debtor's goal of ensuring that its creditors obtain the best recovery possible in this case. Under the proposed Sale Procedures (as herein defined), the Debtor seeks authorization to conduct an auction and sale process for the Debtor's (i) interests in a large state of the art, environmentally friendly food processing plant located in the City of Commerce, California (the "Green Cuisine Plant"),[2] and (ii) Seafood Business and Convenience Meals Business (as such terms are defined below, the "Non-Plant Businesses").

The Sale Procedures are carefully crafted to provide the Debtor with the requisite flexibility to pursue an auction and sale of any combination of these assets and, in so doing, maximize creditor recoveries. The Sale Procedures provide that if a bid or bids acceptable to the Debtor and the other members of an Evaluation Committee (as defined below) are submitted for the Green Cuisine Plant and the Non-Plant Businesses (such assets, constituting substantially all of the Debtor's's assets, collectively, the "Contessa Enterprise"), or for some or all of the Green Cuisine Plant and the Non-Plant Businesses separately, the Debtor will conduct an auction and seek approval to sell such assets to the winning bidder or bidders free and clear of any liens, interests or encumbrances pursuant to section 363 of the Bankruptcy Code. The Debtor has not selected a stalking horse bidder or bidders and will only seek to do so if, in its business judgment and in accordance with the Sale Determination Process (as defined below), such stalking horse bidder or bidders will act as a catalyst to competitive bidding from other qualified bidders.

---

[1] The Declaration of Marc Bilbao in support of the Motion is attached as Exhibit D hereto.

[2] The Debtor's interests in the Green Cuisine Plant include but are not limited to real and personal property and leasehold interests, as well as all intellectual property assets in which the Debtor has a legal and/or equitable interest and which are used in, held for use in or necessary for the conduct of the Green Cuisine Plant.

Moreover, the proposed auction and sale of all or part of the Contessa Enterprise includes all intellectual property rights to which the Debtor asserts a legal and/or equitable interest, and which are used in, held for use in or necessary for the conduct of the Green Cuisine Plant, the Seafood Business and the Convenience Meals Business.  As set forth in detail below, the Debtor will prepare and annex a schedule of such intellectual property assets subject to the auction and sale to the Sale Procedures Order on or before the hearing on this Motion.[3]

In the event an acceptable bid or bids for the entire Contessa Enterprise or for any component thereof, *e.g.*, the Green Cuisine Plant, the Seafood Business or the Convenience Meals Business, are not forthcoming or are insufficient, the Debtor will cancel the auction with respect to such assets, in accordance with the Sale Determination Process and, together with the Key Creditor Group (as defined below), evaluate other options that include the promulgation of a stand-alone plan of reorganization.  The Debtor also seeks related authority, if acceptable bids for the Green Cuisine Plant do not materialize as expected, in the Debtor's discretion and in accordance with the Sale Determination Process, to be able to reject the Green Cuisine Plant Leases (as defined below) and abandon the other Green Cuisine Plant assets.  With upside flexibility and downside protection, the Sale Procedures test the Debtor's assets in the marketplace and are designed to result in the realization of the highest and best value for the Debtor's estate for the benefit of its creditors.

The Sale Procedures are fair and reasonable and have received, or are expected shortly to receive, the endorsement of the Debtor's key constituents in this case, including Wells Fargo

---

[3]    As explained below, in the event the Debtor, the Key Creditor Group and John Z. Blazevich, the Debtor's President, Chief Executive Officer and largest shareholder, cannot agree on an undisputed schedule of the Debtor's intellectual property rights subject to the auction and sale, the Debtor will seek an Order from the Court determining, *inter alia*, that any disputed interest asserted by Mr. Blazevich will attach to the proceeds of the sale of each of the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise (as applicable) pursuant to section 363(f)(4) of the Bankruptcy Code.

Bank, N.A. ("Wells Fargo"), General Electric Capital Corporation and GE Capital Public

Finance, Inc., Dedeaux Properties, LLC and the Committee (as defined below) (collectively, the

"Key Creditor Group").  The Debtor's implementation of the Sale Procedures is also governed

by a Sale Determination Process that involves the active participation of an Evaluation

Committee consisting of the Debtor, the Committee and Wells Fargo.  Critically, the Debtor and

its professionals have been marketing the Contessa Enterprise – both in whole or in part – since

October 2010, and their sustained efforts have generated significant interest in the marketplace

from many strategic and financial potential buyers.  To date, approximately 60 operational,

strategic and financial buyers have executed non-disclosure agreements in furtherance of

becoming potential bidders for the assets, with another 5 non-disclosure agreements currently

under negotiation.  The Sale Procedures contain the needed flexibility to harness this interest,

and in turn definitively establish an appropriate fair market value for the Contessa Enterprise so

that the Debtor (in accordance with the Sale Determination Process), parties in interest, and the

Court can all properly weigh the sale of Debtor's assets and clearly determine which course of

action maximizes value for the Debtor's estate and its creditors.

## II.
## STATEMENT OF FACTS

### A.    Jurisdiction And Venue

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C.

§§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 105(a), 363

and 365 of title 11 of the United States Code, 11. U.S.C. §§ 101-1532 (the "Bankruptcy Code")

and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules").

**B.      General Background**

On January 26, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.

On February 8, 2011, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors ("Committee") pursuant to section 1102(a) of the Bankruptcy Code (Dkt. No. 65).  The Committee is currently comprised of B and D Foods, BrucePac, Dedeaux Properties, LLC, Pacific Southwest Container, and Sage V Foods, Inc.

**1.      General Description Of The Debtor**

**(a)      The Debtor's Business**

In 1984, John Z. Blazevich, the Debtor's President, Chief Executive Officer and largest shareholder, started the Debtor's business as a small shrimp importer in San Pedro, California where it remains headquartered today.  In the 26 years the Debtor has been operating, Mr. Blazevich has grown the company through his personal relationships with suppliers and customers into a premium provider of farm raised shrimp, convenience meals, stir-fry vegetables, and other frozen food products that are marketed and/or sold primarily in the United States and to a lesser extent in Canada, Europe, Asia, and Mexico.

The Debtor divides its Non-Plant Businesses into two internal groups:  (i)  the premium seafood business, including all related intellectual property assets, involving the sourcing and distribution of frozen shrimp products procured from Southeast Asia (the "Seafood Business"),[4] and (ii) the convenience meals business, including all related intellectual property assets, involving the development and production of restaurant quality frozen meals, fruits and

---

[4]      For the avoidance of doubt, the Seafood Business does not include any interest in any foreign shrimp provider.

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY  10178

4

vegetable blends, the raw ingredients of which are procured from sources in Asia, Central

America, Mexico and the United States (the "Convenience Meals Business"). The Debtor's

products are found in the frozen food section of major retail supermarkets, U.S. armed forces

commissaries and fine dining establishments. A comprehensive confidential information

memorandum has been made available to all interested bidders who have executed non-

disclosure agreements with the Debtor, which describes the Debtor's business, its assets, and its

financial performance and projections in considerable detail. In addition, a brief summary of the

Contessa Enterprise is set forth below.

### (b)    The Green Cuisine Plant

After two profitable decades in business, the Debtor began an expansion program in 2005

by investing in the Green Cuisine Plant located in the City of Commerce, California that would

become the world's first environmentally-friendly frozen food processing center. The land,

building and certain equipment are leased from third parties with certain other equipment being

financed under a secured industrial development bond financing arrangement. Not long after the

new plant started production in January 2008, the so-called Great Recession occurred,

significantly reducing the sale of the Debtor's premium quality products as consumers turned to

less expensive alternatives. Rather than increasing its sales through the increased capacity of the

new plant, sales actually declined because of the contracting economy. For instance, in 2010, the

Debtor had sales of approximately $154 million, down from its peak in 2007 of approximately

$221 million. Unable to increase its sales sufficiently to support the additional debt service

associated with the new plant, the Debtor commenced this chapter 11 proceeding with the goal of

restructuring its entire business through a plan of reorganization intended to rationalize its

balance sheet and shed excess production capacity by selling the Green Cuisine Plant and related

liabilities.

**(c)      The Green Cuisine Plant Transactions**

The Debtor entered into four general transactions in connection with the Debtor's acquisition of the Green Cuisine Plant.  The first transaction is the IDB Loan (defined below), which is a financing transaction secured by Debtor-owned equipment at the plant.  The second is the real property lease for the plant facility itself.  The third transaction is documented under an agreement styled as a personal property lease of HVAC, refrigeration, racking and other material handling equipment owned by the lessor.  The fourth transaction is also documented under an agreement styled as a personal property lease with the same lessor for an electrical generation solar roofing system that is a key element of the Debtor's environmentally friendly "green" plant concept.  The one real and two personal property leases are referred to herein as the "Green Cuisine Plant Leases."

**(1)      Industrial Revenue Bonds**

IDB Loan.  On or about June 1, 2007, the California Municipal Finance Authority (the "Authority") issued and assigned a tax-exempt industrial revenue bond in the amount of $10 million (the "IDB Bond") to GE Capital Public Finance ("GECPF").  The proceeds of the IDB Bond were loaned to the Debtor (the "IDB Loan") pursuant to a Loan Agreement dated as of June 1, 2007 (the "IDB Loan Agreement") among the Authority, as issuer, GECPF, as lender, and the Debtor, as borrower.

Pursuant to the IDB Loan Agreement, the Debtor used the IDB Loan to purchase and install equipment at the Green Cuisine Plant, and the Debtor is obligated to repay the IDB Loan directly to GECPF.  The Debtor's monthly obligation to GECPF under the IDB Loan is $108,145.54.

The IDB Loan matures on July 1, 2017, and it is secured by all equipment and fixtures, but not inventory, located at or on the Green Cuisine Plant.  The IDB Loan bears interest at

5.41% per annum.

As of the Petition Date, the outstanding amount owed to GECPF under the IDB Loan was approximately $7,548,000.

### (2)     The Green Cuisine Plant Leases

Dedeaux Real Property Lease.  The land and buildings on which the Green Cuisine Plant sits are leased to the Debtor pursuant to a twenty-year (15 years with a 5-year renewal option) triple net lease with Dedeaux Enterprises, LLC ("Dedeaux", together with GECC (as defined below), the "Plant Lease Parties").  There are approximately 17 years remaining on the lease, assuming the renewal option were to be exercised.  The monthly rent is approximately $126,000.

Racking/HVAC Lease.  The Debtor entered into a Master Lease Agreement, dated October 27, 2007, with General Electric Capital Corporation ("GECC") that contemplated the parties later entering lease schedules specifically identifying the equipment to be leased.  The first schedule that the parties entered into had a lease commencement date of December 15, 2007, and covered certain racking, HVAC, refrigeration, and material handling equipment.  The total cost for the supply and installation of this equipment was approximately $9.5 million.  The monthly payment is approximately $133,000 with approximately four years remaining on the seven-year term.

Photovoltaic Roofing System Lease.  The second schedule to the GECC Master Lease Agreement has a commencement date of January 1, 2008, and covered a photo voltaic over Samafil roofing system by Solar Integrated Technologies.  The total cost for the supply and installation of this equipment was approximately $2.5 million.  The monthly payment is approximately $36,000 with approximately four years remaining on the seven-year term.

(d)     **Ownership Resolution Of The Debtor's Intellectual Property Rights**

The contemplated sale – both in whole or in part – of the Contessa Enterprise includes all

corresponding intellectual property rights (including all goodwill associated therewith) owned

and/or licensed by the Debtor or in which the Debtor otherwise asserts a legal or equitable

interest and which are used in, held for use in or necessary for the conduct of the Green Cuisine

Plant, the Seafood Business and the Convenience Meals Business.

The Debtor, in consultation with the Key Creditor Group, is working to resolve a dispute

with Mr. Blazevich over ownership to many of the Debtor's key intellectual property rights,

including those listed on Schedule B.22 to the Debtor's Schedules of Assets and Liabilities filed

on March 8, 2011 (Dkt. No. 120) as well as certain subsequently discovered intellectual property

assets.  Mr. Blazevich claims that he was the developer, designer, and/or inventor of the Debtor's

intellectual property, and contends that he still retains legal title to an unspecified number of such

assets, including a shrimp tray that may be used in the Seafood Business.  Finally, Mr. Blazevich

argues that, to the extent he assigned some of the intellectual property assets to the Debtor, he

only assigned legal title and still holds an equitable ownership interest in such assets.

Notwithstanding the competing ownership claims and interests of the Debtor and Mr.

Blazevich,, the parties agree that proceeding with an auction of the various Contessa Enterprise

assets, including intellectual property rights to which the Debtor holds legal or equitable title and

which are used in, held for use in or necessary for the conduct of the Green Cuisine Plant, the

Seafood Business and the Convenience Meals Business, is in the best interest of its estate and

creditors.  Accordingly, and to remove any uncertainty among potential bidders, the Debtor

anticipates soon seeking this Court's approval of a settlement agreement resolving the

intellectual property dispute with Mr. Blazevich so that it may be heard and approved by the

Court on or prior to the hearing on this Motion (the "Blazevich Settlement").  If the Debtor, the

Key Creditor Group, and Mr. Blazevich cannot come to an agreement on the terms of the Blazevich Settlement, then the Debtor will seek an Order from this Court determining the scope of the intellectual property assets in which the Debtor may assert legal or equitable interests, which such interests are disputed or undisputed, and providing that such assets will be included in the sale of the Contessa Enterprise, including any separate sales of the Green Cuisine Plant, the Seafood Business or the Convenience Meals Business, with any disputed interest assert by Mr. Blazevich to attach to the proceeds of such sale pursuant to section 363(f)(4) of the Bankruptcy Code.[5]

### (e)    Schedule Of Debtor-Owned IP

The Key Creditor Group's support for this Motion and the entry of the Sale Procedures Order is conditioned in part on the filing of a schedule listing (i) all of the Debtor's intellectual property assets that are subject to the auction and sale of the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise, and in which the Debtor asserts a legal and/or equitable interest and which are used in, held for use in or necessary for the conduct of the Green Cuisine Plant, the Seafood Business and the Convenience Meals Business; and (ii) any intellectual property assets of which the Debtor is aware in which Mr. Blazevich holds legal title and in which the Debtor does not assert legal and/or equitable interests or which are not held for use in or necessary for the conduct of any aspect of the Contessa Enterprise, and which are not proposed to be included in the Auction (the "Debtor IP Exhibit").  The Debtor will prepare and annex the Debtor IP Exhibit as Exhibit B to the Sale Procedures Order on or before the hearing on this Motion.

---

[5] The ultimate determination of the scope and validity of any such disputed interests, and the value of the intellectual property assets, will be determined at a later time, either pursuant to a settlement agreement or pursuant to a further Order of this Court following notice and a hearing thereon.

**2.** **Sale And Marketing Efforts**

    (a)    **Interest Generated Prepetition**

On October 20, 2010, the Debtor's financial advisor, Scouler & Company, LLC ("Scouler"), which at the time was assisting the company with its prepetition financial restructuring efforts, set up a general data room containing substantial business and financial information on the Debtor's assets. Scouler later set up a more focused data room that provided data specifically pertaining to the Green Cuisine Plant. The data rooms were part of the Debtor's effort to locate a strategic partner that could increase the utilization of the Green Cuisine Plant, a buyer of all or part of the Contessa Enterprise, or a party that could assume the Green Cuisine Plant Leases and take over the plant so that the Debtor could move into a smaller facility while restructuring around its profitable core business sectors – the Non-Plant Businesses.

