TODD ROSEN (State Bar. No. 203156)
Todd.Rosen@mto.com
DEREK J. KAUFMAN (State Bar No. 243699)
Derek.Kaufman@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Suite 3500
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Counsel for Riverside Claims, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>CONTESSA LIQUIDATING CO., INC.,<br><br>              Reorganized Debtor. | Case No.: 2:11-bk-13454-PC<br><br>Chapter 11<br><br>NOTICE OF MOTION AND MOTION OF RIVERSIDE CLAIMS, LLC TO (I) VACATE ORDER GRANTING REORGANIZED DEBTOR'S SIXTH OMNIBUS MOTION FOR ORDER TO REDUCE AND ALLOW FILED OR SCHEDULED CLAIMS WITH RESPECT TO CLAIM # 73, AND (II) PERMIT RIVERSIDE CLAIMS, LLC ADDITIONAL TIME TO FILE A FORMAL RESPONSE TO REORGANIZED DEBTOR'S SIXTH OMNIBUS MOTION [Docket ## 745, 767]<br><br>Hearing Date: June 6, 2012 at 9:30 am<br>Judge:        Hon. Peter H. Carroll<br>Courtroom:  1468, Roybal Federal<br>                  East Temple St.,<br>                  Los Angeles, CA<br><br>Opposition Deadline: May 23, 2012<br>Reply Deadline: May 30, 2012 |

TO THE HONORABLE PETER H. CARROLL, UNITED STATES BANKRUPTCY

JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE LIMITED SERVICE

LIST AND PARTIES REQUESTING SPECIAL NOTICE:

- 1 -    RIVERSIDE'S MOTION TO VACATE

**PLEASE TAKE NOTICE** that, on February 16, 2012, counsel for Contessa Liquidating Co., Inc. (the "**Reorganized Debtor**") filed its *Notice of Sixth Omnibus Motion and Reorganized Debtor's Sixth Omnibus Motion for Order to Reduce and Allow Filed or Scheduled Claims; Memorandum of Points and Authorities; Declaration of John Z. Blazevich in Support Thereof* [Docket # 745] (the "**Sixth Omnibus Motion**"). Among other things, the Sixth Omnibus Objection requested the reduction of Claim # 73, which is held by Riverside Claims, LLC ("**Riverside**"), from $102,309.79 to $52,647.86. Prior to the filing of the Sixth Omnibus Objection, the Reorganized Debtor and Riverside were engaged in good-faith negotiations to resolve their disputes as to the appropriate amount of the claim.

**PLEASE TAKE FURTHER NOTICE** that, on March 23, 2012, this Court entered the *Order Granting Reorganized Debtor's Sixth Omnibus Motion for Order to Reduce and Allow Filed or Scheduled Claims*, dated March 23, 2012 [Docket # 767] (the "**Sixth Omnibus Order**"). Pursuant to the Sixth Omnibus Order, Claim # 73 was reduced from $102,309.79 to $52,647.86.

**PLEASE TAKE FURTHER NOTICE** that, based on its good-faith belief that the settlement negotiations were still in process, Riverside did not file a written response to the objection to Claim # 73 in the Sixth Omnibus Motion. Although the Reorganized Debtor had previously apprised this Court of these negotiations and continued earlier hearings to allow these discussions to continue, the Reorganized Debtor put the matter back on calendar without first notifying Riverside with a courtesy phone call or email. As a result, when the Court subsequently entered the Sixth Omnibus Order, Riverside was completely surprised that the Reorganized Debtor had unilaterally ceased settlement discussions and put the matter back on calendar.

**PLEASE TAKE FURTHER NOTICE** that Riverside, by and through its undersigned counsel, hereby moves the Court for entry of an Order pursuant to 11 U.S.C. § 502(j), Federal

Rules of Bankruptcy Procedure 3008, 9006, and 9024, and Local Rule of Bankruptcy Procedure for the Bankruptcy Court of the Central District of California 3007-1, vacating the Sixth Omnibus Order and permitting Riverside additional time to file a formal response to the Sixth Omnibus Motion (the "**Motion**").

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on the attached Memorandum of Points and Authorities, the Declaration of Robin Stern in support thereof, and other admissible evidence that may be properly brought before the Court. In addition, Riverside requests that the Court take judicial notice of all documents filed with the Court in this chapter 11 case.