The Debtor's prepetition marketing efforts generated significant interest in the marketplace for the Contessa Enterprise, and particularly for the Green Cuisine Plant. Based in part on this success, the Debtor announced at the hearing on the first day motions in this case of its intention to file within 30 days a (i) motion to approve flexible auction procedures to sell any combination of the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise and (ii) plan of reorganization that would contemplate a stand-alone reorganization around the Non-Plant Businesses in the event no acceptable bid was received for such assets at auction. As discussed below, the Debtor modified this timeline to involve the Key Creditor Group in the development and implementation of a fully consensual sale process designed to maximize recoveries for creditors.

    (b)    **The Proposed Retention of Imperial Capital, LLC**

After extensive consultation with the Key Creditor Group, the Debtor determined that it should retain a mutually acceptable investment banker to build upon the Debtor's prepetition marketing campaign for all or part of the Contessa Enterprise. The Debtor and the Key Creditor

1   Group selected Imperial Capital, LLC ("Imperial") after interviewing several different banking

2   firms.[6]

3   The Debtor believes that any increased administrative costs and delay caused by

4   Imperial's retention will be more than offset by the additional marketing exposure of the

5   Contessa Enterprise to potential bidders, and the fostering of a consensual process with the Key

6   Creditor Group that reduces plan confirmation risks and other costs which typically accompany a

7   highly adversarial chapter 11 case. Indeed, to date the combined marketing efforts by Scouler

8   and Imperial have resulted in the solicitation of over 145 operating, strategic and financial buyers

9   for the Debtor's asset combinations. Of these, approximately 60 have executed non-disclosure

10  agreements for additional information and access to the Debtor's data rooms. The Debtor and

11  Imperial, as of the date hereof, are in the process of negotiating another approximately 5 non-

12  disclosure agreements. The Debtor firmly believes that the months of marketing efforts that

13  have taken place will unquestionably result in the highest and best price for all or part of the

14  Contessa Enterprise.

### III.
### THE SALE PROCEDURES

**A.      Overview Of The Relief Requested**

By the Motion, the Debtor seeks entry of an order (the "Sale Procedures Order"), the

form of which is annexed hereto as Exhibit A:

    **(a)**    approving the sale and auction procedures, substantially in the form
annexed as Exhibit A to the Sale Procedures Order (the "Sale
Procedures");

    **(b)**    scheduling an auction with respect to the Green Cuisine Plant, the Non-
Plant Businesses and/or the Contessa Enterprise, for June 13, 2011 (the
"Auction");

---

[6]   The Application of Debtor and Debtor in Possession to Employ Imperial Capital, LLC, as
Investment Banker to the Debtor, *Nunc Pro Tunc* to February 22, 2011, was filed on March 28,
2011and is pending before the Bankruptcy Court (Dkt. No. 157).

(c)      scheduling a hearing to consider the sale of the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise, free and clear of any liens, interests or encumbrances pursuant to sections 363(b), (f), and (m) of the Bankruptcy Code no later than June 15, 2011 (the "Sale Approval Hearing");

(d)      approving at the Sale Approval Hearing the highest and best bid selected by the Debtor at the Auction in accordance with the Sale Determination Process;

(e)      approving the form and manner of the notice of the Auction and the Sale Approval Hearing, substantially in the form annexed hereto as Exhibit B (the "Sale Notice");

(f)      authorizing the Debtor under the Sale Procedures and in accordance with the Sale Determination Process and following consultation with GECPF and the Plant Lease Parties, if no bids for the Green Cuisine Plant are submitted, to seek to reject the Green Cuisine Plant Leases and abandon the other Green Cuisine Plant assets by serving and filing a notice of lease rejection substantially in the form annexed hereto as Exhibit C  (the "Green Cuisine Lease Rejection Notice");[7] and

(g)      approving procedures for the assumption and assignment of real or personal property leases and executory contracts in connection with the Sale Procedures and Auction.

**B.    The Proposed Sale Procedures**

As noted above, the Debtor believes that the Sale Procedures as described herein[8] provide an appropriate framework for marketing and, if appropriate, selling the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise, and in the process achieving the best possible recovery for its creditors.  Based on these Sale Procedures, and particularly the involvement of the Evaluation Committee (as defined below) in every stage of the sale process and the anticipated support of the Key Creditor Group, the Debtor intends to demonstrate at the Sale Approval Hearing that the requirements for the protections afforded to good faith

---

[7]      The Debtor reserves the right to seek rejection of the Green Cuisine Plant Leases and abandon the other Green Cuisine Plant assets on shortened notice.

[8]      The description of the Sale Procedures in this Motion is qualified in its entirety by the Sale Procedures themselves and the Sale Procedures Order.  In the event of any inconsistency, the Sales Procedures or the Sale Procedures Order, as applicable, will govern and control.

purchasers under section 363(m) of the Bankruptcy Code will have been met with regard to any

sale under the Sale Procedures.

1.    **The Sale Determination Process And The Evaluation Committee**

(a)    Sale Determination Process.  The Debtor will be authorized to take all of the actions contemplated by the Sale Procedures, including conducting the Auction.  All decisions and determinations to be made by the Debtor under the Sale Procedures, and the exercise of the Debtor's discretion in accordance with its reasonable business judgment in connection therewith (each, a "Sale Determination"), shall be undertaken in the following manner (the "Sale Determination Process").

(b)    Evaluation Committee.  Imperial Capital LLC will consult fully with, and provide sufficient information and recommendations in a timely manner to, the Debtor, along with its counsel, Kelley Drye & Warren LLP, and its financial advisor, Scouler & Company LLC (collectively, the "Debtor's Professionals"), and each of the Committee and its professional advisors, and Wells Fargo and its professional advisors (the Debtor, the Committee and Wells Fargo are herein referred to as the "Evaluation Committee"), with respect to Sale Determinations, including: (i) the qualification of bidders; (ii) the evaluation of expressions of interest received from the bidders; (iii) the selection of the bidders to be afforded opportunities to participate in management presentations and more extensive due diligence during the time period between the submission of expressions of interest and the Auction; (iv) the selection of a stalking horse bidder or bidders, if any, and the terms of any stalking horse protections to be provided; (v) the evaluation of the bids presented at the Auction; (vi) the selection of the highest and best bid or bids; (vii) any determination that the bid or bids received for all or a portion of the Contessa Enterprise is insufficient to justify a sale of such assets; and (viii) any other decisions materially impacting the sale process.

(c)    Sale Determinations.  The Evaluation Committee shall work together in good faith and shall use all commercially reasonable efforts to reach a consensus regarding each Sale Determination to be made by the Debtor. Nothing in the Sale Procedures shall be deemed to constitute the consent of either the Committee or Wells Fargo to any Sale Determination.

(d)    Evaluation Committee Dispute Resolution.  In the event that the Debtor's Professionals are unable to achieve a consensus among the Debtor and the other members of the Evaluation Committee with respect to any Sale Determination, the Debtor shall have the right to make such Sale Determination, subject to the right of any other member of the Evaluation Committee to seek an immediate emergency hearing (which request the Debtor shall not oppose) before this Court (which hearing may be conducted telephonically) in order to challenge such Sale Determination. Notice of any such request for an emergency hearing shall be by email only to the Debtor and counsel for the Committee or counsel for Wells

Fargo, as the case may be, and shall be sufficient if it is received no less than twenty-four (24) hours prior to the hearing.[9]

**(e)** CEO Participation. If John Z. Blazevich, the Debtor's Chief Executive Officer, participates on the Evaluation Committee, he shall not be permitted to seek to be a Qualified Bidder in connection with the Sale unless (i) the Committee and Wells Fargo consent, or (ii) any assets with respect to which Mr. Blazevich seeks to present a bid are not otherwise subject to a Qualified Bid as of the Bid Deadline; *provided, however,* that nothing herein prohibits Mr. Blazevich from seeking to become certified as a Potential Bidder or a Qualified Bidder, subject to the bidding restrictions set forth in this Section.

**(f)** Effectiveness of Sale Determination Process. This Sale Determination Process shall cease to be effective (but not the requirement of the Debtor's Professionals to share information and to consult with the Evaluation Committee) in the event that one or more Qualified Bids are submitted which provide a purchase price for the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise, together or in the aggregate, that exceeds $50,000,000, or such lesser amount as the Debtor may demonstrate to the reasonable satisfaction of the Committee and Wells Fargo would be sufficient to provide full payment to all holders of allowed secured, administrative, priority and unsecured claims in the Debtor's chapter 11 case, (including any lease or executory contract rejection claims).

## 2.    The Sale Notice

The Debtor proposes to serve the Sale Notice substantially in the form attached as Exhibit B to this Motion, with a copy of the Sale Procedures Order, within 2 business days after entry of the Sale Procedures Order, by first class mail, postage prepaid, upon[10] (i) the Office of the United States Trustee; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) Wells Fargo Bank, N.A. and its counsel, Paul, Hastings, Janofsky & Walker LLP; (iv) General Electric Capital Corporation and GE Capital Public Finance, Inc., and their counsel Davis Wright Tremaine LLP; (v) Dedeaux Properties, LLC and its counsel DLA Piper LLP; (vi) all entities who executed non-disclosure agreements with the Debtor in connection with the potential

---

[9]     Email notice of any emergency hearing shall also be provided to GECPF and the Plant Lease Parties.

[10]     As limited by the Order Establishing Notice Procedures And Permitting Debtor and Debtor-In-Possession to Serve Insured Depository Institutions By First Class Mail, entered on February 1, 2011 (Dkt. No. 32).

KELLEY DRYE &
WARREN LLP
101 Park Avenue
New York, NY 10178

acquisition of any or all of the Contessa Enterprise or who have otherwise expressed to the

Debtor an interest in purchasing the Contessa Enterprise or any part thereof; (vii) all

counterparties to the Green Cuisine Plant Leases and other Executory Contracts (as defined

below); (viii) all federal, state, local regulatory or taxing authorities or recording offices which

have a reasonably known interest in the relief requested by the Motion; (ix) the Internal Revenue

Service So. Cal.; (x) the United States Attorneys' Office; (xi) the United States Attorney

General's Office; and (xii) all entities on the Rule 2002 service list as of the date of entry of the

Sale Procedures Order.

### 3.    Due Diligence And Becoming A Potential Bidder

Any party that satisfies the following criteria shall qualify as a "Potential Bidder" and

shall be permitted to conduct due diligence with respect to the Green Cuisine Plant, the Non-

Plant Businesses and/or the Contessa Enterprise.

> **(a)**    Due Diligence.  Upon execution of a confidentiality agreement (in form and substance satisfactory to the Debtor), which confidentiality agreement must permit the disclosure of the bidder's identity to the Evaluation Committee,[11] and the delivery of a preliminary indication of interest to Imperial Capital, LLC, 2000 Avenue of the Stars, 9th Floor, South Tower, Los Angeles, California 90067, Attn.: Marc Bilbao and Nicole Fry,[12] by no later than May 6, 2011 at 12:00 p.m. (prevailing Pacific Time),[13] (i) any party that wishes to conduct due diligence with respect to the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise may be granted access to all material information that has been or will be provided to other bidders; provided that, upon notice to the each member of the Evaluation Committee, the Debtor shall retain the ability to withhold trade secrets or other proprietary information from competitors, and (ii) a potential purchaser shall be provided a form asset purchase agreement that shall be reasonably acceptable to the Evaluation

---

[11]    If the Potential Bidder is a special purpose or similar entity, such disclosure shall include the equity holders of such Potential Bidder.

[12]    Imperial shall immediately distribute each preliminary indication of interest and all accompanying or related information it receives to the Debtor, the other Debtor's Professionals, and the Evaluation Committee.

[13]    Detailed instructions regarding the delivery of a preliminary indication of interest are set forth in the cover letter accompanying Imperial's Confidential Information Memorandum in substantially the form annexed to the Sale Procedures as Exhibit 1.

Committee (the "Form Agreement") relating to the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise, substantially in the form annexed to the Sale Procedures As Exhibit 2.

**(b)** Evidence of Financial Wherewithal.  Any party wishing to move forward must provide Imperial with sufficient information to demonstrate to the Debtor and the Evaluation Committee, in accordance with the Sale Determination Process, that such party has the financial wherewithal and ability to consummate the transactions contemplated in the Form Agreement with respect to the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise.

**4.    Qualified Bids And Becoming A Qualified Bidder**

Only a Potential Bidder may submit a bid for the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise.  A bid that, in the Debtor's reasonable business judgment, in accordance with the Sale Determination Process, satisfies the following criteria shall be a "Qualified Bid", and a Potential Bidder that submits a Qualified Bid shall be a "Qualified Bidder".  Notwithstanding the foregoing, Wells Fargo and GECPF, to the extent of the validity, priority and amount of their respective security interests, shall each be deemed to be a Qualified Bidder pursuant to their respective rights to credit bid under section 363(k) of the Bankruptcy Code, and any such credit bid of Wells Fargo or GECPF shall be a Qualified Bid.

**(a)    Bid Deadline**

A Qualified Bid must be sent so as to be received by Imperial Capital, LLC, 2000 Avenue of the Stars, 9th Floor, South Tower, Los Angeles, California 90067, Attn.: Marc Bilbao and Nicole Fry, by no later than June 8, 2011 at 4:00 p.m. (prevailing Pacific Time) (the "Bid Deadline").[14]

**(b)    Format Of A Qualified Bid**

A Qualified Bid must (1) be presented under a signed, irrevocable and binding contract, marked to show any modifications made to the Form Agreement, including the name of the

---

[14]    Imperial shall immediately distribute each bid it receives to the Debtor, the other Debtor's Professionals, and the Evaluation Committee.

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

16

Potential Bidder and other conforming changes that must be made to reflect the Potential Bidder

and its Qualified Bid, (2) signed by an individual authorized to bind the bidder, (3) not be subject

to obtaining financing, or future consent or approval, including, without limitation, consent of

the Potential Bidder's board of directors (or similar governing body), due diligence, or the

receipt of any consents, in each case, not otherwise required by the Form Agreement, as notated

by the Potential Bidder, or any other contingency (other than entry of an order approving the

Sale) (4) fully disclose the identity of each entity that will be bidding for the Green Cuisine

Plant, the Non-Plant Businesses and/or Contessa Enterprise or otherwise participating in

connection with such Qualified Bid, and the complete terms of any such participation, and (5)

state such Potential Bidder's offer is irrevocable and binding until the conclusion of the Auction

and, if such Potential Bidder is the Winning Bidder or the Back-Up Bidder (each as defined

below), the closing of the sale of (as applicable) the Green Cuisine Plant, the Non-Plant

Businesses and/or Contessa Enterprise.

(c)    <b>Deposit</b>

A Qualified Bid must provide for a deposit of ten percent (10%) of the purchase price

(inclusive of liabilities to be assumed) set forth in such bid (the "<u>Deposit</u>"), which shall, upon

execution of the Qualified Bid be delivered either by a certified or bank check or by wire transfer

of immediately available funds as a minimum good faith deposit and shall be used to fund a

portion of the purchase price in the event that the Potential Bidder is the Winning Bidder.

(d)    <b>Financial Information</b>

A Qualified Bid must be accompanied by sufficient and adequate information to

demonstrate to the Debtor, in accordance with the Sale Determination Process, that such

Potential Bidder has the financial wherewithal and ability to consummate the transactions

contemplated in the Form Agreement, including evidence of adequate financing, a parent

guaranty, or irrevocable letter of credit, if deemed appropriate, each in a form agreed upon by the Debtor. Such evidence shall include, but not be limited to, the most current audited and latest unaudited financial statements of the Potential Bidder or, if the Potential Bidder is an entity formed for the purpose of participating in the Auction, financials of the equity holder(s) of the Potential Bidder and the written commitment of the equity holder(s) of the Potential Bidder to be financially responsible for the Potential Bidder's obligations in connection with the sale. If the Potential Bidder is unable to provide such information, the Debtor may, in accordance with the Sale Determination Process, accept other information sufficient to demonstrate that the Potential Bidder has the financial wherewithal to consummate the sale.