**PLEASE TAKE FURTHER** that Local Bankruptcy Rule 9013-1(f) requires that any response to the Motion and request for hearing must be filed with the Court and served upon the United States Trustee and counsel for Riverside at the address appearing on the upper-left hand corner of the caption page to this Motion not later than fourteen (14) days before the date of the hearing. The Opposition deadline to the above captioned hearing is May 23, 2012. Pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file and serve written opposition may be deemed by the Court to be consent to the granting of the relief requested in the Motion.

**WHEREFORE**, Riverside respectfully requests that the Court enter an Order: (1) granting the Motion and permitting Riverside to additional time to file a formal response to the Sixth Omnibus Motion; and (2) granting such other relief as is fair and equitable.

- 3 -    RIVERSIDE'S MOTION TO VACATE

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.
### PRELIMINARY STATEMENT

1. Good faith negotiations between creditors and debtors in bankruptcy are protected and encouraged as a means to achieve the ultimate goal of conserving assets for the estate. Here is a case where Riverside sought to work with the Reorganized Debtor to achieve that goal. The parties engaged in four months of negotiations over a disputed claim, during which Riverside worked diligently to obtain the documents requested by the Reorganized Debtor and to answer the questions posed to it by the Reorganized Debtor. All the while, Riverside made sure to request that the Reorganized Debtor continue to adjourn the hearing scheduled on the disputed claim. Ultimately, Riverside suggested that the claim be removed from this Court's calendar until the parties reached a resolution.

2. The Reorganized Debtor readily agreed, and assured Riverside again and again that a resolution was imminent.

3. Lo and behold, while still in the midst of presenting documentation to the Reorganized Debtor to support its claim, Riverside discovered that the Sixth Omnibus Order had been entered, which reduced the very claim that was the subject of these negotiations.

4. Riverside was shocked. The Reorganized Debtor had given it no indication that negotiations had broken down, nor that a resolution could not be reached. Neither had the Reorganized Debtor given it so much as a courtesy phone call or e-mail to apprise Riverside that it was placing the disputed claim back on the calendar. *Even while the parties were still e-mailing back and forth regarding the disputed claim*, the Reorganized Debtor never mentioned that it had filed the Sixth Omnibus Motion.

- 4 -    RIVERSIDE'S MOTION TO VACATE

5. Riverside therefore respectfully requests that this Court not penalize it for relying on the settlement discussions into which it had entered in good faith, and permit it an opportunity to establish to the Court why its claim is valid.

## II.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## III.

## BACKGROUND

7. Since November of last year, Riverside and the Reorganized Debtor have been conducting negotiations regarding Claim # 73 ("**Claim # 73**"). Claim # 73 was timely filed against the Reorganized Debtor's estate by Advantage Sales & Marketing LLC ("**ASM**") in the amount of $112,309.79, and subsequently assigned to Riverside on September 16, 2011. (*See Notice of Transfer of Claim # 73 Pursuant to F.R.B.P. 3001(e)(2) or (4)*, filed September 26, 2011 [Docket # 501].) (*See* Declaration of Robin Stern filed contemporaneously herewith (hereafter referred to as the "**Stern Declaration**" or "**Stern Decl.**") at ¶ 3.)

8. In respect of the services provided to the Reorganized Debtor by ASM and its affiliates, the Reorganized Debtor had scheduled amounts owing to ASM and its affiliates in the aggregate sum of $77,860.08. (*See* Schedule F itemizing claims against "ASM National Office," "Advantage Sales and Marketing," "Promopoint Marketing Department #900," and "AMS[sic] National Office," filed March 9, 2011 [Docket # 121].) Thereafter, the Reorganized Debtor revised its schedules to reflect a reduction of that amount by $23,801.09. (*See* Revised Schedule F, filed October 24, 2011 [Docket # 558].) (*See* Stern Decl. at ¶ 19.)

9.  Negotiations commenced when the Reorganized Debtor sought to reduce Claim # 73 to $52,647.86 in its *First Omnibus Motion to Reduce and Allow Claims*, dated November 9, 2011 [Docket # 593], claiming that the larger figure was unsupported by its books and records. Objections to the motion were due by December 28, 2011, and a hearing was scheduled for January 11, 2012. (*See* Stern Decl. at ¶ 3.)