       **(e)**      **Adequate Assurance**

A Potential Bidder must provide a declaration attesting to such Potential Bidder's ability to provide adequate assurance of future performance with respect to the Green Cuisine Plant Leases and to any and all other real property leases and other executory contracts (the "Executory Contracts") to be assumed and assigned by the Debtor in connection with a sale of the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise

       **5.**      **Rejection Of Qualified Bids**

The Debtor may, in accordance with the Sale Determination Process, reject any Qualified Bid not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Sale Procedures Order or the Sale Procedures; provided that, notwithstanding anything to the contrary therein, the Debtor shall have the right, in accordance with the Sale Determination Process, to accept as a Qualified Bid any non-conforming bid for the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise.

       **6.**      **The Debtor's Option To Select A Stalking Horse Bidder**

Based upon Qualified Bids received, the Debtor, in accordance with the Sale Determination Process, may, but shall not be obligated to, at any time designate one or more

Qualified Bidders as a "Stalking Horse Bidder".  Notice of selection of such Stalking Horse Bidder or Bidders shall be immediately given to all Qualified Bidders, the Plant Lease Parties, and filed with the Court.

   **(a)**   **Break-Up Fee**

   The Debtor may in its reasonable business judgment, and in accordance with the Sale Determination Process, provide a selected Stalking Horse Bidder or Bidders (if any) with customary and usual "stalking horse" protections, including a break-up fee and/or an expense reimbursement in an amount not to exceed three percent (3%) of the purchase price (inclusive of liabilities to be assumed) in the Qualified Bid of such Stalking Horse Bidder or Bidders (the "Break-Up Fee").

   **(b)**   **Overbids Prior To Auction**

   In the event that the Debtor selects one or more Stalking Horse Bidders, then (i) the bid of each Potential Bidder, in order to constitute a Qualified Bid, shall, in addition to meeting the other criteria set forth in these Sale Procedures, be in an amount that is sufficient to pay the Break-Up Fee and result in additional consideration to the Debtor's estate in excess of the purchase price offered by such Stalking Horse Bidder or Bidders of no less than one-half of one percent (0.5%) of such purchase price, rounded up to the nearest $50,000 increment (the "Overbid Amount"), and (ii) each Qualified Bidder having previously submitted a Qualified Bid shall have the right to increase its Qualified Bid; provided that any such increased Qualified Bid must (x) be increased by no less than the Overbid Amount, and (y) be submitted so as to be received by Imperial Capital, LLC, 2000 Avenue of the Stars, 9th Floor, South Tower, Los Angeles, California 90067, Attn.: Marc Bilbao and Nicole Fry, on or before the Bid Deadline (or

1   such subsequent date as the Debtor, in accordance with the Sale Determination Process, shall

2   determine).[15]

3         **7.      Notification Prior To Auction And Deadline To Participate**

4         The Debtor, prior to the Auction, in accordance with the Sale Determination Process, will

5   inform in writing each Qualified Bidder of (i) the Qualified Bid or Qualified Bids that represent

6   the highest or otherwise best offer for the Green Cuisine Plant, the Non-Plant Businesses and/or

7   Contessa Enterprise as the starting bid at the Auction (each a "Highest Pre-Auction Qualified

8   Bid"); and (ii) the conditions (including the minimum overbid increment) for the submission at

9   the Auction of a bid that would be higher and better than the Highest Pre-Auction Qualified Bid

10  (a "Subsequent Qualified Overbid").  On or prior to June 10, 2011 at 4:00 p.m. (prevailing

11  Pacific Time), each Qualified Bidder shall inform Imperial of its intention to participate in the

12  Auction.

13        **8.      The Auction**

14        Only Qualified Bidders will be permitted to attend and to participate at the Auction;

15  provided, however, that nothing herein precludes the Evaluation Committee, GECPF and the

16  Plant Lease Parties from attending and participating in the Auction in their capacity as creditors

17  of the estate, consistent with these Sale Procedures, and not as bidders. Qualified Bidders who

18  wish to submit a Subsequent Qualified Overbid at the Auction must attend the Auction in person

19  or through an authorized representative.

20        **(a)      Auction Date And Time**

21        The Auction shall be held on June 13, 2011, commencing at 9:00 a.m. (prevailing Pacific

22  Time) at the offices of Kelly Drye / White O'Connor, 10100 Santa Monica Blvd., Twenty Third

23  Floor, Los Angeles, CA 90067, or at such other time, date and place as determined and

---

[15]   Imperial shall immediately distribute each overbid it receives to the Debtor, the other Debtor's
Professionals, and the Evaluation Committee.

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

announced by the Debtor in accordance with the Sale Determination Process and following

consultation with GECPF and the Plant Lease Parties, for consideration of Subsequent Qualified

Overbids with respect to the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa

Enterprise.  The Auction may be adjourned as the Debtor deems appropriate in the exercise of its

reasonable business judgment, in accordance with the Sale Determination Process.  If the

Auction is adjourned, reasonable notice of such adjournment and the time and place for the

resumption of the Auction shall be given to all Qualified Bidders.

(b)    **Failure To Receive Qualified Bids**

If no Qualified Bid from a Qualified Bidder is received on or prior to the Bid Deadline

for the Green Cuisine Plant, the Debtor, in accordance with the Sale Determination Process and

following consultation with GECPF and the Plant Lease Parties, may cancel the Auction and, in

its discretion, seek to reject the Green Cuisine Plant Leases and abandon all or a portion of the

other Green Cuisine Plant assets by serving and filing the Green Cuisine Lease Rejection Notice.

If no Qualified Bid from a Qualified Bidder is received on or prior to the Bid Deadline for the

Non-Plant Businesses or the Contessa Enterprise, the Debtor, in accordance with the Sale

Determination Process, may choose to cancel the Auction with respect to the Non-Plant

Businesses and the Contessa Enterprise.

(c)    **Withdrawal Of Assets, Cancellation Of Auction**

The Debtor may withdraw assets from, adjourn and/or cancel the Auction as set forth

below and in these Sale Procedures:

    (i)    <u>Removal of Assets</u>.  The Debtor may, in accordance with the Sale Determination Process, withdraw one or more of the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise from the Auction at any time, including, without limitation, if none of the Qualified Bids reaches a threshold amount warranting continuation of the Auction as set forth in paragraph 8(b) above.

    (ii)    <u>Cancellation</u>.  The Debtor, in the exercise of its reasonable business judgment, in accordance with the Sale Determination Process, may at

any time cancel the Auction with respect to one or more of the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise, and proceed to seek approval of the Highest Pre-Auction Qualified Bid at the Sale Approval Hearing (as defined below).

**(d)**     **No Collusion And Disclosure Of Other Agreements**

Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise.  Further, each Qualified Bidder participating at the Auction shall fully disclose any agreement or other understanding of any kind or nature whatsoever with any current or former insider or affiliate of the Debtor in connection with such Qualified Bid or with respect to the operation of the Green Cuisine Plant, the Non-Plant Businesses, and/or Contessa Enterprise following the closing of the sale.

**(e)**     **Other Terms**

The Debtor, in accordance with the Sale Determination Process, may make modifications to the Auction rules and these Sale Procedures, as may be determined to be in the best interests of the Debtor's estates or creditors announced by the Debtor from time to time prior to or during the Auction; <u>provided</u> that such modifications are not materially inconsistent with these Sale Procedures or the Sale Procedures Order.

**9.**     **Selection Of The Winning Bidder**

Immediately at the conclusion of the Auction, the Debtor shall determine, in accordance with the Sale Determination Process, which Qualified Bid or Qualified Bids, or Subsequent Qualified Overbid or Subsequent Qualified Overbids, as applicable, constitutes the highest and best offer for each of the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise (each, a "<u>Winning Bid</u>"), and the Qualified Bidder or each of the Qualified Bidders that has submitted a Winning Bid (each, a "<u>Winning Bidder</u>") shall execute and deliver to the Debtor its Form Agreement with any necessary modifications (the "<u>Winning Purchase</u>

Agreement"). Notice of selection of such Winning Bidder or Bidders shall be immediately given to the Key Creditor Group, any party known to have asserted a security interest or other interest in the assets to be sold, all counterparties to real estate leases or executory contracts to be assumed and assigned to such bidder or bidders, and any other party that requests to receive such notice on or before the hearing on this Motion, and filed with the Court at least 24 hours prior to the Sale Approval Hearing.

**10.    The Sale Approval Hearing**

A hearing to approve the Winning Bid or the Winning Bids shall be held before United States Bankruptcy Court for the Central District of California (the "Court") at a date and time convenient to the Court, but no later than June 15, 2011 at 9:30 a.m. (prevailing Pacific Time).

**11.    Executory Contracts**

**(a)    Notice To Counterparties**

As soon as reasonably practicable following the entry of the Sale Procedures Order, but in any event no later than May 30, 2011, the Debtor shall provide notice to each counterparty to the Green Cuisine Plant Leases and/or Executory Contracts of the Debtor's calculation of the amounts that must be paid in connection with the assumption and assignment of the Green Cuisine Plant Leases and/or Executory Contracts pursuant to section 365(b) of the Bankruptcy Code (the "Cure Amount").

On or before May 30, 2011, the Debtor will provide on a confidential basis to each counterparty[16] to a Green Cuisine Plant Lease and/or Executory Contract designated for potential assumption and assignment with (i) the identity of each Qualified Bidder, and (ii) information

---

[16] Counterparties to Executory Contracts receiving information on a confidential basis regarding the identity and adequate assurance of future performance of each Qualified Bidder includes Jenny Craig, Inc.

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

regarding each Qualified Bidder's adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code.[17]

(b)    **Objections**

If an objection is raised by a counterparty to any of the Green Cuisine Plant Leases and/or Executory Contracts solely to the Cure Amount, and such dispute cannot be consensually resolved prior to the Sale Approval Hearing, the Debtor may seek to assume such lease or contract and assign it to a Winning Bidder; _provided_ that the entire disputed Cure Amount must be immediately paid upon such assumption and assignment, and the Debtor must segregate the applicable disputed Cure Amount pending the resolution of such dispute by the Court or by agreement of the parties, for payment to the counterparty or refund to the Winning Bidder. If an objection is raised by a counterparty to any of the Green Cuisine Plant Leases and/or Executory Contracts as to adequate assurance of future performance, and such dispute cannot be consensually resolved prior to the Sale Approval Hearing, said objection will be determined by the Court. Hearings on disputed Cure Amount(s) and/or adequate assurance of future performance in connection with the Green Cuisine Plant Leases and/or Executory Contracts (as applicable) shall be held (i) on the date of the Sale Approval Hearing, or (ii) on such other date as the Court may designate.

12.    **Irrevocability of Certain Qualified Bids**

Each Winning Bid shall remain open, irrevocable and binding upon each Winning Bidder; _provided_ that no Winning Bid shall be binding upon the Debtor until it has been approved by the Court. The bid of the next highest Qualified Bidder (the "Back-Up Bidder") at the highest price bid by such Qualified Bidder at the Auction, shall remain open and irrevocable

---

[17]    The Debtor will thereafter immediately provide such information on a confidential basis to counterparties to the Green Cuisine Plant Leases and/or Executory Contracts with respect to any Qualified Bids received after May 30, 2011.

until the closing of the sale of (as applicable) the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise.  The Deposits of all other Qualified Bidders will be returned to such Qualified Bidders no later than three (3) business days following the conclusion or cancellation of the Auction.

### 13.    Failure To Close

Subject to the terms of the Winning Purchase Agreement, in the event a Winning Bidder (as determined by the Debtor and approved by the Court) fails to consummate the proposed transaction by the closing date contemplated in the Winning Purchase Agreement, (i) such Winning Bidder shall be deemed to have forfeited its Deposit and the Debtor shall retain the Deposit and reserve the right to pursue all available remedies, whether legal or equitable, available to it, and (ii) the Debtor shall be authorized without further order of the Court to consummate the proposed transaction with the Back-Up Bidder.

### 14.    Submission To Jurisdiction Of The Court

All Potential Bidders will be deemed to have submitted to the jurisdiction of the Court with respect to all matters related to the Auction or with respect to the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise.

### 15.    Expenses

Subject to the terms of the Winning Purchase Agreement or any other executed agreement binding upon the Debtor, all Qualified Bidders shall bear their own costs and expenses in connection with the Auction or with respect to the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise.

### C.    Objections To The Sale Of Contessa Enterprise Assets To The Winning Bidder or Bidders

As set forth in the proposed Sale Notice, objections to the sale of the Green Cuisine Assets, the Non-Plant Businesses and/or the Contessa Enterprise to the Winning Bidder or

Bidders (as applicable) shall be set forth in writing and shall specify with particularity the

grounds for such objections and other statements of position and shall be filed with the Court on

or before the Sale Approval Hearing and shall be served so as to be received by that same date

and time by the notice parties identified in the Sale Notice.

# IV.
## ARGUMENT

**A.    Cause Exists To Approve The Sale Of The Green Cuisine Plant,
The Non-Plant Businesses And/Or The Contessa Enterprise
Under Section 363(b) Of The Bankruptcy Code**

The Debtor, after notice and a hearing, may use, sell, or lease property, other than in the

ordinary course of business.  11 U.S.C. § 363(b)(1).  A debtor's application of its sound business

judgment in the use, sale, or lease of property is subject to great judicial deference.  *See, e.g., In

re Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990); *In re Canyon P'ship*, 55 B.R. 520 (Bankr. S.D.

Cal. 1985); *see also Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir.

1988) ("[T]here must be some articulated business justification for using, selling, or leasing the

property outside the ordinary course of business . . . whether the proffered business justification

is sufficient depends on the case.  As the Second Circuit held in *Lionel*, the bankruptcy judge

should consider all salient factors pertaining to the proceeding and, accordingly, act to further the

diverse interests of the debtor, creditors and equity holders, alike.").

In interpreting section 363(b)(1) of the Bankruptcy Code, courts have held that a

transaction involving property of the estate generally should be approved where the debtor can

demonstrate "some articulated business justification for using, selling, or leasing the property

outside of the ordinary course of business."  *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226

(5th Cir. 1986); *accord In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Walter*, 83 B.R.

at 19-20; *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981).  Among other

factors, courts should consider the consideration to be paid, the financial condition and needs of

the debtor, the qualifications of the buyer, and whether a risk exists that the assets proposed to be sold would decline in value if left in the debtor's possession. *See Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding Corp.)*, 492 F.2d 793, 794 (9th Cir. 1974) (affirming trial court's finding that the proposed sale of the debtor's assets would be in the best interest of the estate in light of impending deterioration of market value of debtor's assets).

The Debtor believes that subjecting the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise to an auction process governed by the proposed Sale Procedures will ensure that the maximum proceeds will be realized by the estate, which is the principal outcome sought in any chapter 11 case. The Sale Procedures are fair and reasonable under the facts and circumstances of this case, especially in light of the extensive marketing of the assets that the Debtor and its professionals have conducted both pre- and post-petition. By testing the marketplace, the proposed Sale Procedures will assign an appropriate fair market value to the Debtor's various asset combinations so that the Court and parties-in-interest can properly evaluate the sale, both in whole or in part, and in the process ensure that the Debtor obtains the best possible outcome for its creditors.

**B.**     **This Court Is Empowered To Approve The Fair And Reasonable Sales Procedures**

The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) ("a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Atlanta Packaging Prods., Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988). Applying section 363 of the Bankruptcy Code, bankruptcy courts frequently have considered and approved auction and bidding procedures in advance of a proposed sale of property of the estate. *See, e.g., Doehring v. Crown Corp (In re Crown Corp.)*, 679 F.2d 774, 775 (9th Cir. 1982) (noting that the district court had required specified minimum

overbid amounts, deposits, and the form of purchase agreement to be used by bidders); *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 879 (Bankr. S.D.N.Y. 1990) (noting that the bankruptcy court had entered an order requiring that overbids be made in specified minimum increments with deposits); *In re Table Talk, Inc.,* 53 B.R. 937, 943-44 (Bankr. D. Mass. 1985) (noting that section 363 requires notice and a hearing prior to the establishment of bidding procedures for the sale of property of the estate).

Courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing value to the estate and are appropriate in the context of bankruptcy sales. *In re Financial News Network, Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991), *appeal dismissed*, 931 F. 2d 217 (2d Cir. 1991) ("[C]ourt-imposed rules for the disposition of assets … [should] provide for a fair and efficient resolution of bankrupt estates."). In fact, courts have made it clear that the debtor's business judgment is entitled to great deference with respect to the procedures to be used in selling assets from the estate. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting that overbid procedures that have been negotiated by a debtor in possession are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989), *rev'd in part on other grounds*, 963 F.2d 503 (2d Cir. 1992) (same).

The Sale Procedures will allow the Debtor to conduct the Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders, thereby increasing the likelihood that the best possible consideration for the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise will be obtained. Sale procedures should be approved when they provide a benefit to the estate by maximizing the value of the assets and

enhance competitive bidding.  *See Calpine Corp. v. O'Brien Envt'l Energy, Inc.*, 181 F.3d 527, 535-537 (3rd Cir. 1999) (detailing situations where bidding incentives are appropriate in bankruptcy because they provide a benefit to the estate).  The Debtor believes that the Sale Procedures satisfy this standard and are consistent with other procedures previously approved in this district and other bankruptcy courts.

Also, if a Stalking Horse Bidder(s) is selected, the Debtor seeks approval of a Break-Up Fee in an amount not to exceed three percent (3%) of the purchase price (inclusive of liabilities to be assumed) in the Qualified Bid of such Stalking Horse Bidder(s).  The Debtor believes that a three percent Break-Up Fee is reasonable, given the potential benefits to the estate of having a definitive agreement with a Stalking Horse Bidder(s) and the risk to any such bidder that a third-party overbid ultimately may be accepted, and that the Break-Up Fee is necessary to preserve and enhance the value of the Debtor's estate.

Break-up fees and other termination fees are a normal and, in many cases, necessary component of significant sales conducted under section 363 of the Bankruptcy Code:

> Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets.... In fact, because the... corporation ha(s) a duty to encourage bidding, break-up fees can be <u>necessary</u> to discharge [such] duties to maximize value.

*Integrated Res.*, 147 B.R. at 659-60 (emphasis in original).  Specifically, "breakup fees and other strategies may be legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing some form of compensation for the risks it is undertaking." *995 Fifth Ave.*, 96 B.R. at 28 (quotations omitted); *see also Integrated Res.*, 147 B.R. at 660-61 (break-up fees can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid"); *In re Hupp Indus., Inc.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("without such fees, bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's . . . due diligence").

As set forth in the Sale Procedures, the Debtor is not currently obligated to pay anyone a Break-Up Fee.  So, if the Debtor agrees to a Break-Up Fee, it would only do so if in its business judgment and in accordance with the Sale Determination Process, such a Break-Up Fee would encourage competitive bidding (for example, because the selected Stalking Horse Bidder(s) would not have entered into a Form Agreement with the Debtor without a Break-Up Fee).  The Break-Up Fee thus would have "induc[ed] a bid that otherwise would not have been made and without which bidding would [be] limited."  *Calpine*, 181 F.3d at 537.  Similarly, a Stalking Horse Bidder's offer would provide a minimum bid on which other bidders can rely, thereby "increasing the likelihood that the price at which the [Debtor's assets will be] sold will reflect [their] true worth."  *Id.*

The Debtor submits that the Sale Procedures, including provisions potentially allowing for a Stalking Horse Bidder(s) with a Break-Up Fee, and the Auction will ensure that the Debtor's estate receives the highest and best value available for the Contessa Enterprise.  The Debtor hereby requests the Court's approval of the process and procedures set forth in the Sale Procedures for the submission and consideration of competing bids from other interested parties for the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise.

**C.    The Debtor Will Be Able To Sell The Green Cuisine Plant, The Non-Plant Businesses And/Or The Contessa Enterprise Free And Clear Of Liens, Interests Or Encumbrances Under Section 363(f) Of The Bankruptcy Code**

It is a near certainty that any person seeking to acquire the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise would only be willing to do so on the condition that such sale be free and clear of any liens, interests or encumbrances pursuant to section 363(f) of the Bankruptcy Code.  Because the Debtor has support for the Sale Procedures from its major secured creditors, Wells Fargo and GECPF, and does not currently foresee circumstances under which it would proceed with the Sale Approval Hearing absent the approval of the Key Creditor

Group, the Debtor is confident that it will be able to establish at the Sale Approval Hearing that the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise can be sold free and clear of any liens, interests or encumbrances pursuant to section 363(f)(2) of the Bankruptcy Code.

The Debtor is not currently aware of any other material secured creditors who are asserting liens or other security interests in or against the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise.  However, to the extent that any entity might seek to assert a lien or other interest in or against any of the Debtor's assets and raise an objection at the Sale Approval Hearing, the Debtor believes that it would be able to show at the Sale Approval Hearing either that the purchase price to be paid for the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise (as applicable) exceeds the aggregate value of all liens on such assets, or that such interest is in bona fide dispute, and that such assets can be sold free and clear of any liens, interests or encumbrances pursuant to sections 363(f)(3) and (f)(4) of the Bankruptcy Code.

**D.      The Assumption And Assignment Procedures Will
Expedite The Sale Process And Should Be Approved**

Under section 365(a) of the Bankruptcy Code, a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  Section 365(b)(1) codifies the requirements for a debtor to assume an executory contract.  11 U.S.C. § 365(b)(1).  The Bankruptcy Code also provides that a debtor may assign an executory contract, subject to certain conditions.  See 11 U.S.C. § 365(f)(2).

As set forth in the proposed Sale Procedures, as soon as reasonably possible following the entry of the Sale Procedures Order and in no event later than May 30, 2011, the Debtor will provide notice to each counterparty to the Green Cuisine Plant Leases and/or Executory Contracts that are sought for assumption of the Debtor's calculation of the Cure Amount

pursuant to section 365(b) of the Bankruptcy Code.  Further, on May 30, 2011, the Debtor will provide on a confidential basis to each counterparty to a Green Cuisine Plant Lease and/or Executory Contract with information regarding each Qualified Bidder's adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code.

The assumption and assignment procedures are reasonable and will facilitate any closing on sale of the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise by establishing a process for resolving disputes over cure amounts.  For this reason, the Debtor requests the Court's approval of the assumption and assignment procedures as set forth in the Sale Procedures.[18]

### V.
### CONCLUSION

For all the foregoing reasons, the Debtor respectfully requests that the Court enter an order substantially in the form attached hereto as <u>Exhibit A</u>:  (a) approving the proposed Sale Procedures, including a Break-Up Fee, in connection with the proposed sale or other disposition of the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise; (b) approving the date of the Auction and date of the Sale Approval Hearing; (c) approving the form and manner of the Sale Notice; (d) approving at the Sale Approval Hearing the highest and best bid selected by the Debtor at the Auction in accordance with the Sale Determination Process; (e) approving procedures for the assumption and assignment of real or personal property leases and executory contracts in connection with the Sale Procedures and the Auction; (f) authorizing the Debtor under the Sale Procedures and in accordance with the Sale Determination Process and following consultation with GECPF and the Plant Lease Parties, if no bids for the Green Cuisine Plant are submitted, to seek to reject the Green Cuisine Plant Leases and abandon the other

---

[18]    The Court may permit the sale of multiple contracts in one motion pursuant to Bankruptcy Rule 6006(e).

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY  10178

1   Green Cuisine Plant assets by serving and filing the Green Cuisine Lease Rejection Notice; and

2   (g) granting such other relief as is fair and equitable.

3

4   Dated:     April 26, 2011               PACHULSKI STANG ZIEHL & JONES LLP

5                                          By:     /s/ Jeffrey W. Dulberg
6                                                  Jeffrey N. Pomerantz (CA Bar No. 143717)
                                                   Jeffrey W. Dulberg (CA Bar No. 181200)
7                                                  *Local/Conflicts Counsel for Debtor*

8

9                                          KELLEY DRYE & WARREN LLP

10                                                 Craig A. Wolfe (CA Bar No. 200870)
                                                   Jason R. Alderson (CA Bar No. 233176)
11                                                 *Counsel for Debtor*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

**EXHIBIT A**

Craig A. Wolfe (CA Bar No. 200870)
Jason R. Alderson (CA Bar No. 233176)
**KELLEY DRYE & WARREN LLP**
101 Park Avenue
New York, New York  10178-0002
Telephone: (212) 808-7800
Facsimile:  (212) 808-7897
E-mail:  cwolfe@kelleydrye.com;
jalderson@kelleydrye.com
*Counsel for Debtor*

Jeffrey N. Pomerantz (CA Bar No. 143717)
Jeffrey W. Dulberg (CA Bar No. 181200)
**PACHULSKI STANG ZIEHL & JONES LLP**
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
E-mail:jpomerantz@pszjlaw.com; jdulberg@pszjlaw.com
*Local/Conflicts Counsel for Debtor*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| In re: | Case No.:  2:11-bk-13454-PC |
|---|---|
| CONTESSA PREMIUM FOODS, INC., | Chapter 11 |
| Debtor.[1] | **[PROPOSED] ORDER (A) APPROVING SALE PROCEDURES, INCLUDING BREAK-UP FEE, IN CONNECTION WITH THE PROPOSED SALE AT AUCTION OF THE CONTESSA ENTERPRISE; (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF REAL AND PERSONAL PROPERTY LEASES AND EXECUTORY CONTRACTS IN CONNECTION THEREWITH; (C) APPROVING SALE OF ALL OR CERTAIN CONTESSA ENTERPRISE ASSETS TO THE HIGHEST AND BEST BIDDER AT AUCTION; AND (D) GRANTING RELATED RELIEF** |

---

[1]    The Debtor is a California corporation, Fed. Tax I.D. No. 33-0020606.  The Debtor's address is 222 West 6th  Street, 8th Floor, San Pedro, California 90731.

Upon consideration of the motion ("Motion") of Contessa Premium Foods, Inc., a

California Corporation, debtor and debtor in possession herein (the "Debtor"), pursuant to

sections 105(a), 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

"Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") for an Order (a) approving the proposed sale procedures, including a break-

up fee, in the form attached as Exhibit A to this Order (the "Sale Procedures"), in connection

with the proposed sale or other disposition (the "Sale") of the Green Cuisine Plant, the Non-Plant

Businesses and/or the Contessa Enterprise,[2] (b) approving the date of the Auction and date of the

Sale Approval Hearing, (c) approving the form and manner of the Sale Notice, (d) approving at

the Sale Approval Hearing the highest and best bidder at the Auction in accordance with the Sale

Determination Process (as defined below), (e) approving procedures for the assumption and

assignment of real or personal property leases and executory contracts in connection with the

Sale Procedures and the Auction, and (f) authorizing the Debtor under the Sale Procedures and in

accordance with the Sale Determination Process and following consultation with GECPF and the

Plant Lease Parties, if no bids for the Green Cuisine Plant are submitted, to seek to reject the

Green Cuisine Plant Leases and abandon the other Green Cuisine Plant assets by serving and

filing the Green Cuisine Lease Rejection Notice; and upon consideration of the exhibits to the

Motion, and the authorities set forth and arguments made in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334; and the Court having found that the relief requested therein is a core

proceeding pursuant to 28 U.S.C. § 157(b) and that venue is proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief sought in the

---

[2]     Unless otherwise noted, all capitalized terms used but not defined herein shall have the
meanings given to such terms in the Motion.

Motion is in the best interest of the Debtor, its estate, its creditors and all parties in interest; and

the Court having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and upon the record of the hearing held regarding the Motion;

and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      This Court has jurisdiction over this matter and over the property of the

Debtor and its bankruptcy estate pursuant to 28 U.S.C. §§ 157(a) and 1334.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

B.      The findings and conclusions set forth herein constitute the Court's

findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to

this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any of the following findings

of fact constitute conclusions of law, they are adopted as such.  To the extent any of the

following conclusions of law constitute findings of fact, they are adopted as such.

C.      Proper, timely, adequate and sufficient notice of the Motion and proposed

entry of this Order has been provided in accordance with sections 102(1), 363 and 365 of the

Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014 and no other or further

notice of the Motion is required.

D.      Good cause has been shown for the entry of this Order.  The Debtor has

articulated good and sufficient reasons for approving the Sale Procedures and Sale Notice in

connection with the sale or other disposition of the Green Cuisine Plant, the Non-Plant

Businesses and/or the Contessa Enterprise, including (i) approval of the Sale Procedures, and (ii)

granting the Debtor the authority, as set forth in the Sale Procedures and in accordance with the

Sale Determination Process, to provide one or more Stalking Horse Bidders with a Break-Up

Fee.

E.      Based on the record presented to the Court at the Sale Procedures Hearing, including the Declaration of Marc Bilbao, the relief requested with respect to the Sale Procedures set forth in the Motion is in the best interests of the Debtor, its estate and parties in interest.  The Sale Procedures are fair and reasonable under the circumstances and, together with the marketing process commenced by the Debtor prior to the Petition Date and now being undertaken by Imperial, provide an appropriate framework for selling the Debtor's assets and will enable the Debtor, in accordance with the Sale Determination Process, to review, analyze and compare all bids received to determine whether any of the bids or any combination thereof would result in the highest and best value being realized for the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise.

F.      A Break-Up Fee not to exceed three percent (3%) of the purchase price (inclusive of liabilities to be assumed) to be paid to a Stalking Horse Bidder under the Sale Procedures and in accordance with the Sale Determination Process is fair and reasonable under the circumstances.  Specifically, the Debtor, in accordance with the Sale Determination Process, may determine to offer the Break-Up Fee and select a Stalking Horse Bidder or Bidders if it has concluded that doing so would increase the Debtor's chances of receiving the highest and best offer for any of the Debtor's asset combinations by establishing a bid standard or minimum for other bidders to the Auction, and serving as catalyst for other potential or actual bidders, to the benefit of the Debtor's estate, its creditors, and all other parties in interest.  Accordingly, a Break-Up Fee would be: (i) an actual and necessary cost and expense of preserving the Debtor's estate, within the meaning of section 503(b) of the Bankruptcy Code; (ii) commensurate to the real and substantial benefits conferred upon the Debtor's estate by any Stalking Horse Bidder; and (iii) reasonable and appropriate in light of the size and nature of the proposed sale of the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise.

G.      The procedures for the assumption and assignment of the Green Cuisine

Plant Leases and other Executory Contracts are fair and reasonably necessary to expedite the

closing of the sale or other disposition of the Green Cuisine Plant, the Non-Plant Businesses

and/or the Contessa Enterprise.

H.      The form and manner of the Sale Notice attached as Exhibit B to the

Motion, if served by the Debtor as described in this Order, provides due, adequate and timely

notice of the events and deadlines set forth therein in accordance with Bankruptcy Rules 2002,

6004 and 6006, and is reasonably calculated to provide sufficient notice of the Sale to the

Debtor's creditors.

I.      The form and manner of the Green Cuisine Lease Rejection Notice

attached as Exhibit C to the Motion, if served and filed by the Debtor as described in the Motion,

provides due, adequate and timely notice and deadlines set forth therein in accordance with

Bankruptcy Rules 2002, 6004 and 6006.

J.      A full and complete list of all intellectual property in which the Debtor

holds legal title or an equitable interest (the "Debtor IP") is attached as Exhibit B to this Order.