10. As evidenced by the string of e-mail correspondence annexed to the Stern Declaration as **Exhibit A**, Robin Stern, a Riverside employee, contacted Jason Alderson, counsel to the Reorganized Debtor, on November 29, 2011, in an attempt to resolve the Reorganized Debtor's objection to Claim # 73 consensually. Mr. Alderson responded that same day that he had "asked the Debtor to look into the claim," and assured Ms. Stern that he would "provide additional clarity shortly." (*See* Stern Decl. at ¶ 4, Exhibit A.)

11. Throughout the rest of November and December, Ms. Stern, Mr. Alderson, and Ira Ellman, an employee at ASM, conferred and corresponded regarding Claim # 73. On December 20, 2011, Mr. Alderson pledged to Ms. Stern via e-mail that he was continuing to follow up with the Reorganized Debtor regarding the additional information provided to him by Ms. Stern and Mr. Ellman. (*See* Stern Decl. at ¶ 5, Exhibit A.)

12. Via an e-mail dated December 22, 2012, Mr. Alderson granted Ms. Stern's request to continue the hearing regarding Claim # 73 from January 11, 2012 to January 25, 2012. In the same e-mail, Mr. Alderson warranted to Ms. Stern that "we forwarded back-up to ASM this morning, so we should have this resolved soon." (*See* Stern Decl. at ¶ 6, **Exhibit B**.)

13. The parties continued their good faith discussions regarding Claim # 73. Via an e-mail dated January 5, 2012, Ms. Stern asked Mr. Alderson if the Reorganized Debtor would continue the hearing regarding Claim # 73 again while negotiations were taking place. Mr. Alderson responded one day later as follows:

Case 2:11-bk-13454-PC  Doc 793  Filed 05/15/12  Entered 05/15/12 20:41:50  Desc
Main Document  Page 7 of 19

> Robin, let's put it on for the February 8, 2012 hearing. The response deadline is now January 25, 2012. We should have this resolved by then.

(*See* Stern Decl. at ¶ 7, **Exhibit C**.)

14. On January 9, 2012, the Debtor filed its *Notice of Agenda for Hearing Regarding (I) Debtor's First Omnibus Motion for Order to Reduce and Allow Claims, and (II)Motion of Debtor for Order Disallowing Claim 98 Filed by Louis S. Wang as a Disputed Claim under Section 502(d)* [Docket # 680]. In accordance with Mr. Alderson's e-mail to Ms. Stern on January 6, 2012, the Reorganized Debtor advised this Court on page 5, paragraph B of the agenda, as follows:

> The Reorganized Debtor is working to resolve issues with Riverside Claims LLC as the transferee of Claim No. 73 filed by Advantage Sales and Marketing, and therefore has continued the hearing on Claim No. 73 to the February 8, 2012 calendar. The Reorganized Debtor reserves all rights with respect to Claim No. 73.

(*See* Stern Decl. at ¶ 8, **Exhibit D**.)

15. The parties continued their discussions, and via e-mail on January 12, 2012, Mr. Ellman sent Mr. Alderson a list of unpaid orders to substantiate Claim # 73. Mr. Alderson responded on January 16, 2012 via e-mail with a question regarding the list, and Ms. Stern responded that same day via e-mail. (*See* Stern Decl. at ¶ 9, Exhibit A.)

16. On January 19, 2012, Ms. Stern sent the following e-mail to Mr. Alderson:

> I know that Ira Ellman and yourself are going back and forth with regards to the claim Advantage Sales & Marketing and are trying to resolve the pending issues, but the response is due Wednesday, January 25th and I would feel better if we could take it off the calendar or continue it until this matter is resolved.

(*See* Stern Decl. at ¶ 10, **Exhibit E**.)

17. Mr. Alderson responded via e-mail on January 23, 2012 as follows:

> Robin, agreed -- the Reorganized Debtor will take the Advantage Claim off calendar while the parties are working on the claim amounts, without prejudice for the Reorganized Debtor's[sic] to re-notice the claim for hearing to reduce and/or disallow. All rights are expressly reserved.

- 7 -    RIVERSIDE'S MOTION TO VACATE

(*See* Stern Decl. at ¶ 11, Exhibit E.)

18. Subsequently, in its *Notice of Agenda for Hearing Regarding (I) Debtor's Second Omnibus Motion for Order to Reduce and Allow Claims, (II) Debtor's Third Omnibus Motion for Order to Expunge Duplicate Claims; and (III) Claim No. 73 Filed by Advantage Sales & Marketing (Riverside Claims LLC as Transferee)*, dated January 23, 2012 [Docket # 703], the Reorganized Debtor advised this Court as follows:

> The Reorganized Debtor is continuing to evaluate Claim No. 73 filed by Advantage Sales & Marketing (assigned to Riverside Claims LLC), and therefore has temporarily taken Claim No. 73 off calendar. The Reorganized Debtor expressly reserves the right to file a future objection or objections as to the validity, amount or status of Claim No. 73.