K.      A sale or other disposition of the Green Cuisine Plant, the Non-Plant

Businesses, and/or the Contessa Enterprise will not result in the disclosure of any "personally

identifiable information" (as such term is defined in section 101(41A) of the Bankruptcy Code)

of any individual, whether in contravention of any privacy policy of the Debtor or otherwise.

L.      A reasonable opportunity to object or to be heard regarding the relief

requested in the Motion with respect to the Sale Procedures has been afforded to all interested

parties and entities.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1.     The Motion is granted as set forth herein.

2.     The sale or other disposition of the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise shall be governed by the Sale Procedures attached as Exhibit A to this Order, which are hereby authorized, approved, including any Break-Up Fee, and made part of this Order as if fully set forth herein and shall be the exclusive method for the sale or other disposition of the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise.

3.     The Debtor is authorized to take all of the actions contemplated by the Sale Procedures, including conducting the Auction.  All decisions and determinations to be made by the Debtor under the Sale Procedures, and the exercise of the Debtor's discretion in accordance with its reasonable business judgment in connection therewith (each, a "Sale Determination"), shall be undertaken in the following manner (the "Sale Determination Process"):

    a.    Imperial Capital LLC will consult fully with, and provide sufficient information and recommendations in a timely manner to, the Debtor, along with its counsel, Kelley Drye & Warren LLP, and its financial advisor, Scouler & Company LLC (collectively, the "Debtor's Professionals"), and each of the Official Committee of Unsecured Creditors (the "Committee") and its professional advisors, and Wells Fargo Bank N.A. ("Wells Fargo") and its professional advisors (the Debtor, the Committee and Wells Fargo are herein referred to as the "Evaluation Committee"), with respect to Sale Determinations, including: (i) the qualification of bidders; (ii) the evaluation of expressions of interest received from the bidders; (iii) the selection of the bidders to be afforded opportunities to participate in management presentations and more extensive due diligence during the time period between the submission of expressions of interest and the Auction; (iv) the selection of a stalking horse bidder or bidders, if any, and the terms of any stalking horse protections to be provided; (v) the evaluation of the bids presented at the Auction; (vi) the selection of the highest and best bid or bids; (vii) any determination that the bid or bids received for all or a portion of the Contessa Enterprise is insufficient to justify a sale of such assets; and (viii) any other decisions materially impacting the sale process.

    b.    The Evaluation Committee shall work together in good faith and shall use all commercially reasonable efforts to reach a consensus regarding each Sale Determination to be made by the Debtor. Nothing in the Sale Procedures shall be deemed to constitute the

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

consent of either the Committee or Wells Fargo to any Sale Determination.

c.  In the event that the Debtor's Professionals are unable to achieve a consensus among the Debtor and the other members of the Evaluation Committee with respect to any Sale Determination, the Debtor shall have the right to make such Sale Determination, subject to the right of any other member of the Evaluation Committee to seek an immediate emergency hearing (which request the Debtor shall not oppose) before this Court (which hearing may be conducted telephonically) in order to challenge such Sale Determination. Notice of any such request for an emergency hearing shall be by email only to the Debtor and counsel for the Committee or counsel for Wells Fargo, as the case may be, and shall be sufficient if it is received no less than twenty-four (24) hours prior to the hearing.[3]

d.  If John Z. Blazevich, the Debtor's Chief Executive Officer, participates on the Evaluation Committee, he shall not be permitted to seek to be a Qualified Bidder in connection with the Sale unless (i) the Committee and Wells Fargo consent, or (ii) any assets with respect to which Mr. Blazevich seeks to present a bid are not otherwise subject to a Qualified Bid as of the Bid Deadline; *provided, however,* that nothing herein prohibits Mr. Blazevich from seeking to become certified as a Potential Bidder or a Qualified Bidder, subject to the bidding restrictions set forth in this section.

e.  This Sale Determination Process shall cease to be effective (but not the requirement of the Debtor's Professionals to share information and to consult with the Evaluation Committee) in the event that one or more Qualified Bids are submitted which provide a purchase price for the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise, together or in the aggregate, that exceeds $50,000,000, or such lesser amount as the Debtor may demonstrate to the reasonable satisfaction of the Committee and Wells Fargo would be sufficient to provide full payment to all holders of allowed secured, administrative, priority and unsecured claims in the Debtor's chapter 11 case, (including any lease or executory contract rejection claims).

4.  The form and manner of the Sale Notice, substantially in the form of Exhibit B to the Motion, is approved.

5.  The form and manner of the Green Cuisine Lease Rejection Notice, substantially in the form of Exhibit C to the Motion, is approved.

6.  The Debtor IP may be sold or otherwise disposed of in connection with

---

[3]  Email notice of any emergency hearing shall also be provided to GECPF and the Plant Lease Parties.

the Sale free and clear of any liens, interests or encumbrances, with any such liens, interests or encumbrances to attach to the proceeds of the Sale in the same order, amount and priority as existed immediately prior to the Petition Date.

7.    In accordance with and subject to the Sale Procedures, the Bid Deadline for submitting bids shall be **June 8, 2011 at 4:00 p.m. (prevailing Pacific Time).**

8.    In accordance with and subject to the Sale Procedures, the Auction shall be held on **June 13, 2011, commencing at 9:00 a.m. (prevailing Pacific Time)** at the offices of Kelly Drye / White O'Connor, 10100 Santa Monica Blvd., Twenty Third Floor, Los Angeles, CA 90067, or at such other time, date and place as determined and announced by the Debtor in accordance with the Sale Determination Process and following consultation with GECPF and the Plant Lease Parties.

9.    The assumption and assignment procedures for the Green Cuisine Plant Leases and Executory Contracts as set forth in the Sale Procedures are hereby expressly authorized.

10.    The Debtor is authorized under the Sale Procedures, in accordance with the Sale Determination Process, and following consultation with GECPF and the Plant Lease Parties, if no bids for the Green Cuisine Plant are submitted, to seek to reject the Green Cuisine Plant Leases and abandon all or a portion of the other Green Cuisine Plant assets by serving and filing the Green Cuisine Lease Rejection Notice.

11.    The Court hereby schedules the Sale Approval Hearing to be held on **June __, 2011 at __:___ __.m. (Pacific Time)** before the Honorable Peter H. Carroll, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, Courtroom 1539, Edward R. Roybal Federal Bldg., 255 East Temple Street, Los Angeles, CA 90012, to consider the entry of an order, inter alia, approving the sale or other disposition of the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise free and clear of all liens, claims, interests and encumbrances. The Debtor, in accordance with the Sale Determination Process and following consultation with GECPF and the Plant Lease Parties, may adjourn the Sale Approval Hearing one or more times without

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

further notice by making an announcement in open Court or by the filing of a hearing agenda announcing the adjournment.

12.     Within two (2) business days after entry of this Order, the Debtor shall provide notice of the Sale Procedures, the time and place of the Auction, the time and place of the Sale Approval Hearing, and the deadline to file any objection to the Sale Approval Hearing (as discussed above), by sending the Sale Notice (by first class mail, postage prepaid) to:[4] (i) the Office of the United States Trustee; (ii) counsel to the Official Committee of Unsecured Creditors; (iii) Wells Fargo Bank, N.A. and its counsel, Paul, Hastings, Janofsky & Walker LLP; (iv) General Electric Capital Corporation and GE Capital Public Finance, Inc., and their counsel, Davis Wright Tremaine LLP; (v) Dedeaux Properties, LLC and its counsel, DLA Piper LLP; (vi) all counterparties to the Green Cuisine Plant Leases and other Executory Contracts (as defined below); (vii) all federal, state, local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (viii) the Internal Revenue Service So. Cal.; (ix) the United States Attorneys' Office; (x) the United States Attorney General's Office; and (xi) all entities on the 2002 service list as of the date of entry of the Sale Procedures Order.[5]

13.     As set forth in the Sale Notice, objections to the sale of the Green Cuisine Assets, the Non-Plant Businesses and/or the Contessa Enterprise to the Winning Bidder or Bidders (as applicable) shall be set forth in writing and shall specify with particularity the grounds for such objections and other statements of position and shall be filed with the Court **on or before the date of the Sale Approval Hearing**, and shall be served so as to be received by that same date and time by the notice parties identified in the Sale Notice.

14.     As soon as reasonably practicable following the entry of this Order, but in

---

[4]     As limited by the Order Establishing Notice Procedures And Permitting Debtor and Debtor-In-Possession to Serve Insured Depository Institutions By First Class Mail, entered on February 1, 2011 (Dkt. No. 32).

[5]     Imperial shall provide the Sale Notice to all entities who have executed non-disclosure agreements with the Debtor in connection with the potential acquisition of any or all of the Contessa Enterprise or who have otherwise expressed to the Debtor an interest in purchasing the Contessa Enterprise or any part thereof.

any event no later May 30, 2011, the Debtor shall provide notice to each counterparty of the Green Cuisine Plant Leases and/or Executory Contracts of the Debtor's calculation of the amounts that must be paid in connection with the assumption and assignment of the Green Cuisine Plant Leases and/or Executory Contracts pursuant to section 365(b) of the Bankruptcy Code (the "Cure Amount").

15.    On or before May 30, 2011, the Debtor shall provide on a confidential basis to each counterparty[6] to a Green Cuisine Plant Lease and/or Executory Contract designated for potential assumption and assignment with (i) the identity of each Qualified Bidder, and (ii) information regarding each Qualified Bidder's adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code.[7]

16.    If an objection is raised by a counterparty to any of the Green Cuisine Plant Leases and/or Executory Contracts solely to the Cure Amount, and such dispute cannot be consensually resolved prior to the Sale Approval Hearing, the Debtor may seek to assume such lease or contract and assign it to a Winning Bidder; provided that the entire disputed Cure Amount must be immediately paid upon such assumption and assignment, and the Debtor must segregate the applicable disputed Cure Amount pending the resolution of such dispute by the Court or by agreement of the parties, for payment to the counterparty or refund to the Winning Bidder. If an objection is raised by a counterparty to any of the Green Cuisine Plant Leases and/or Executory Contracts as to adequate assurance of future performance, and such dispute cannot be consensually resolved prior to the Sale Approval Hearing, said objection will be determined by the Court. Hearings on disputed Cure Amount(s) and/or adequate assurance of future performance in connection with the Green Cuisine Plant Leases and/or Executory Contracts (as applicable) shall be held (i) on the date of the Sale Approval Hearing, or (ii) on

---

[6]    Counterparties to Executory Contracts receiving information on a confidential basis regarding the identity and adequate assurance of future performance of each Qualified Bidder shall include Jenny Craig, Inc.

[7]    The Debtor shall thereafter immediately provide such information on a confidential basis to counterparties to the Green Cuisine Plant Leases and/or Executory Contracts with respect to any Qualified Bids received after May 30, 2011.

such other date as the Court may designate.

        17.    All Potential Bidders are deemed to have submitted to the jurisdiction of this Court with respect to all matters related to the Auction or the sale of the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise.

        18.    No consumer privacy ombudsman shall be appointed pursuant to section 332 of the Bankruptcy Code.

        19.    Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtor is not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtor may, in its discretion and without further delay, take any action and perform any act authorized by this Order.

        20.    All objections to the Motion or the relief requested therein (and all reservations of rights included therein) are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

        21.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2011    _____
       Los Angeles, California       United States Bankruptcy Judge

**EXHIBIT A**

**TO SALE PROCEDURES ORDER**

# SALE PROCEDURES

Contessa Premium Foods, Inc., a California Corporation, debtor and debtor in possession herein (the "Debtor"), is seeking to sell the Green Cuisine Plant,[1] the Non-Plant Businesses and/or the Contessa Enterprise (the "Sale").  As contemplated by and incorporated into that certain Order (A) Approving Sale Procedures, Including Break-Up Fee, In Connection With The Proposed Sale At Auction Of The Contessa Enterprise, (B) Approving Procedures For The Assumption And Assignment Of Real And Personal Property Leases And Executory Contracts In Connection Therewith, (C) Approving Sale Of All Or Certain Contessa Enterprise Assets To The Highest And Best Bidder At Auction, and (D) Granting Related Relief (the "Sale Procedures Order"), the following procedures (the "Sale Procedures") shall be the exclusive mechanism governing the Sale.

## A.    Due Diligence And Becoming A Potential Bidder

Any party that satisfies the following criteria in paragraphs 1 and 2 below in this Section A shall qualify as a "Potential Bidder" and shall be permitted to conduct due diligence with respect to the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise.

### 1.    Due Diligence

Upon execution of a confidentiality agreement (in form and substance satisfactory to the Debtor), which confidentiality agreement must permit the disclosure of the bidder's identity to the Evaluation Committee,[2] and the delivery of a preliminary indication of interest to Imperial Capital, LLC, 2000 Avenue of the Stars, 9th Floor, South Tower, Los Angeles, California 90067, Attn.: Marc Bilbao and Nicole Fry,[3] by no later than May 6, 2011 at 12:00 p.m. (prevailing Pacific Time),[4] (i) any party that wishes to conduct due diligence with respect to the Green

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Procedures Order.

[2]    If the Potential Bidder is a special purpose or similar entity, such disclosure shall include the equity holders of such Potential Bidder.

[3]    Imperial shall immediately distribute each preliminary indication of interest and all accompanying or related information it receives to the Debtor, the other Debtor's Professionals and the Evaluation Committee.

[4]    Detailed instructions regarding the delivery of a preliminary indication of interest are set forth in the cover letter accompanying Imperial's Confidential Information Memorandum in substantially the form annexed to these Sale Procedures as Exhibit 1.

Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise may be granted access to all material information that has been or will be provided to other bidders; provided that, upon notice to the each member of the Evaluation Committee, the Debtor shall retain the ability to withhold trade secrets or other proprietary information from competitors, and (ii) a potential purchaser shall be provided a form asset purchase agreement that shall be reasonably acceptable to the Evaluation Committee (the "Form Agreement") relating to the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise, substantially in the form annexed to these Sale Procedures as Exhibit 2.

> ## 2.    Evidence of Financial Wherewithal

Any party wishing to move forward must provide Imperial with sufficient information to demonstrate to the Debtor and the Evaluation Committee, in accordance with the Sale Determination Process, that such party has the financial wherewithal and ability to consummate the transactions contemplated in the Form Agreement with respect to the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise.

## B.    The Submission Of Qualified Bids

Only a Potential Bidder may submit a bid for the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise.  A bid that, in the Debtor's reasonable business judgment, in accordance with the Sale Determination Process, satisfies the following criteria in paragraphs 1 through 5 below in this Section B shall be a "Qualified Bid", and a Potential Bidder that submits a Qualified Bid shall be a "Qualified Bidder".  Notwithstanding the foregoing, Wells Fargo and General Electric Capital Corporation ("GECPF"), to the extent of the validity, priority and amount of their respective security interests, shall each be deemed to be a Qualified Bidder pursuant to their respective rights to credit bid under section 363(k) of the Bankruptcy Code, and any such credit bid of Wells Fargo or GECPF shall be a Qualified Bid without the necessity of satisfying the criteria set forth in paragraphs 1 through 5 below in this Section B.

> ## 1.    Bid Deadline

A Qualified Bid must be sent so as to be received by Imperial Capital, LLC, 2000 Avenue of the Stars, 9th Floor, South Tower, Los Angeles, California 90067, Attn.: Marc Bilbao and

Nicole Fry, by no later than **June 8, 2011 at 4:00 p.m. (prevailing Pacific Time)** (the "Bid Deadline").[5]

### 2.    Format Of A Qualified Bid

A Qualified Bid must (1) be presented under a signed, irrevocable and binding contract, marked to show any modifications made to the Form Agreement, including the name of the Potential Bidder and other conforming changes that must be made to reflect the Potential Bidder and its Qualified Bid, (2) signed by an individual authorized to bind the bidder, (3) not be subject to obtaining financing, or future consent or approval, including, without limitation, consent of the Potential Bidder's board of directors (or similar governing body), due diligence, or the receipt of any consents, in each case, not otherwise required by the Form Agreement, as notated by the Potential Bidder, or any other contingency (other than entry of an order approving the Sale), (4) fully disclose the identity of each entity that will be bidding for the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise or otherwise participating in connection with such Qualified Bid, and the complete terms of any such participation, and (5) state such Potential Bidder's offer is irrevocable and binding until the conclusion of the Auction and, if such Potential Bidder is the Winning Bidder or the Back-Up Bidder (each as defined below), until the closing of the sale of (as applicable) the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise.