(*See* Stern Decl. at ¶ 12, **Exhibit F**, p. 6, ¶ III.)

19. The parties continued their discussions. On February 16, 2012, however, without so much as a courtesy phone call or e-mail, the Reorganized Debtor unilaterally requested that this Court reduce Claim # 73 from $112,309.79 to $52,647.86 in the Sixth Omnibus Motion. Responses were due by March 7, 2012, and a hearing was scheduled for March 21, 2012. (*See* Stern Decl. at ¶ 13, **Exhibit G**.)

20. Still in the midst of negotiating with the Reorganized Debtor and providing it with the requested supporting documentation for Claim # 73, Riverside had no idea that the Reorganized Debtor had filed the Sixth Omnibus Motion and placed Claim # 73 back on this Court's calendar. Indeed, even after the Sixth Omnibus Motion had been filed, Mr. Ellman sent documents supporting Claim # 73 to Mr. Alderson in an e-mail dated February 24, 2012. Mr. Alderson responded on February 29, 2012. This continued exchange supported Riverside's belief that the parties were still in the midst of negotiating. Mr. Alderson never referred to the Reorganized Debtor's decision to unilaterally place Claim # 73 back on this Court's calendar. (*See* Stern Decl. at ¶ 14, **Exhibit H**.)

21. On March 19, 2012, the Reorganized Debtor filed its *Notice of Agenda for Hearing Regarding Fifth, Sixth and Seventh Omnibus Motions* [Docket # 762]. In page 3, paragraph II.A of the agenda, the Reorganized Debtor advised this Court that "[t]he Reorganized Debtor has not received a Response in connection with the following Claims subject to the Sixth Omnibus Motion," and included Claim # 73 among those claims. (*See* Stern Decl. at ¶ 15, **Exhibit I**.)

22. This was wholly inaccurate, as Riverside had responded to the Reorganized Debtor's objection to Claim # 73 as early as November 29, 2011, after the First Omnibus Motion had been filed, and as recently as February 24, 2012, after the Sixth Omnibus was filed. (*See* Stern Decl. at ¶ 16.)

23. On March 23, 2012, this Court entered the Sixth Omnibus Order and allowed the reduction of Claim # 73. (*See* Stern Decl. at ¶ 17, **Exhibit J**.) Upon learning of the Sixth Omnibus Order, Ms. Stern promptly contacted Mr. Alderson in an e-mail dated April 4, 2012 as follows:

> Please find below the email that was copied to me on 2/29/12, which was the last email that I received from you and Ira. In that email there is no evidence that there was any breakdown in discussions, nor an agreed resolution to this claim. More importantly, there was absolutely no suggestion that the Objection was going to go forward. You had previously indicated to us in a 1/23/12 e-mail that:
>
>> "Robin, agreed -- the Reorganized Debtor will take the Advantage claim off calendar while the parties are working on the claim amounts, without prejudice for the Reorganized Debtor's to re-notice the claim for hearing to reduce and/or disallow. All rights are expressly reserved.
>> Best regards,-Jason"
>
> Quite simply, we were never informed otherwise. Respectfully, I believe that we were misled and that the Bankruptcy Court was misinformed when it issued its Order. The Court hearing went forward without notification that a lengthy informal process was ongoing with the parties and that at no time were we aware that it had ended. Had we received a timely alert, we would have certainly responded and appeared. After months of countless emails, which were copied to me, I believed that both parties were trying to resolve this matter. I was, therefore, shocked when we

- 9 -   RIVERSIDE'S MOTION TO VACATE

> received a copy of the Order reducing our claim. Under the circumstances, we believe that the Order relating to our claim should be vacated. Otherwise, we will be forced to bring this matter to the Court's immediate attention, so that our rights are preserved. We look forward to a timely response.

(*See* Stern Decl. at ¶ 17, **Exhibit K**.)