### 3.    Deposit

A Qualified Bid must provide for a deposit of ten percent (10%) of the purchase price (inclusive of liabilities to be assumed) set forth in such bid (the "Deposit"), which shall, upon execution of the Qualified Bid be delivered either by a certified or bank check or by wire transfer of immediately available funds as a minimum good faith deposit and shall be used to fund a portion of the purchase price in the event that the Potential Bidder is the Winning Bidder.

---

[5]    Imperial shall immediately distribute each bid it receives to the Debtor, the other Debtor's Professionals, and the Evaluation Committee.

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

### 4.    **Financial Information**

A Qualified Bid must be accompanied by sufficient and adequate information to demonstrate to the Debtor, in accordance with the Sale Determination Process, that such Potential Bidder has the financial wherewithal and ability to consummate the transactions contemplated in the Form Agreement, including evidence of adequate financing, a parent guaranty, or irrevocable letter of credit, if deemed appropriate, each in a form agreed upon by the Debtor. Such evidence shall include, but not be limited to, the most current audited and latest unaudited financial statements of the Potential Bidder or, if the Potential Bidder is an entity formed for the purpose of participating in the Auction, financials of the equity holder(s) of the Potential Bidder and the written commitment of the equity holder(s) of the Potential Bidder to be financially responsible for the Potential Bidder's obligations in connection with the sale. If the Potential Bidder is unable to provide such information, the Debtor may, in accordance with the Sale Determination Process, accept other information sufficient to demonstrate that the Potential Bidder has the financial wherewithal to consummate the sale.

### 5.    **Adequate Assurance**

A Potential Bidder must provide a declaration attesting to such Potential Bidder's ability to provide adequate assurance of future performance with respect to the Green Cuisine Plant Leases and to any and all other real property leases and other executory contracts (the "Executory Contracts") to be assumed and assigned by the Debtor in connection with a sale of the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise.

### 6.    **Rejection Of Qualified Bids; Non-Conforming Bids**

The Debtor may, in accordance with the Sale Determination Process, reject any Qualified Bid not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Sale Procedures Order or these Sale Procedures; provided that, notwithstanding anything to the contrary therein, the Debtor shall have the right, in accordance with the Sale Determination Process, to accept as a Qualified Bid any non-conforming bid for the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise.

7.    **The Debtor's Option To Select A Stalking Horse Bidder**

Based upon Qualified Bids received, the Debtor, in accordance with the Sale Determination Process, may, but shall not be obligated to, at any time designate one or more Qualified Bidders as a "Stalking Horse Bidder". Notice of selection of such Stalking Horse Bidder or Bidders shall be immediately given to all Qualified Bidders, GECPF, the Plant Lease Parties, and filed with the Court.

(a)    **Break-Up Fee**

The Debtor may in its reasonable business judgment, and in accordance with the Sale Determination Process, provide a selected Stalking Horse Bidder or Bidders (if any) with customary and usual "stalking horse" protections, including a break-up fee and/or an expense reimbursement in an amount not to exceed three percent (3%) of the purchase price (inclusive of liabilities to be assumed) in the Qualified Bid of such Stalking Horse Bidder or Bidders (the "Break-Up Fee").

(b)    **Overbids Prior To Auction**

In the event that the Debtor selects one or more Stalking Horse Bidders, then (i) the bid of each Potential Bidder, in order to constitute a Qualified Bid, shall, in addition to meeting the other criteria set forth in these Sale Procedures, be in an amount that is sufficient to pay the Break-Up Fee and result in additional consideration to the Debtor's estate in excess of the purchase price offered by such Stalking Horse Bidder or Bidders of no less than one-half of one percent (0.5%) of such purchase price, rounded up to the nearest $50,000 increment (the "Overbid Amount"), and (ii) each Qualified Bidder having previously submitted a Qualified Bid shall have the right to increase its Qualified Bid; provided that any such increased Qualified Bid must (x) be increased by no less than the Overbid Amount, and (y) be submitted so as to be received by Imperial Capital, LLC, 2000 Avenue of the Stars, 9th Floor, South Tower, Los Angeles, California 90067, Attn.: Marc Bilbao and Nicole Fry, on or before the Bid Deadline (or such subsequent date as the Debtor, in accordance with the Sale Determination Process, shall determine).[6]

---

[6]    Imperial shall immediately distribute each overbid it receives to the Debtor, the other Debtor's Professionals, and the Evaluation Committee.

8.      **Notification Prior To Auction And Deadline To Participate**

The Debtor, prior to the Auction, in accordance with the Sale Determination Process, will inform in writing each Qualified Bidder of (i) the Qualified Bid or Qualified Bids that represent the highest or otherwise best offer for the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise as the starting bid at the Auction (each a "Highest Pre-Auction Qualified Bid"); and (ii) the conditions (including the minimum overbid increment) for the submission at the Auction of a bid that would be higher and better than the Highest Pre-Auction Qualified Bid (a "Subsequent Qualified Overbid").  On or prior to **June 10, 2011 at 4:00 p.m. (prevailing Pacific Time)**, each Qualified Bidder shall inform Imperial of its intention to participate in the Auction.[7]

C.      **The Auction**

Only Qualified Bidders will be permitted to attend and to participate at the Auction; provided, however, that nothing herein precludes the Evaluation Committee, GECPF and the Plant Lease Parties from attending and participating in the Auction in their capacity as creditors of the estate, consistent with these Sale Procedures, and not as bidders. Qualified Bidders who wish to submit a Subsequent Qualified Overbid at the Auction must attend the Auction in person or through an authorized representative.

1.      **Auction Date And Time**

The Auction shall be held on **June 13, 2011, commencing at 9:00 a.m. (prevailing Pacific Time)** at the offices of Kelly Drye / White O'Connor, 10100 Santa Monica Blvd., Twenty Third Floor, Los Angeles, CA 90067, or at such other time, date and place as determined and announced by the Debtor in accordance with the Sale Determination Process and following consultation with GECPF and the Plant Lease Parties, for consideration of Subsequent Qualified Overbids with respect to the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise.  The Auction may be adjourned as the Debtor deems appropriate in the exercise of its

---

[7]      Imperial shall immediately apprise the Debtor, the other Debtor's Professionals, and the Evaluation Committee.

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

reasonable business judgment, in accordance with the Sale Determination Process.  If the Auction is adjourned, reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to all Qualified Bidders.

### 2.    Failure To Receive Qualified Bids

If no Qualified Bid from a Qualified Bidder is received on or prior to the Bid Deadline for the Green Cuisine Plant, the Debtor, in accordance with the Sale Determination Process and following consultation with GECPF and the Plant Lease Parties, may cancel the Auction and, in its discretion, seek to reject the Green Cuisine Plant Leases and abandon all or a portion of the other Green Cuisine Plant assets by serving and filing the Green Cuisine Lease Rejection Notice.[8] If no Qualified Bid from a Qualified Bidder is received on or prior to the Bid Deadline for the Non-Plant Businesses or the Contessa Enterprise, the Debtor, in accordance with the Sale Determination Process, may choose to cancel the Auction with respect to the Non-Plant Businesses and the Contessa Enterprise.

### 3.    Withdrawal Of Assets, Cancellation Of Auction

The Debtor may withdraw assets from, adjourn and/or cancel the Auction as set forth below and in these Sale Procedures:

(a)    Removal of Assets.  The Debtor may, in accordance with the Sale Determination Process, withdraw one or more of the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise from the Auction at any time, including, without limitation, if none of the Qualified Bids reaches a threshold amount warranting continuation of the Auction as set forth in Section C(2) above.

(b)    Cancellation.  The Debtor, in the exercise of its reasonable business judgment and in accordance with the Sale Determination Process, may at any time cancel the Auction with respect to one or more of the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise, and proceed to seek approval of the Highest Pre-Auction Qualified Bid at the Sale Approval Hearing (as defined below).

---

[8]    The Debtor reserves the right to seek rejection of the Green Cuisine Plant Leases and abandon the other Green Cuisine Plant assets on shortened notice.

**4.    <u>No Collusion</u>**

Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise.  Further, each Qualified Bidder participating at the Auction shall fully disclose any agreement or other understanding of any kind or nature whatsoever with any current or former insider or affiliate of the Debtor in connection with such Qualified Bid or with respect to the operation of the Green Cuisine Plant, the Non-Plant Businesses, and/or Contessa Enterprise following the closing of the sale.

**5.    <u>Other Terms</u>**

The Debtor, in accordance with the Sale Determination Process, may make modifications to the Auction rules and these Sale Procedures, as may be determined to be in the best interests of the Debtor's estates or creditors announced by the Debtor from time to time prior to or during the Auction; <u>provided</u> that such modifications are not materially inconsistent with these Sale Procedures or the Sale Procedures Order.

**D.    <u>Selection Of The Winning Bidder</u>**

Immediately at the conclusion of the Auction, the Debtor shall determine, in accordance with the Sale Determination Process, which Qualified Bid or Qualified Bids, or Subsequent Qualified Overbid or Subsequent Qualified Overbids, as applicable, constitutes the highest and best offer for each of the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise (each, a "<u>Winning Bid</u>"), and the Qualified Bidder or each of the Qualified Bidders that has submitted a Winning Bid (each, a "<u>Winning Bidder</u>") shall execute and deliver to the Debtor its Form Agreement with any necessary modifications (the "<u>Winning Purchase Agreement</u>").  Notice of selection of such Winning Bidder or Bidders shall be immediately given to the Key Creditor Group, any party known to have asserted a security interest or other interest in the assets to be sold, all counterparties to real estate leases or executory contracts to be assumed and assigned to such bidder or bidders, and any other party that requests to receive such notice on or before the hearing on this Motion, and filed with the Court at least 24 hours prior to the Sale Approval Hearing.

**E.    The Sale Approval Hearing**

A hearing to approve the Winning Bid or the Winning Bids (the "<u>Sale Approval Hearing</u>") shall be held before United States Bankruptcy Court for the Central District of California (the "<u>Court</u>") on **June ___, 2011 at __:___ __.m. (prevailing Pacific Time)**.

**F.    Executory Contracts**

**1.    Notice To Counterparties**

As soon as reasonably practicable following the entry of the Sale Procedures Order, but in any event no later than May 30, 2011, the Debtor shall provide notice to each counterparty to the Green Cuisine Plant Leases and/or Executory Contracts of the Debtor's calculation of the amounts that must be paid in connection with the assumption and assignment of the Green Cuisine Plant Leases and/or Executory Contracts pursuant to section 365(b) of the Bankruptcy Code (the "<u>Cure Amount</u>").

On or before May 30, 2011, the Debtor will provide on a confidential basis to each counterparty[9] to a Green Cuisine Plant Lease and/or Executory Contract designated for potential assumption and assignment with (i) the identity of each Qualified Bidder, and (ii) information regarding each Qualified Bidder's adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code.[10]

**2.    Objections**

If an objection is raised by a counterparty to any of the Green Cuisine Plant Leases and/or Executory Contracts solely to the Cure Amount, and such dispute cannot be consensually resolved prior to the Sale Approval Hearing, the Debtor may seek to assume such lease or contract and assign it to a Winning Bidder; <u>provided</u> that the entire disputed Cure Amount must be immediately paid upon such assumption and assignment, and the Debtor must segregate the applicable disputed Cure Amount pending the resolution of such dispute by the Court or by

---

[9]    Counterparties to Executory Contracts receiving information on a confidential basis regarding the identity and adequate assurance of future performance of each Qualified Bidder includes Jenny Craig, Inc.

[10]    The Debtor shall thereafter immediately provide such information on a confidential basis to counterparties to the Green Cuisine Plant Leases and/or Executory Contracts with respect to any Qualified Bids received after May 30, 2011.

agreement of the parties, for payment to the counterparty or refund to the Winning Bidder.  If an objection is raised by a counterparty to any of the Green Cuisine Plant Leases and/or Executory Contracts as to adequate assurance of future performance, and such dispute cannot be consensually resolved prior to the Sale Approval Hearing, said objection will be determined by the Court.  Hearings on disputed Cure Amount(s) and/or adequate assurance of future performance in connection with the Green Cuisine Plant Leases and/or Executory Contracts (as applicable) shall be held (i) on the date of the Sale Approval Hearing, or (ii) on such other date as the Court may designate.

**G.    Irrevocability of Certain Qualified Bids**

Each Winning Bid shall remain open, irrevocable and binding upon each Winning Bidder; provided that no Winning Bid shall be binding upon the Debtor until it has been approved by the Court.  The bid of the next highest Qualified Bidder (the "Back-Up Bidder") at the highest price bid by such Qualified Bidder at the Auction, shall remain open and irrevocable until the closing of the sale of (as applicable) the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise.  The Deposits of all other Qualified Bidders will be returned to such Qualified Bidders no later than three (3) business days following the conclusion or cancellation of the Auction.

**H.    Failure To Close**

Subject to the terms of the Winning Purchase Agreement, in the event a Winning Bidder (as determined by the Debtor and approved by the Court) fails to consummate the proposed transaction by the closing date contemplated in the Winning Purchase Agreement, (i) such Winning Bidder shall be deemed to have forfeited its Deposit and the Debtor shall retain the Deposit and reserve the right to pursue all available remedies, whether legal or equitable, available to it, and (ii) the Debtor shall be authorized without further order of the Court to consummate the proposed transaction with the Back-Up Bidder.

**I.    Submission To Jurisdiction Of The Court**

All Potential Bidders will be deemed to have submitted to the jurisdiction of the Court with respect to all matters related to the Auction or with respect to the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise.

**J.**      **Expenses**

Subject to the terms of the Winning Purchase Agreement or any other executed agreement binding upon the Debtor, all Qualified Bidders shall bear their own costs and expenses in connection with the Auction or with respect to the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise.

## **EXHIBIT 1**

## **TO SALE PROCEDURES**

 Imperial Capital

2000 Avenue of the Stars, 9th Floor South    Los Angeles, California 90067    TEL 310 246 3700    800 929 2299    FAX 310 246 3714

**PRIVATE AND CONFIDENTIAL**

«Company»
«Address»
Attn: «Name_1»
        «Name_2»


Dear «Common_Name_1»:

    Contessa Premium Foods, Inc. ("Contessa" or the "Company"), as debtor and debtor in possession in Case No. 13454-PC (the "Chapter 11 Case") currently pending under chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), has retained Imperial Capital, LLC ("Imperial Capital") to act as its financial advisor in connection with a possible sale of the Company or certain of its assets (each, a "Transaction"), subject to the approval of the Bankruptcy Court in accordance with section 363 of the Bankruptcy Code. Contessa, with the support of its major creditors, will shortly be seeking the approval of the Bankruptcy Court of the procedures pursuant to which it will seek to consummate one or more Transactions (the "Sale Procedures").

    In anticipation of the approval by the Bankruptcy Court of the Sale Procedures, enclosed please find a copy of the Confidential Information Memorandum (the "Memorandum" or "CIM") which describes Contessa's operations, financial performance, and growth opportunities in detail. Please be aware that your review of the CIM and your investigation of a Transaction are subject to the terms and conditions of your non-disclosure agreement with Contessa (the "Non-Disclosure Agreement"). Once you have had the opportunity to review this information, we would be glad to answer any questions you may have. However, in order to conduct a process in a way that minimizes disruption to the Company, under no circumstances should you contact the management, employees, customers, vendors, creditors or shareholders of the Company, unless specifically agreed to in advance by Imperial Capital.