24. A day later, Mr. Alderson replied simply:

> Robin, we strongly disagree with your characterization of events below. Please see the attached Notice of Sixth Omnibus Motion and Reorganized Debtor's Sixth Omnibus Motion for Order to Reduce and Allow Filed or Scheduled Claims, which was filed and served on February 17, 2012 (Dkt. No. 745), and Notice of Agenda for Hearing Regarding . . . Sixth Omnibus Motion for Order to Reduce and Allow Filed or Scheduled Claims, which was filed and served on March 19, 2012 (Dkt. No. 762).

(*See* Stern Decl. at ¶ 18, Exhibit K.)

25. Following entry of the Sixth Omnibus Order, Riverside attempted to continue good-faith negotiations with the Reorganized Debtor in an effort to resolve the outstanding disputes with respect to Claim # 73. The parties were unable to reach an amicable resolution of the claim. As such, Riverside now seeks to vacate the Sixth Omnibus Order with respect to Claim # 73 in order to allow it to raise its meritorious objections to the Sixth Omnibus Motion. Riverside respectfully submits that the standards for relief under 11 U.S.C. § 502(j) and Bankruptcy Rules 3008, 9006, and 9024 are satisfied under the circumstances here.

IV.

**ARGUMENT**

I. **RIVERSIDE SHOULD BE GRANTED RELIEF FROM THE SIXTH OMNIBUS ORDER PURSUANT TO 11 U.S.C. § 502(J) AND BANKRUPTCY RULES 3008, 9006, AND 9024**

26. Section 502(j) of the Bankruptcy Code establishes that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case." 11 U.S.C. § 502(j).

27. Bankruptcy Rule 3008 implements Section 502(j) by providing that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing shall enter an appropriate order." FED. R. BANK. P. 3008. Under this rule, courts are permitted to allow or disallow a claim, increase or decrease the amount of a prior allowance, accord the claim a different priority, or enter any other appropriate order, even after confirmation. *See In re Zieder*, 263 B.R. 114 (Bankr. D. Ariz. 2001).

28. "Cause" under Section 502(j) is not defined in the Bankruptcy Code or Bankruptcy Rule 3008. Courts generally look to the standards for reconsideration articulated in Federal Rule of Civil Procedure 60, which is made applicable by Bankruptcy Rule 9024. *See In re Wylie*, 349 B.R. 204, 209-211 (9th B.A.P. 2006).

29. Rule 60(b) permits courts to relieve a party from a final judgment, order or proceeding for, among other things, "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). Similarly, Bankruptcy Rule 9006(b)(1) allows the Court to grant extensions of time for cause shown and, "on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." FED. R. BANKR. P. 9006(b)(1). The standards for "excusable neglect" under Rule 60(b), made applicable by Bankruptcy Rule 9024, and Bankruptcy Rule 9006 are the same. *See Vaughan v. Mortgage Lenders Network (In re Bradbury)*, 310 B.R. 313, 318 (Bankr. N.D. Ohio 2003) (*citing In re O'Brien Environmental Energy, Inc.*), 188 F.3d 116, 126 n. 7 (3d Cir. 1999). Therefore, these alternate grounds for relief are discussed together below, and demonstrate that Riverside is entitled to a vacatur of the Sixth Omnibus Order.

30. Rule 60(b) also permits courts to relieve a party from a final judgment, order or proceeding for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." FED. R. CIV. P. 60(b)(3). Certainly, the Reorganized Debtor's

continued communications with Riverside, without any reference to the Sixth Omnibus Motion, misrepresented to Riverside that negotiations were still progressing and had not ceased. The Reorganized Debtor's actions in this regard therefore qualify as the type of "fraud, misrepresentation, or misconduct" that justify vacating the Sixth Omnibus Order with respect to Claim # 73.

### a. Riverside's Failure to File an Objection to the Sixth Omnibus Motion Was Inadvertent and the Result of Excusable Neglect, Justifying Relief

31. Excusable neglect is an equitable inquiry, and requires the Court to take into account all of the relevant circumstances surrounding a party's omission. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Excusable neglect does not only apply to omissions caused by circumstances outside the control of the moving party; the concept even applies to "omissions caused by carelessness." *See id.*, 388-94.

32. In determining whether a party's omission was the product of excusable neglect, courts assess the good faith of the movant and the reason for the delay, the extent of the delay, the danger of prejudice to the opposing party, and the potential impact on the judicial proceedings. *See id.* at 392 n. 10 and 395. Courts will also look to the conduct by the opposing party which contributed to the movant's omission. *See id.* at 398 (noting that the "peculiar and inconspicuous placement" of a bar date notice in a seemingly unrelated document indicated that counsel was not remiss).