    Please note also that the Company intends to pursue a parallel track process whereby it will be seeking confirmation of a plan of reorganization in the Chapter 11 Case (the "Plan"). If the sale process results in one or more successful Transactions with respect to Contessa Seafood and Convenience Meals or the Contessa enterprise as a whole, then the Plan will become a plan of liquidation for the distribution of the proceeds of such Transaction or Transactions to the Company's creditors.

    Imperial Capital believes the information contained in the provided Memorandum, as well as the data room ("Data Room") to which you have been provided access, is sufficient to enable prospective purchasers to perform an evaluation of Contessa and submit a preliminary indication of interest ("I.O.I.") for a potential Transaction. However, if you have any significant questions which, if unanswered before submitting your I.O.I., would expose your I.O.I. to meaningful adjustments, you are requested to make such inquiries beforehand and we will consider addressing each such inquiry on a case by case basis.

Accordingly, after reviewing the Memorandum and Data Room, we request you provide in writing a preliminary, non-binding proposal to Imperial Capital no later than **12:00p.m. PST on Friday, May 6, 2011**. Please send the proposal in care of: Imperial Capital, LLC, 2000 Avenue of the Stars, 9th Floor South, Los Angeles, CA 90067, Attention: Nicole Fry (Facsimile: 310-777-3047, or E-mail: nfry@imperialcapital.com).

In order to evaluate the proposals on a comparable basis, your offer should include the following information:

(i)  **Valuation Estimate and Purchase of Assets**.  The aggregate cash purchase price, expressed in U.S. dollars, for the assets of Contessa that you propose to acquire pursuant to Section 363 of the Bankruptcy Code.  Please indicate the specific assets you are interested in, and particularly  whether it is the entire Company as a going concern, including Contessa Seafood, Convenience Meals and the Green Cuisine Plant (as defined in the CIM), or if your interest is solely with respect to any of these selected assets.  Also, please indicate the method(s) used by your group in calculating your cash purchase price, naming the specific determinative quantitative driver(s), variable(s) and key assumptions;

(ii)  **Source of Financing**.  Please identify the entity investing in the Transaction and the source(s) of all financing for the Transaction, including any other participants in a potential transaction, if applicable.  Please specify the total capital availability currently available from the source(s) of funding being contemplated for this transaction and any contingencies which are required as part of your financing proposal.

(iii)  **Secured and Unsecured Claims.**  Please state whether your proposal includes any specific treatment of any secured or unsecured claims which are being asserted against the Company in the Chapter 11 Case, and how any proposed modifications would be structured (please note: a detailed claims analysis has been included in the CIM in order to allow you to address this request);

(iv)  **Balance Sheet / Working Capital**.  Please include in your proposal specifics regarding other assumed assets and liabilities at closing and how any proposed working capital mechanism would be structured (please note: a detailed balance sheet has been included in the CIM in order to allow you to address this request);

(v)  **Due Diligence.**  Please also include an overview of your remaining due diligence process and a detailed list of any remaining due diligence requests.  Please also provide the names and contact information for any outside legal, investment banking, accounting/tax, due diligence or other advisors or consultants that you intend to use in connection with the transaction;

(vi)  **Approvals**.  A listing of all corporate, shareholder and regulatory approvals required, and all other conditions required to be fulfilled, prior to consummating a Transaction.

«Company»
Page 3 of 4

The Sale Procedures contemplate that upon receipt of I.O.I.s from interested parties, Contessa and Imperial Capital, in consultation with Contessa's major creditors, will evaluate each proposal based on the above criteria, considering valuation, transaction structure, financial capability, conditions and the prospective purchaser's ability to consummate a Transaction in a timely manner.  If your I.O.I. satisfactorily complies with the outlined conditions and meets with approval from Contessa, we will invite you to attend a management presentation, and you will be provided with a form asset purchase agreement (the "Form APA") by Contessa's counsel.  Imperial Capital intends to invite selected parties to management presentations beginning the week of May 9, 2011.  Upon completion of due diligence, participating parties will be asked to refine their preliminary bids in the form of a "marked-up" definitive and binding asset purchase agreement utilizing the Form APA (a "Definitive Bid").  Please note that a Definitive Bid may not be subject to any contingencies relating to financing, future consents or approvals (including, without limitation, consent of a bidding party's board of directors (or similar governing body) or equity holders), due diligence, or the receipt of any consents, in each case, not otherwise required by the Form APA.

Subject to approval of the Sale Procedures by the Bankruptcy Court, Contessa may in its discretion, and following consultation with its major creditors, either select one or more Definitive Bids to be "stalking horse" bids and provide the party or parties making such bids with reasonable and customary "bid protections", including a break-up fee, or invite all parties whose Definitive Bid is deemed acceptable to participate in an auction without designating any of such bids as a "stalking horse" bid.

A copy of the motion seeking approval of the Sale Procedures will be provided to you immediately following the filing of such motion with the Bankruptcy Court.  Under the Sale Procedures, Definitive Bids will be due no later than June 8, 2011, the auction will take place on June 13, 2011, and a hearing to approve the sale will be held on or around June 15, 2011.  Please note that if Contessa chooses to select one or more "stalking horse" bids, then June 8 will become the date by which competing overbids would be due.  The Sales Procedures will provide the Company with the right to change any of these dates.

Under section 363 of the Bankruptcy Code, no agreement with respect to a Transaction can be binding on Contessa unless and until it is approved by the Bankruptcy Court.  Contessa will have no obligations to any potential purchaser unless and until a definitive agreement is entered into by Contessa and a potential purchaser, and after such time, Contessa will have only those obligations set forth in such definitive agreement.  Further, until a definitive agreement is reached, Contessa reserves the right, in its sole discretion, to modify or terminate the terms and conditions of the invitation made by this letter without notice.  Finally, Contessa reserves the right to negotiate with any party and to reject any I.O.I or other statement of interest from any party and will not be obligated to state any reason for declining consideration, at any time, of any party.

If you do not wish to submit an I.O.I. for Contessa, please certify the destruction of the Memorandum and all other documents.  Your determination not to proceed in no way limits your obligations set forth in the Non-Disclosure Agreement.  Any breach of the obligations of the Non-Disclosure Agreement may be cause for Contessa to withdraw this invitation to participate in this process and take other remedial action.  You will be solely responsible for all costs and expenses you may incur in connection with these discussions and neither Contessa nor Imperial Capital will have any liability to you with respect to the same or for any other reason, unless and until any such liability is set forth in definitive written agreements with respect to a transaction.

«Company»
Page 4 of 4


If you have any questions about the procedures governing this invitation, please feel free to contact us at the contact information below.  Imperial Capital will be available throughout the process to assist in your evaluation of the Company.  On behalf of Contessa, we appreciate your interest and your cooperation in complying with these procedures.

Sincerely,




Marc Bilbao                                          Nicole Fry
Managing Director                                    Managing Director
(310) 246-3795                                       (310) 246-3627
mbilbao@imperialcapital.com                          nfry@imperialcapital.com

## EXHIBIT 2

## TO SALE PROCEDURES

[*reserved*]

# EXHIBIT B

## TO SALE PROCEDURES ORDER

[*reserved*]

**<u>EXHIBIT B</u>**

Craig A. Wolfe (CA Bar No. 200870)
Jason R. Alderson (CA Bar No. 233176)
**KELLEY DRYE & WARREN LLP**
101 Park Avenue
New York, New York  10178-0002
Telephone: (212) 808-7800
Facsimile:  (212) 808-7897
E-mail:  cwolfe@kelleydrye.com;
jalderson@kelleydrye.com
*Counsel for Debtor*

Jeffrey N. Pomerantz (CA Bar No. 143717)
Jeffrey W. Dulberg (CA Bar No. 181200)
**PACHULSKI STANG ZIEHL & JONES LLP**
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
E-mail:jpomerantz@pszjlaw.com; jdulberg@pszjlaw.com
*Local/Conflicts Counsel for Debtor*

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.:  2:11-bk-13454-PC |
| CONTESSA PREMIUM FOODS, INC., | Chapter 11 |
| Debtor.[1] | **NOTICE OF (A) SALE PROCEDURES, INCLUDING BREAK-UP FEE, IN CONNECTION WITH THE SALE AT AUCTION OF CONTESSA ENTERPRISE ASSETS, (B) AUCTION, (C) SALE APPROVAL HEARING AND OBJECTION DEADLINE THERETO, AND (D) PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF REAL AND PERSONAL PROPERTY LEASES AND EXECUTORY CONTRACTS** |
| | **Bid Deadline: June 8,,2011 at 4:00pm** |
| | **Deadline for Qualified Bidders' notice of intent to participate at Auction: June 6, 2011 at 4:00pm** |
| | **Auction Date: June 13, 2011 at 9:00am** |
| | **Sale Objection Deadline: June __, 2011 at TBD** |
| | **Sale Approval Hearing:  June __, 2011 at TBD** |

---

[1]   The Debtor is a California corporation, Fed. Tax I.D. No. 33-0020606.  The Debtor's address is 222 West 6th  Street, 8th Floor, San Pedro, California 90731.

**PLEASE TAKE NOTICE** that on **[date]**, Contessa Premium Foods, Inc., a California Corporation and the above-captioned debtor and debtor-in-possession ("Debtor"), filed a Motion For Order (A) Approving Sale Procedures, Including Break-Up Fee, In Connection With The Proposed Sale At Auction Of The Contessa Enterprise, (B) Approving Procedures For The Assumption And Assignment Of Real And Personal Property Leases And Executory Contracts In Connection Therewith, (C) Approving Sale Of All Or Certain Contessa Enterprise Assets To The Highest And Best Bidder At Auction, and (D) Granting Related Relief (the "Motion") in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that, following a hearing held on May 4, 2011, the Bankruptcy Court entered an order (the "Sale Procedures Order") granting the Motion. A copy of the Sale Procedures Order is attached as **Exhibit A** hereto.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has approved the Sale Procedures attached as Exhibit A to the Sale Procedures Order as the exclusive mechanism governing the sale of the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise (each as defined in the Motion).

**PLEASE TAKE FURTHER NOTICE** that all parties who may be interested in purchasing the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise **must express their interest and/or submit their bids in accordance with the Sale Procedures**.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with and subject to the Sale Procedures, the deadline for submitting a Qualified Bid (as defined in the Sale Procedures) is **June 8, 2011 at 4:00 p.m. (prevailing Pacific Time) (the "Bid Deadline")**.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with and subject to the Sale Procedures, the Debtor will hold an auction for the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise on **June 13 2011 at 9:00 a.m. (prevailing Pacific Time) (the "Auction")**.

**PLEASE TAKE FURTHER NOTICE** that in accordance with and subject to the Sale Procedures, a hearing to approve the proposed sale of the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise shall be conducted before the Honorable Peter H. Carroll, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, Courtroom 1539, Edward R. Roybal Federal Bldg., 255 East Temple Street, Los Angeles, CA 90012 on **June ___, 2011 at __:___ __.m (prevailing Pacific Time") (the "Sale Approval Hearing")** or such other time as the Bankruptcy Court permits to approve the sale to the Winning Bidder or Bidders (as defined in the Sale Procedures) for each of the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the sale of the Green Cuisine Assets, the Non-Plant Businesses and/or the Contessa Enterprise to the Winning Bidder or Bidders (as applicable) shall be set forth in writing and shall specify with particularity the grounds for such objections and other statements of position and shall be filed with the Court **on or before the date of the Sale Approval Hearing**, and shall be served so as to be received by that same date and time by (a) counsel for the Debtor as follows: Kelley Drye & Warren LLP, 101 Park Ave., New York, NY 10178, Attn.: Craig A. Wolfe Esq.(email:

Cwolfe@KelleyDrye.com); (b) the Office of the United States Trustee as follows:  725 S. Figueroa St., 26th Floor, Los Angeles, CA 90017, Attn.:  Russell Clementson, Esq.; (c) Wells Fargo Bank, N.A. as follows:  Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree St., N.E., 24th Floor, Atlanta, GA 30308, Attn.: Jesse H. Austin, III, Esq. (email: jessaustin@paulhastings.com); (d) General Electric Capital Corporation and GE Capital Public Finance, Inc. as follows:  Davis Wright Tremaine LLP, 505 Montgomery St., Ste. 800, San Francisco, CA 94111, Attn.: Harvey S. Schochet, Esq. (email: harveyschochet@dwt.com); (e) Dedeaux Enterprises, LLC as follows:  DLA Piper LLP, 1251 Avenue of the Americas, New York, NY 10020, Attn.: George B. South III, Esq. (email: george.south@dlapiper.com); (f) counsel to the Official Committee of Unsecured Creditors as follows:  Arent Fox LLP, Gas Company Tower, 555 West Fifth St., 48th Floor, Los Angeles, CA 90013, Attn.: Mette H. Kurth (email: kurth.mette@arentfox.com); and (g) delivered as a courtesy copy to the Chambers of Judge Peter H. Carroll, United States Bankruptcy Court, Edward R. Roybal Federal Bldg., 255 East Temple Street, Los Angeles, CA 90012.

**PLEASE TAKE FURTHER NOTICE** that as soon as reasonably practicable following the entry of this Sale Procedures Order, but in any event **no later than May 30, 2011**, the Debtor shall provide notice to each counterparty to the Green Cuisine Plant Leases and/or Executory Contracts (as each is defined in the Motion) of the Debtor's calculation of the amounts that must be paid in connection with the assumption and assignment of the Green Cuisine Plant Leases and/or Executory Contracts pursuant to section 365(b) of the Bankruptcy Code (the "Cure Amount").  Further, **on or before May 30, 2011**, the Debtor will provide on a confidential basis to each counterparty to a Green Cuisine Plant Lease and/or Executory Contract designated for potential assumption and assignment with (i) the identity of each Qualified Bidder, and (ii) information regarding each Qualified Bidder's adequate assurance of future performance pursuant to section 365 of the Bankruptcy Code

**PLEASE TAKE FURTHER NOTICE** that if a counterparty to any of the Green Cuisine Plant Leases and/or Executory Contracts raises an objection solely to the Cure Amount, and such dispute cannot be consensually resolved prior to the Sale Approval Hearing, the Debtor may seek to assume such lease or contract and assign it to a Winning Bidder; provided that the entire disputed Cure Amount must be immediately paid upon such assumption and assignment, and the Debtor must segregate the applicable disputed Cure Amount pending the resolution of such dispute by the Court or by agreement of the parties, for payment to the counterparty or refund to the Winning Bidder.  If an objection is raised by a counterparty to any of the Green Cuisine Plant Leases and/or Executory Contracts as to adequate assurance of future performance, and such dispute cannot be consensually resolved prior to the Sale Approval Hearing, said objection will be determined by the Court.  Hearings on disputed Cure Amount(s) and/or adequate assurance of future performance in connection with the Green Cuisine Plant Leases **and/or Executory Contracts** (as applicable) shall be held (i) on the date of the Sale Approval Hearing, or (ii) on such other date as the Court may designate.