33. All of these factors weigh in favor of vacating the Sixth Omnibus Order as to Claim # 73 and permitting Riverside an opportunity to formally object to the Sixth Omnibus Motion.

### i. Riverside Acted in Good Faith, and Was Misled by the Reorganized Debtor's Representations That It Was Also Negotiating in Good Faith

34. It is beyond cavil that Riverside acted in good faith since the Reorganized Debtor first objected to Claim # 73. In good faith, Riverside initiated negotiations with the Reorganized

Debtor. In good faith, Riverside diligently responded to the Reorganized Debtor's questions. In good faith, Riverside provided the Reorganized Debtor with supporting documentation and detailed explanations for that documentation. And in good faith, Riverside took care to ask the Reorganized Debtor repeatedly to continue the hearing on Claim # 73, and to ultimately remove it from the calendar, so that the parties could resolve the dispute consensually.

35. Riverside's failure to object to the Sixth Omnibus Motion was based wholly on the Reorganized Debtor's verbal and documented assurances that it, too, was negotiating in good faith, and that it, too, considered continuing the hearing on Claim # 73 pending those good faith negotiations to be in the parties' best interests.

36. Too late, Riverside found out that its good faith was not reciprocated by the Reorganized Debtor. As stated above, not only did the Reorganized Debtor fail to give Riverside, with whom it had been engaged in negotiations for four months, a courtesy phone call or e-mail that it was putting Claim # 73 back on the calendar; the Reorganized Debtor also neglected to mention that it had filed the Sixth Omnibus Motion while the parties *were still negotiating*. Although the Reorganized Debtor reserved its rights with respect to Claim # 73, Riverside never considered that its counsel, after agreeing to remove Claim # 73 from the calendar pending the parties' e-mail exchanges and conferences, would unilaterally place Claim # 73 back on the calendar even while the parties were continuing those discussions and e-mails.

37. The Reorganized Debtor's actions in this regard misled Riverside and misinformed this Court, which entered the Sixth Omnibus Order after being advised falsely that Riverside had not responded to the Reorganized Debtor's objections to Claim # 73. On the basis of these actions, the Sixth Omnibus Order cannot be countenanced with respect to Claim # 73, and should be vacated so as to permit Riverside an opportunity to formally demonstrate to this Court that its claim is valid.

### ii. Riverside Did Not Delay in Protesting the Entry of the Sixth Omnibus Order

38. Upon learning about the Sixth Omnibus Order, Riverside promptly contacted the Reorganized Debtor and protested its entry. Contrary to the detailed e-mails that the Reorganized Debtor had been sending during the course of the parties' negotiations, the Reorganized Debtor responded tersely, offering only the Sixth Omnibus Motion and the agenda in its defense.

39. Allowing Riverside an actual opportunity to object to the Sixth Omnibus Motion would not cause these proceedings undue delay. The Reorganized Debtor is still dealing with three other disputed claims and cannot close its estate until those claims are also resolved.

### iii. There Is No Danger of Prejudice to the Reorganized Debtor or These Proceedings

40. The Reorganized Debtor and its estate will incur no prejudice if Riverside is permitted to formally object to the Sixth Omnibus Motion. The Reorganized Debtor has requested that this Court dissolve the Post-Effective Date Committee, as all but three Class 3 claims have been resolved. Adding one more disputed claim to the Reorganized Debtor's agenda will not impede this request. The mere fact that the Reorganized Debtor will incur some time and money resolving Claim # 73 before this Court is insufficient to establish prejudice. *See In re Levy*, 75 B.R. 894, 895-96 (Bankr. S.D. Ohio 1987).

41. In addition, Class 3 creditors will not be prejudiced by a dilution of their recoveries if Riverside is permitted the opportunity to recover amounts rightfully owed to it, as they have already received a 100% distribution on account of their allowed claims.

### iv. Riverside Has a Meritorious Objection to the Sixth Omnibus Motion

42. The basis of Claim # 73 are services rendered by ASM to the Reorganized Debtor (then the Debtor). Specifically, ASM creates and executes multi-brand retailer-specific consumer marketing programs for its clients, including the Reorganized Debtor. (*See* Stern Decl. at ¶ 20.)