1

2  Dated:    April __, 2011              PACHULSKI STANG ZIEHL & JONES LLP

3                                        By: _____

4                                            Jeffrey N. Pomerantz (CA Bar No. 143717)
                                             Jeffrey W. Dulberg (CA Bar No. 181200)
5                                            *Local/Conflicts Counsel for Debtor*

6                                        KELLEY DRYE & WARREN LLP

7
                                             Craig A. Wolfe (CA Bar No. 200870)
8                                            Jason R. Alderson (CA Bar No. 233176)
                                             *Counsel for Debtor*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT C</u>**

1   Craig A. Wolfe (CA Bar No. 200870)
    Jason R. Alderson (CA Bar No. 233176)
2   **KELLEY DRYE & WARREN LLP**
3   101 Park Avenue
    New York, New York  10178-0002
4   Telephone: (212) 808-7800
    Facsimile:  (212) 808-7897
5   E-mail:  cwolfe@kelleydrye.com;
    jalderson@kelleydrye.com
6   *Counsel for Debtor*

7   Jeffrey N. Pomerantz (CA Bar No. 143717)
8   Jeffrey W. Dulberg (CA Bar No. 181200)
    **PACHULSKI STANG ZIEHL & JONES LLP**
9   10100 Santa Monica Blvd., 11th Floor
    Los Angeles, California  90067-4100
10   Telephone: (310) 277-6910
    Facsimile:  (310) 201-0760
11   E-mail:jpomerantz@pszjlaw.com; jdulberg@pszjlaw.com
12   *Local/Conflicts Counsel for Debtor*

13           **UNITED STATES BANKRUPTCY COURT**

14             **CENTRAL DISTRICT OF CALIFORNIA**

15                **LOS ANGELES DIVISION**

16   In re:                     Case No.:  2:11-bk-13454-PC

17   CONTESSA PREMIUM FOODS, INC.,     Chapter 11

18                          **NOTICE OF REJECTION OF GREEN**
      Debtor.[1]            **CUISINE PLANT LEASES AND/OR**
19                          **ABANDONMENT OF OTHER GREEN**
20                          **CUISINE PLANT ASSETS**

21

22

23   **PLEASE TAKE NOTICE** that on **[date]**, Contessa Premium Foods, Inc., a California
24   Corporation and the above-captioned debtor and debtor-in-possession ("Debtor"), filed a Motion
    For Order (A) Approving Sale Procedures, Including Break-Up Fee, In Connection With The
25   Proposed Sale At Auction Of The Contessa Enterprise, (B) Approving Procedures For The
26   Assumption And Assignment Of Real And Personal Property Leases And Executory Contracts

27
    [1]     The Debtor is a California corporation, Fed. Tax I.D. No. 33-0020606.  The Debtor's address is 222
28       West 6th  Street, 8th Floor, San Pedro, California 90731.

In Connection Therewith, (C) Approving Sale Of All Or Certain Contessa Enterprise Assets To The Highest And Best Bidder At Auction, and (D) Granting Related Relief (the "Motion") in the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that, following a hearing held on May 4, 2011, the Bankruptcy Court entered an order (the "Sale Procedures Order") granting the Motion.  A copy of the Sale Procedures Order is annexed as **Exhibit A** hereto.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has approved the Sale Procedures attached as Exhibit A to the Sale Procedures Order as the exclusive mechanism governing the sale of the Green Cuisine Plant, the Non-Plant Businesses and/or Contessa Enterprise.[2]

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Procedures, if no Qualified Bid from a Qualified Bidder is received on or prior to the Bid Deadline for the Green Cuisine Plant, the Debtor, in accordance with the Sale Determination Process and following consultation with General Electric Capital Corporation, GE Capital Public Finance, Inc., and Dedeaux Enterprises, LLC, may cancel the Auction and, in its discretion, seek to reject the Green Cuisine Plant Leases and abandon all or a portion of the other Green Cuisine Plant assets.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Sale Procedures, the Debtor hereby provides notice of its intent to reject the Green Cuisine Plant Leases and/or abandon the other Green Cuisine Plant assets as referenced on the schedule annexed hereto as **Exhibit B**.

**PLEASE TAKE FURTHER NOTICE** that unless a timely objection is filed as set forth below, rejection of the Green Cuisine Plant Leases and/or abandonment of the other Green Cuisine Plant assets shall become effective nunc pro tunc as of the date the Debtor serves this Notice Of Rejection Of The Green Cuisine Plant Leases And/Or Abandonment Of Other Green Cuisine Plant Assets (this "Notice"), without further notice, hearing or order of this Court; *provided*, *however*, that the  effective date of the rejection of any real property lease shall not occur until the later of: (i) the date  the Debtor files and serve this Notice, (ii) the date the Debtors relinquish control of the premises by notifying the affected landlord in writing of the Debtors' surrender of the premises and/or turning over keys or key codes to the affected landlord, and (iii) the Collection Period (as defined below), if applicable, expires (the "Rejection And/Or Abandonment Date").

**PLEASE TAKE FURTHER NOTICE** that, for each real property lease listed on **Exhibit B** attached hereto, certain personal property that is proposed to be abandoned may be subject to a personal property lease (as indicated on **Exhibit B**); if so, the personal property lessor with respect to such property shall have seven (7) days from the date this Notice is filed to retrieve their property (the "Collection Period").

**PLEASE TAKE FURTHER NOTICE** that, should you object to the rejection of the Green Cuisine Plant Leases and/or abandonment of the other Green Cuisine Plant assets, you must file

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion and/or the Sale Procedures Order.

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

and serve a written objection so that such objection is filed with the Bankruptcy Court and **actually received** no later than ten (10) days after the date of service by the Debtor of this Notice by the following parties:  (a)  counsel for the Debtor as follows:  Kelley Drye & Warren LLP, 101 Park Ave., New York, NY 10178, Attn.: Craig A. Wolfe Esq.(email: Cwolfe@KelleyDrye.com); (b) the Office of the United States Trustee as follows:  725 S. Figueroa St., 26th Floor, Los Angeles, CA 90017, Attn.:  Russell Clementson, Esq.; (c) Wells Fargo Bank, N.A. as follows:  Paul, Hastings, Janofsky & Walker LLP, 600 Peachtree St., N.E., 24th Floor, Atlanta, GA 30308, Attn.: Jesse H. Austin, III, Esq. (email: jessaustin@paulhastings.com); (d) General Electric Capital Corporation and GE Capital Public Finance, Inc., as follows:  Davis Wright Tremaine LLP, 505 Montgomery St., Ste. 800, San Francisco, CA 94111, Attn.: Harvey S. Schochet, Esq. (email: harveyschochet@dwt.com); (e) Dedeaux Enterprises, LLC as follows:  DLA Piper LLP, 1251 Avenue of the Americas, New York, NY 10020, Attn.: George B. South III, Esq. (email: george.south@dlapiper.com); (f) counsel to the Official Committee of Unsecured Creditors as follows:  Arent Fox LLP, Gas Company Tower, 555 West Fifth St., 48th Floor, Los Angeles, CA 90013, Attn.: Mette H. Kurth and Katie Lane (email: kurth.mette@arentfox.com and lane.katie@arentfox.com); and (g) delivered as a courtesy copy to the Chambers of Judge Carroll, United States Bankruptcy Court, Edward R. Roybal Federal Bldg., 255 East Temple Street, Los Angeles, CA 90012.

**Absent such objection being filed and served in compliance with the foregoing, the rejection of the Green Cuisine Plant Leases and/or abandonment of the other Green Cuisine Plant assets scheduled on Exhibit B hereto shall become effective as of the Rejection And/Or Abandonment Date without further notice, hearing or order of the Bankruptcy Court.**

**PLEASE TAKE FURTHER NOTICE** that, if an objection is properly filed and served on the notice parties specified above, the Bankruptcy Court will schedule a hearing to consider that objection.  If such objection is overruled or withdrawn, the rejection and/or abandonment date of such Green Cuisine Plant Lease or Green Cuisine Plant asset (as applicable) shall be deemed to have occurred as of the Rejection And/Or Abandonment Date or as otherwise determined by the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that if the Debtor has deposited monies with a lessor to the Green Cuisine Plant Leases as a security deposit or arrangement which such monies had not been applied as of the Petition Date, such lessor or contract counter-party may not off-set or otherwise use such deposit without prior authorization from the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the terms of the Order Granting Motion For Entry Of An Order (A) Establishing The Procedures And Deadlines For Filing (i) Proofs Of Claim And Interests And (ii) Requests For Payment Of Administrative Expense Pursuant To 11 U.S.C. § 503(b)(9); (B) Approving Form And Manner Of Notice Of Bar Dates; And (C) Granting Related Relief,[3] for any claim that you may assert against the Debtor as a result of the rejection of any  lease scheduled on **Exhibit B** you must submit a proof of claim for any alleged damages arising from such rejection, on or before thirty (30) days after the Rejection And/Or Abandonment Date.  If you do not timely file such proof of claim, you shall be forever barred from asserting a claim for alleged rejection damages arising from the

---

[3]    Entered on February 23, 2011 (Dkt. No. 104).

1    rejection of the above-referenced lease and from participating in any distributions that may be

2    made in connection with these chapter 11 cases on account of any such claim for alleged
     rejection damages if allowed.

3
            **PLEASE TAKE FURTHER NOTICE** that any property located on the premises of

4    the real property in respect of lease that is rejected in accordance with the terms hereof that is
     not retrieved by the Rejection And/Or Abandonment Date shall be deemed abandoned without

5    further order of this Court free and clear of any interests of any other party and any landlord or
     other designee shall be free to dispose of same without liability to any party.

6

7

8    Dated:    April __, 2011                   PACHULSKI STANG ZIEHL & JONES LLP

9                                               By: _____

10                                                   Jeffrey N. Pomerantz (CA Bar No. 143717)
                                                     Jeffrey W. Dulberg (CA Bar No. 181200)

11                                                   *Local/Conflicts Counsel for Debtor*

12                                              KELLEY DRYE & WARREN LLP

13
                                                     Craig A. Wolfe (CA Bar No. 200870)

14                                                   Jason R. Alderson (CA Bar No. 233176)
                                                     *Counsel for Debtor*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT D</u>**

Craig A. Wolfe (CA Bar No. 200870)
Jason R. Alderson (CA Bar No. 233176)
**KELLEY DRYE & WARREN LLP**
101 Park Avenue
New York, New York  10178-0002
Telephone: (212) 808-7800
Facsimile:  (212) 808-7897
E-mail:  cwolfe@kelleydrye.com;
jalderson@kelleydrye.com
*Counsel for Debtor*

Jeffrey N. Pomerantz (CA Bar No. 143717)
Jeffrey W. Dulberg (CA Bar No. 181200)
**PACHULSKI STANG ZIEHL & JONES LLP**
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Telephone: (310) 277-6910
Facsimile:  (310) 201-0760
E-mail:jpomerantz@pszjlaw.com; jdulberg@pszjlaw.com
*Local/Conflicts Counsel for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No.:  2:11-bk-13454-PC |
| CONTESSA PREMIUM FOODS, INC., | Chapter 11 |
| Debtor.[1] | **DECLARATION OF MARC BILBAO IN SUPPORT OF MOTION FOR ORDER (A) APPROVING SALE PROCEDURES, INCLUDING BREAK-UP FEE, IN CONNECTION WITH THE PROPOSED SALE AT AUCTION OF THE CONTESSA ENTERPRISE; (B) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF REAL AND PERSONAL PROPERTY LEASES AND EXECUTORY CONTRACTS IN CONNECTION THEREWITH; (C) APPROVING SALE OF ALL OR CERTAIN CONTESSA ENTERPRISE ASSETS TO THE HIGHEST AND BEST BIDDER AT AUCTION; AND (D) GRANTING RELATED RELIEF** |

---

[1]    The Debtor is a California corporation, Fed. Tax I.D. No. 33-0020606.  The Debtor's address is 222 West 6th Street, 8th Floor, San Pedro, California 90731.

I, Marc Bilbao, declare and state as follows:

1.    I am a Managing Director and Co-head of the Restructuring Group at Imperial Capital, LLC ("Imperial").  Imperial is the proposed investment banker to Contessa Premium Foods, Inc., a California Corporation and the above-captioned debtor and debtor-in-possession ("Debtor").[2]  As a result of my position, I have been involved in the Debtor's post-petition effort to sell the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise.[3]

2.    I am authorized to submit this Declaration in support of the Debtor's Motion For Order (A) Approving Sale Procedures, Including Break-Up Fee, In Connection With The Proposed Sale At Auction Of The Contessa Enterprise, (B) Approving Procedures For The Assumption And Assignment Of Real And Personal Property Leases And Executory Contracts In Connection Therewith, (C) Approving Sale Of All Or Certain Contessa Enterprise Assets To The Highest And Best Bidder At Auction, and (D) Granting Related Relief (the "Motion").

3.    Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge, my review of relevant documents or my opinion based upon my experience and knowledge of the negotiations and transactions relating to the proposed sale of the assets at issue in the Motion.  If I were called upon to testify, I could and would testify to each of the facts set forth herein based on such personal knowledge, review of the documents or opinion.

4.    The Debtor and Imperial commenced a marketing process regarding the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise on or about February 22, 2011.  To date, the Debtor and Imperial has (a) contacted (or been contacted by) over 145 parties, (b) sent over 115 non-disclosure agreements ("NDAs"), and (c) executed approximately

---

[2]    The Application of Debtor and Debtor in Possession to Employ Imperial Capital, LLC, as Investment Bankruptcy to the Debtor, *Nunc Pro Tunc* to February 22, 2011, was filed on March 28, 2011 and is pending before the Bankruptcy Court (Docket No. 157).

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion (as defined herein).

60 NDAs and expect to execute more. All parties executing NDAs have or will receive non-public information in the form of access to an electronic data room, and a confidential information memorandum which describes in detail the Debtor's businesses, financial performance and growth opportunities.

5.      To ensure that the Debtor's estate and its creditors obtain the best recovery possible, the Debtor will test the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise in a public auction consistent with the requirements of the Bankruptcy Code. Upon the conclusion of that auction, the Debtor, the Court and all parties in interest will be able to confirm that the Debtor obtained the best possible outcome for its creditors.

6.      Based on my 20 years of experience as an advisor to debtors selling assets both in bankruptcy cases and outside of bankruptcy, and given the nature of the assets in question, I believe that the proposed Sale Procedures, including the Auction and the potential Break-Up Fee, provide an appropriate framework for selling the Debtor's assets and will enable the Debtor – in accordance with the Sale Determination Process – to review, analyze and compare all bids received to determine whether any of the bids would result in the highest and best value being realized for the Green Cuisine Plant, the Non-Plant Businesses and/or the Contessa Enterprise.

7.      Moreover, for the reasons discussed in the Motion, I believe that the Sale Procedures, including Break-Up Fee, are fair and reasonable under the circumstances. Specifically, the Debtor – in accordance with the Sale Determination Process – will only offer the Break-Up Fee and select a Stalking Horse Bidder or Bidders if, in doing so, the Debtor will increase its chances of receiving the highest and best offer for any of the Debtor's asset combinations by (a) establishing a bid standard or minimum for other bidders to the auction, and (b) serving as catalyst for other potential or actual bidders, to the benefit of the estate, creditors, and all other parties in interest. Further, in my experience if a Stalking Horse Bidder(s) is

selected, such Stalking Horse Bidder(s) will likely be unwilling to commit to hold open an offer for the Debtor's assets or any part thereof unless the Sale Procedures authorizes payment of a Break-Up Fee.  Therefore, I respectfully request that this Court approve the Sale Procedures, including the Break-Up Fee, in full.

8.    A sale or other disposition of the Green Cuisine Plant, the Non-Plant Businesses, and/or the Contessa Enterprise will not result in the disclosure of any "personally identifiable information" (as such term is defined in section 101(41A) of the Bankruptcy Code) of any individual, whether in contravention of any privacy policy of the Debtor or otherwise; therefore, no need exists for the appointment of a consumer privacy ombudsman pursuant to section 332 of the Bankruptcy Code.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 26th day of April 2011, at Los Angeles, California.

_____
Marc Bilbao

KELLEY DRYE &
WARREN LLP
101 PARK AVENUE
NEW YORK, NY 10178

4