- 14 -    RIVERSIDE'S MOTION TO VACATE

43. The Reorganized Debtor's assertion that Claim # 73 is overstated by $59,661.93 is incorrect. Below is a breakdown of the balance of Claim # 73 disputed by the Reorganized Debtor. Through the course of the parties' negotiations, Riverside came to agree that while a portion of the balance may not be payable, the other portion is a valid debt. Since these negotiations were arrested without a resolution, Riverside reserves all rights to conduct discovery and assert that the entire balance of Claim # 73 disputed by the Reorganized Debtor is valid. (*See* Stern Decl. at ¶ 21.)

44. **$22,000.00**: This amount is owed to Riverside in respect of a coupon flyer and shelf sign program at Publix Supermarkets that Promo Point Marketing ("PPM"), a division of ASM, created and executed for the Reorganized Debtor. (*See* Stern Decl. at ¶ 22.) A copy of the coupon flyer and PPM invoice is attached to the Stern Declaration as **Exhibit L**.

45. The Reorganized Debtor claims that it cannot find any contract to support the flyer and shelf sign program in its books and records. It may well be the case, however, that no formal contract ever existed between the parties, who had negotiated previously for similar services. Further, the Reorganized Debtor would not have had to approve the text and copy of the flyer, as this Publix flyer has standard guidelines and format. (*See* Stern Decl. at ¶ 23.)

46. Significantly, the Reorganized Debtor cannot dispute that the flyer was actually distributed and the shelf sign program was run. In fact, before the Reorganized Debtor amended its Schedule F, and before the Reorganized Debtor sought to reduce Claim # 73, it had listed the *exact amount of $22,000.00 as owing to PPM*. (*See* Schedule F itemizing claims against "Promopoint Marketing Department #900," filed March 9, 2011 [Docket # 121].) After profiting from the services provided to it by PPM, the Reorganized Debtor cannot claim it does not need to pay the amounts due for those services on the basis of it not being able to find a contract that PPM did not require, and that may not ever have existed. (*See* Stern Decl. at ¶ 24.)

47. There is still further evidence that the Reorganized Debtor requested and willingly participated in the flyer and shelf sign program. The Reorganized Debtor would have needed to pay the "L.U. redemption amount" of the coupon flyers, which refers to the four-digit number that is used to clear the coupon at the Publix store register when the coupon is used. After the coupon expires, Publix would run a report showing the number of coupons redeemed, and then Publix would take a deduction from the Reorganized Debtor's invoice for product shipped to Publix in order to pay for this coupon redemption. Since the coupon flyers at issue ran between October 9 and October 29, 2010, the deductions would likely have occurred in November or December of 2010, at which time someone at the Reorganized Debtor would have needed to review the deductions from its invoices to confirm and validate that those deductions were approved. (*See* Stern Decl. at ¶ 25.)

48. **$5,269.19**: The Reorganized Debtor asserts that ASM has already received payment for this amount. Riverside has not disputed this assertion. (*See* Stern Decl. at ¶ 26.)

49. **$2,243.64**: The Reorganized Debtor asserts that it is not able to find any record of the transaction underlying this portion of the claim. Riverside has not disputed this assertion. (*See* Stern Decl. at ¶ 27.)

50. **$8,690.33**: The Reorganized Debtor asserts that this amount represents freight costs for which it is not responsible. Riverside disputes this assertion. First, nothing in the relevant agreements between the Reorganized Debtor and ASM provides that freight costs should be deducted. Second, even if there were such a provision, $8,690.33 is too large a figure to represent just freight costs. (*See* Stern Decl. at ¶ 28.)

51. **$21,458.77**: The Reorganized Debtor asserts that this amount represents deductions by the customer, short payments, and/or promotional efforts due Reorganized Debtor from ASM. Riverside disputes this assertion. There is no language in the relevant agreements between the

- 16 -    RIVERSIDE'S MOTION TO VACATE

Reorganized Debtor and ASM that allows the Reorganized Debtor to reduce the amount it owes ASM for customer deductions, short payments, and promotional efforts. (*See* Stern Decl. at ¶ 29.)

52. Accordingly, Riverside seeks an opportunity to formally object to the Sixth Omnibus Motion, obtain discovery, and present evidence demonstrating that Claim # 73 should be allowed in the amount of $104,796.96.

### b. Riverside's Failure to File an Objection to the Sixth Omnibus Motion Was the Result of the Reorganized Debtor's Fraud, Misrepresentation, or Misconduct

53. Another basis on which to vacate the Sixth Omnibus order is the Reorganized Debtor's fraud, misrepresentation, or misconduct.

54. Specifically, after four months of negotiating with Riverside, continuing Claim # 73 to future hearing dates, and ultimately removing Claim # 73 from the calendar pending the parties' negotiations, the Reorganized Debtor gave no indication that its negotiations with Riverside had broken down. Instead, while Riverside was still gathering supporting documentation for Claim # 73 -- at the request of the Reorganized Debtor -- the Reorganized Debtor placed Claim # 73 back on the calendar. The Reorganized Debtor then continued to respond to Riverside's e-mails without letting on that the Sixth Omnibus Motion had been filed and the objection date and hearing were imminent.

55. As soon as Riverside learned that the Sixth Omnibus Order had been entered, it contacted the Reorganized Debtor immediately. In an abrupt departure from the conciliatory approach to resolving Claim # 73 it had employed over the last four months, the Reorganized Debtor responded abruptly by offering the Sixth Omnibus Motion and agenda it had filed while Riverside had been supplying it with substantiating documentation.

56. Simply put, Riverside did not object to the Sixth Omnibus Motion because the Reorganized Debtor had agreed to calendar Claim # 73 pending a resolution of the parties' negotiations. The Reorganized Debtor never gave any indication to Riverside that a resolution could not be reached and negotiations were over. On the contrary, the Reorganized Debtor continued its communications with Riverside regarding Claim # 73, even after it filed the Sixth Omnibus Motion.

57. The Reorganized Debtor's tactics misled Riverside into missing the deadline for filing an objection to the Sixth Omnibus Motion. The Sixth Omnibus Order should accordingly be vacated so as to permit Riverside an opportunity to formally object to the Sixth Omnibus Motion.

## II. RIVERSIDE SHOULD BE GRANTED RELIEF FROM THE SIXTH OMNIBUS ORDER PURSUANT TO LOCAL RULE OF BANKRUPTCY PROCEDURE 3007-1 FOR THE BANKRUPTCY COURT OF THE CENTRAL DISTRICT OF CALIFORNIA

58. Pursuant to 11 U.S.C. § 502(a), a proof of claim is deemed allowed unless a party in interest objects to it. As Bankruptcy Rule 3001(f) states, "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." The burden then shifts to the objector to produce evidence sufficient to negate prima facie validity. *See In re Allegheny Int'l Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

59. In this regard, Local Rule 3007-1(c)(1) provides that "[a]n objection to claim must be supported by admissible evidence sufficient to overcome the evidentiary effect of a properly documented proof of claim executed and filed in accordance with FRBP 3001. The evidence must demonstrate that the proof of claim should be disallowed, reduced, subordinated, re-classified, or otherwise modified."

60. Indeed, the Sixth Omnibus Motion contains only the proof of claim underlying Claim # 73, and the assertions that Riverside is either not eligible to receive the amount the Reorganized Debtor seeks to reduce the Claim # 73 by, or that Riverside was previously paid on account of

part of that balance. The Reorganized Debtor, however, offers no evidence supporting these assertions.

61. Given that the parties have been engaged in correspondence and conferences for four months regarding the validity of Claim # 73, the Reorganized Debtor's bare assertions, devoid of any substantiating evidence, did not warrant approval of the Sixth Omnibus Motion. Furthermore, the Court was not made aware of the parties' extended negotiations at the time the Reorganized Debtor requested approval of the Sixth Omnibus Motion. Riverside therefore respectfully requests that, now that this Court has been apprised of the extensive back-and-forth between the parties regarding Claim # 73, it give Riverside the opportunity to formally object to the Sixth Omnibus Motion so that this Court can render an opinion on the dispute on the basis of evidence from both parties.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Riverside respectfully requests that the Court vacate the Sixth Omnibus Order with respect to Claim # 73, permit Riverside an opportunity to formally object to the Sixth Omnibus Motion, and afford Riverside such other and further relief as this Court deems proper.

DATED: May 15, 2012                    MUNGER, TOLLES & OLSON LLP

By: /s/ Derek J. Kaufman
    Derek J. Kaufman, Esq. (State Bar No. 243699)
    Derek.Kaufman@mto.com
    355 South Grand Avenue, Suite 3500
    Los Angeles, CA 90071-1560
    Telephone:    (213) 683-9100
    Facsimile:    (213) 687-3702

Counsel for Riverside Claims, LLC