FILED & ENTERED

JUN 13 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egarcia    DEPUTY CLERK

# NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re: )

)

CONTESSA LIQUIDATING CO., INC.,

Debtor.

Case No. 2:11-bk-13454-PC

Chapter 11

**MEMORANDUM DECISION**

Date:   June 6, 2012
Time:   9:30 a.m.
Place:  U.S. Bankruptcy Court
        Courtroom # 1468
        255 East Temple Street
        Los Angeles, CA  90012

Riverside Claims, LLC ("Riverside") seeks reconsideration of this court's Order Granting Reorganized Debtor's Sixth Omnibus Motion for Order to Reduce and Allow Filed or Scheduled Claims ("Sixth Omnibus Order") entered on March 23, 2012, insofar as it reduced the amount of Riverside's allowed unsecured non-priority claim in this case. Contessa Liquidating Co., Inc. ("Contessa") opposes the motion. For the reasons stated, reconsideration will be denied.[1]

---

[1] The findings of fact and conclusions of law set forth in this Memorandum Decision are made pursuant to F.R.Civ.P. 52(a), as incorporated into FRBP 7052 and applied to contested matters by FRBP 9014(c). To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

## I.  STATEMENT OF FACTS

On January 26, 2011, Contessa filed a voluntary petition under chapter 11 of the

Bankruptcy Code. [2]  On March 9, 2011, Advantage Sales & Marketing ("ASM") filed a proof of

claim asserting a non-priority unsecured claim for "services provided" in the amount of

$112,309.79 ("Claim # 73").  On September 16, 2011, ASM transferred Claim # 73 to Riverside.

On September 26, 2011, Riverside filed a notice of the transfer of Claim # 73 in the case

pursuant to FRBP 3001(e).

On November 4, 2011, the court entered an order approving Debtor's Second Amended

Disclosure Statement Describing Debtor's Second Amended Plan of Liquidation (Dated

November 3, 2011) and setting a hearing on confirmation of Debtor's Second Amended Chapter

11 Plan of Liquidation (Dated November 3, 2011) ("Plan") for December 15, 2011.  On

November 9, 2011, Contessa filed its First Omnibus Motion for Order to Reduce and Allow

Claims ("First Omnibus Motion"), seeking to reduce the allowed amount of 16 proofs of claim

filed in the case, including Claim # 73.  The First Omnibus Motion was set for hearing on

January 11, 2011.  By its motion, Contessa sought a ruling reducing the allowed amount of

Riverside's Claim # 73 from $112,309.79 to $52,647.86.  Contessa served the First Omnibus

Motion and notice of hearing on both Riverside and ASM.  A written response in opposition to

the First Omnibus Motion was due not later than December 28, 2011.[3]

---

[2]  Unless otherwise indicated, all "Code," "chapter" and "section" references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).  "Rule"
references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable
certain Federal Rules of Civil Procedure ("F.R.Civ.P.").  "LBR" references are to the Local
Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California
("LBR").

[3]  LBR 9013-1(f) states, in pertinent part, that "each interested party opposing, joining, or
responding to the motion must file and serve on the moving party and the United States trustee
not later than 14 days before the date designated for hearing either:

(1)      A complete written statement of all reasons in opposition thereto or in support or
joinder thereof, declarations and copies of all photographs and documentary
evidence on which the responding party intends to rely, and any responding

On November 29, 2011, Robin Stern ("Stern"), a Senior Claims Purchasing Agent at Riverside, contacted by email Jason Alderson ("Alderson"), one of Contessa's attorneys, seeking to resolve Contessa's objection to Claim # 73 consensually.  Thereafter, Contessa, Riverside and ASM exchanged a series of emails, telephone calls and documents regarding the disputed portion of Claim # 73.  Riverside did not file a response to Contessa's First Omnibus Motion.  In the meantime, an Order and Judgment Confirming the Debtor's Second Amended Chapter 11 Plan of Liquidation (Dated November 3, 2011) was entered on December 21, 2011, and a hearing on Contessa's First Omnibus Motion as it applied to Riverside's Claim # 73 was continued to January 25, 2012.

On January 5, 2012, Riverside requested the removal of Claim # 73 from the January 25, 2012 calendar due to ongoing discussions over the amount of its allowed claim.  The following day, Contessa agreed to a further continuance of its claim objection to February 8, 2012, and a further extension of Riverside's response deadline to January 25, 2012.  On January 9, 2012, Contessa filed and served Riverside and ASM with a document entitled Notice of Agenda for Hearing Regarding (I) Debtor's First Omnibus Motion for Order to Reduce and Allow Claims, and (II) Motion of Debtor for Order Disallowing Claim 98 filed by Louis S. Wang as a Disputed Claim Under Section 506(d) ("First Notice of Agenda"), summarizing the status of the claim

---

memorandum of points and authorities.   The opposing papers must advise the adverse party that any reply to the opposition must be filed with the court and served on the opposing party not later than 7 days prior to the hearing on the motion; or

(2)     A written statement that the motion will not be opposed.

LBR 9013-1(h) further states:  "Papers not timely filed and served may be deemed by the court to be consent to the granting or denial of the motion, as the case may be."  Consistent with LBR 9013-1(f) & (h), Contessa advised Riverside "that any formal response or objection ("Response") contesting the Motion must be filed **no later than DECEMBER 28, 2011, or the Court may grant the relief requested in the Motion without further notice or hearing**." Notice of First Omnibus Motion and Debtor's First Omnibus Motion for Order to Reduce and Allow Claims [Dkt. # 593], 5:8-10.

3

objections that were the subject of its First Omnibus Objection set for hearing on January 25,

2012.  In the First Notice of Agenda, Contessa stated with respect to its objection to Claim # 73:

> The Reorganized Debtor is working to resolve issues with Riverside Claims LLC
> as the transferee of Claim No. 73 filed by Advantage Sales and Marketing, and
> therefore has continued the hearing on Claim No. 73 to the February 8, 2012
> calendar. The Reorganized Debtor reserves all rights with respect to Claim No.
> 73.[4]

On January 16, 2012, Ira Ellman ("Ellman") of ASM sent Alderson an email stating that

over $104,000 of Claim # 73 represented valid debt.[5]  Three days later, Riverside requested that

Claim # 73 be removed from the February 8, 2012 calendar, stating:

> I know that Ira Ellman and yourself [Mr. Alderson] are going back and forth with
> regards to the claim Advantage Sales & Marketing and are trying to resolve the
> pending issues, but the response is due Wednesday, January 25th and I would feel
> better if we could take it off calendar or continue it until this matter is resolve[d].[6]

On January 23, 2012, Contessa responded by removing its objection to Claim # 73 from the

February 8, 2012 calendar with the express caveat that it would re-notice the objection for

hearing at a later date.  By email dated January 23, 2012, Alderson advised Stern:

> Robin, agreed – the Reorganized Debtor will take the Advantage claim off
> calendar while the parties are working on the claim amounts, <u>without prejudice
> for the Reorganized Debtor's [*sic*] to re-notice the claim for hearing to reduce
> and/or disallow. All rights are expressly reserved.</u>[7]

On January 23, 2012, Contessa filed and served on Riverside a document entitled Notice of

Agenda for Hearing Regarding (I) Debtor's Second Omnibus Motion for Order to Reduce and

Allow Claims, (II) Debtor's Third Omnibus Motion for Order to Expunge Duplicate Claims, and

(III) Claim No. 73 filed by Advantage Sales & Marketing (Riverside Claims LLC as Transferee)

---

[4] First Notice of Agenda, 5:16-19.

[5] Opp'n Alderson Decl. ¶ 9.

[6] <u>Id.</u>

[7] <u>Id.</u> ¶ 10, Ex. 4. (emphasis added).

("Second Notice of Agenda"), summarizing, in pertinent part, the status of Contessa's pending

objection to Riverside's Claim # 73.  In the Second Notice of Agenda, Contessa states:

> The Reorganized Debtor is continuing to evaluate Claim No. 73 filed by
> Advantage Sales & Marketing (assigned to Riverside Claims LLC), and therefore
> has temporarily taken Claim No. 73 off calendar**.**  The Reorganized Debtor
> expressly reserves the right to file a future objection or objections as to the
> validity, amount or status of Claim No. 73**.**[8]

On February 7, 2012, Alderson sent a comprehensive email to Stern and Ellman with supporting

attachments, discussing in detail the basis for reduction of Riverside's Claim # 73 from

$112,309.79 to an allowed amount of $52,647.86.

On February 17, 2012, Contessa filed Reorganized Debtor's Sixth Omnibus Motion for

Order to Reduce and Allow Filed or Scheduled Claims ("Sixth Omnibus Motion") seeking to

reduce the allowed amount of 6 claims, including Riverside's Claim # 73.  Contessa served the

Sixth Omnibus Motion and notice of hearing on both Riverside and ASM.  Contessa's notice of

the hearing on its Sixth Omnibus Motion stated specifically (and consistent with the

requirements of LBR 9013-1(f) & (h)) that "any formal response or objection ('Response')

contesting the Motion must be filed no later than March 7, 2012, or the Court may grant the

relief requested in the Motion without further notice or hearing."[9]

On February 24, 2012, and one week after Contessa filed and served its Sixth Omnibus

Motion, Ellman sent Alderson (with a copy to Riverside) a short email requesting that a disputed

$22,000 promotional coupon be added to the $52,647.86 allowed amount of Riverside's Claim #

73 proposed in the Sixth Omnibus Motion.[10]  ASM did not request an extension of time to

---

[8]  Second Notice of Agenda, 6:3-6.

[9]  Notice of Sixth Omnibus Motion and Reorganized Debtor's Sixth Omnibus Motion for Order to Reduce and Allow Filed or Scheduled Claims [Dkt. # 745], 4:3-5.  The Sixth Omnibus Motion was the only document served by Contessa on Riverside and ASM during the entire month of February 2012 in connection with Contessa's chapter 11 case.

[10]  Opp'n Alderson Decl. ¶ 19, Ex. 8.

respond to Contessa's Sixth Omnibus Motion.  Contessa declined ASM's request by email from

Alderson to ASM on February 29, 2012 (the "February 29th email"), with a copy to Riverside.[11]

Contessa thereafter received no further communication from either ASM or Riverside prior to

the hearing on March 21, 2012.

On March 19, 2012, debtor filed a document entitled "Notice of Agenda for Hearing

Regarding Fifth Omnibus Motion for Order to Disallow Filed and Scheduled Claims; Sixth

Omnibus Motion for Order to Reduce and Allow Filed or Scheduled Claims; and Seventh

Omnibus Motion for Order to Disallow and Expunge Late Filed Claims ("Third Notice of

Agenda") which, in pertinent part, summarized the status of Contessa's objection to Claim # 73

that was the subject of its Sixth Omnibus Motion set for hearing on March 21, 2012.  In the

Third Notice of Agenda, Contessa stated with respect to its objection to Claim # 73 that it had

not received a written response in opposition to its objection.[12]

On March 21, 2012, the court held a hearing on Contessa's Sixth Omnibus Motion.

Neither Riverside nor ASM filed written opposition to Contessa's motion objecting to Claim #

73 nor appeared at the hearing.  Based on the evidence presented in support of the motion, the

court sustained Contessa's objection and reduced the allowed amount of Claim # 73 to

$52,647.86.  Immediately after the hearing, Contessa made a distribution to the holders of the

allowed claims that were the subject of the Sixth Omnibus Motion.  Contessa distributed the sum

of $52,647.86 to Riverside on account of Claim # 73 by Check No. 160338 payable to Riverside

Claims, LLC in the amount of $52,647.86 dated March 21, 2012.  Each distribution made by

Contessa on March 21, 2012, on account of an allowed claim was accompanied by a letter from

Contessa's counsel expressly advising the recipient that the enclosed check represented full and

complete payment on account of the claimant's allowed claim:

---

[11]  Id. ¶ 20, Ex. 8.

[12]  Third Notice of Agenda [Dkt. # 762] 3:17.  The Third Notice of Agenda was served on both
Riverside and ASM.

> On behalf of the Reorganized Debtor and the Chief Liquidation Offer, counsel to the Reorganized Debtor, Kelley Drye & Warren LLP, is pleased to enclose a check from the Reorganized Debtor representing the **first and final distribution under the Plan** on account of your Allowed Class 3b Claim.  The enclosed distribution represents full and complete payment of your Allowed Class 3b Claim.[13]

On March 23, 2012, the court entered the Sixth Omnibus Order.  Riverside was served with a copy of the Sixth Omnibus Order.  Riverside received and cashed the $52,647.86 check received from Contessa.  Check No. 160338 cleared Contessa's bank account on April 3, 2012.

The following day, Riverside contacted Contessa by email claiming that it had not been "timely alert[ed]" of Contessa's decision to move forward with its objection to Claim # 73 and that it was "misled" given the "lengthy informal process" in which the parties had engaged to resolve the allowed amount of the claim.[14]  On April 5, 2012, Contessa responded that it disagreed with Riverside, pointing to the fact that Riverside had been served with the Sixth Omnibus Motion and notice of the hearing thereon, as well as the Third Notice of Agenda that preceded the hearing on March 21, 2012.[15]

On May 15, 2012, the Motion of Riverside Claims, LLC to (I) Vacate Order Granting Reorganized Debtor's Sixth Omnibus Motion for Order to Reduce and Allow Filed or Scheduled Claims with Respect to Claim # 73, and (II) Permit Riverside Claims, LLC Additional Time to File a Formal Response to Reorganized Debtor's Sixth Omnibus Motion ("Motion") was filed with the court seeking reconsideration of the Sixth Omnibus Order insofar as it reduced the allowed amount of Riverside's Claim # 73 to $52,647.86.  Riverside summarizes the dispute in its Motion, as follows:

> The parties engaged in four months of negotiations over a disputed claim, during which Riverside worked diligently to obtain the documents requested by

---

[13]  Opp'n Craig A. Wolfe. Decl. ¶ 4, Ex. 1; Blazevich Decl. ¶ 15, Ex. 1 (emphasis in original).

[14]  Stern Decl., Ex. K.

[15]  Id.

[Contessa] and to answer the questions post to it by [Contessa].  All the while, Riverside made sure to request that [Contessa] continue to adjourn the hearing scheduled on the disputed claim.  Ultimately, Riverside suggested that the claim be removed from this Court's calendar until the parties reached a resolution. [Contessa] readily agreed, and assured Riverside again and again that a resolution was imminent.  Lo and behold, while still in the midst of presenting documentation to [Contessa] to support its claim, Riverside discovered that the Sixth Omnibus Order had been entered, which reduced the very claim that was the subject of these negotiations.  Riverside was shocked.  [Contessa] had given no indication that negotiations had broken down, nor that a resolution could not be reached.  Neither had [Contessa] given it so much as a courtesy phone call or e-mail to apprise Riverside that it was placing the disputed claim back on calendar. *Even while the parties were still e-mailing back and forth regarding the disputed claim*, [Contessa] never mentioned that it had filed the Sixth Omnibus Motion.[16]

Contessa filed written opposition to the Motion on May 23, 2012.  Riverside submitted its reply on May 30, 2012.  After a hearing on June 6, 2012, the matter was taken under submission.

## II.  DISCUSSION

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).  Venue is appropriate in this court.  28 U.S.C. § 1409(a).

A.  Reconsideration of an Order Disallowing a Proof of Claim.

Section 502(j) of the Code states that "[a] claim that has been allowed or disallowed may be reconsidered for cause."  11 U.S.C. § 502(j).  Section 502(j) is implemented by Rule 3008, which states:

A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate.  The court after a hearing on notice shall enter an appropriate order.

FRBP 3008.  There is no time limit for filing a motion for reconsideration under § 502(j).  Levoy v. U.S. (In re Levoy), 182 B.R. 827, 832 (9th Cir. BAP 1995).  When a motion for reconsideration is filed after the time for appeal of the order disallowing the claim has expired, the court must look to F.R.Civ.P. 60(b),[17] as applied to bankruptcy cases by FRBP 9024,[18] for the

---

[16] Mot. 4:6-26.

[17] Rule 60(b) states:

appropriate standard to reconsider the claim under § 502(j).  See, e.g., United Student Funds, Inc.

v. Wylie (In re Wylie), 349 B.R. 204, 209 (9th Cir. BAP 2006) ("When reconsideration under

Rule 3008 is sought after the 10-day appeal period has expired, the motion is subject to the

constraints of FRCP 60(b) as incorporated by Rule 9024."); S.G.Wilson Company, Inc. v.

Cleanmaster Indus., Inc. (In re Cleanmaster Indus., Inc.), 106 B.R. 628, 630 (9th Cir. BAP 1989)

("[W]here the time for appeal has expired, a motion to reconsider should be treated as a motion

for relief from judgment under Bankruptcy Rule 9024.").  Furthermore, "the merits of the claim

objection are no longer fair game unless the claimant first establishes a good excuse, cognizable

under FRCP 60(b), for its failure to timely contest the objection."  Wylie, 349 B.R. at 210; see

---

**Grounds for Relief from a Final Judgment, Order, or Proceeding.**  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

    (1)  mistake, inadvertence, surprise, or excusable neglect;
    (2)  newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
    (3)  fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
    (4)  the judgment is void;
    (5)  the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
    (6)  any other reason that justifies relief.

F.R.Civ.P. 60(b).

[18]  Rule 9024 states:

Rule 60 F.R.Civ.P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(c), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed under § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330.

FRBP 9024.

Casey v. Albertson's Inc., 362 F.3d 1254, 1261 (9th Cir. 2004) (stating that "the merits of a case

are not before the court on a Rule 60(b) motion").

The Sixth Omnibus Order was entered on March 23, 2012, and became a final order on

April 6, 2012.  Riverside filed its Motion on May 15, 2012 – 39 days after the time to appeal had

expired.  Therefore, Rule 60(b) is applicable.  Riverside's Motion is predicated on two grounds:

(1) Rule 60(b)(1), which authorizes the court to relieve a party from an order due to mistake,

inadvertence, surprise, or excusable neglect; and (2) Rule 60(b)(3), which authorizes the court

relieve a party from an order due to fraud, misrepresentation, or misconduct.

B.  Rule 60(b)(1)

Riverside does not allege that its failure to respond to Contessa's Sixth Omnibus Motion

or to attend the hearing on March 21, 2012, was attributable to mistake, inadvertence or surprise.

Riverside seeks relief under Rule 60(b)(1) for excusable neglect, arguing that "[a]ll of [the]

factors" the court must consider in divining excusable neglect "weigh in favor of vacating the

Sixth Omnibus Order as to Claim # 73 and permitting Riverside an opportunity to formally

object to the Sixth Omnibus Motion."[19]

Whether neglect is excusable calls for an equitable determination, taking into account all

relevant circumstances.  Pincay v. Andrews, 389 F.3d 853, 856-60 (9th Cir. 2004).  Factors

considered include: (1) danger of prejudice to the non-moving party; (2) length of the delay and

its potential impact on judicial proceedings; (3) reasons for the delay, including whether it was

within the movant's reasonable control; and (4) whether the movant acted in good faith.  Pioneer

Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'hip, 507 U.S. 380, 385 (1993).  The burden of

presenting facts demonstrating excusable neglect is on the movant.  Key Bar Invs. v. Cahn (In re

Cahn),188 B.R. 627, 631 (9th Cir. BAP 1995); In re Pac. Gas & Elec. Co., 311 B.R. 84, 89

(Bankr. N.D. Cal. 2004).  Pioneer mandated a balancing test for divining excusable neglect, but

Pioneer did not assign the weight to be accorded by the court to each of its non-exclusive factors

in making an equitable determination.  See Pincay, 389 F.3d at 860 (stating that "we leave the

_____

[19]  Mot. 12:22-23.

weighing of Pioneer's equitable factors to the discretion of the . . . court in every case"); Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 463 (8th Cir. 2000) (stating that "[t]he four Pioneer factors do not carry equal weight"), cert. denied, 531 U.S. 929 (2000).

      1.  Length of the Delay and Its Potential Impact on Judicial Proceedings

      Riverside's Motion was filed 53 days after entry of the Sixth Omnibus Order.  The delay was not significant, and Riverside's action in seeking a further opportunity to respond to Contessa's Sixth Omnibus Motion does not, in and of itself, adversely impact judicial proceedings.  However, it is "important for the court to determine whether granting an extension would unduly delay the administration of the bankruptcy case," given "the unique context of bankruptcy proceedings."  Nugent v. Betacom of Phoenix, Inc. (In re Betacom of Phoenix, Inc.), 250 B.R. 376, 381 n.6 (9th Cir. 2000).

      As previously noted, Contessa filed its voluntary chapter 11 petition on January 26, 2011 and confirmed its Plan on December 21, 2011.  It appears that the Plan is substantially consummated.  According to the evidence, the claims objection process is nearly complete, all allowed Class 3 unsecured non-priority claims have been paid under the Plan, the Post-Effective Date Committee has been dissolved by order entered on May 10, 2012, and cash has been placed in escrow pending the resolution of the only two Class 3 claims that remain unresolved.  Contessa has paid administrative claims and made a distribution on account of all claims that were the subject of the Sixth Omnibus Motion.  In the meantime, Riverside received Check No. 160338 in payment of the allowed amount of its Claim # 73 and cashed the check before filing its Motion.  There is less than $12,000 remaining in Contessa's bank account.  The court takes judicial notice that there are no pending appeals and there is only 1 pending adversary proceeding which should be concluded shortly.[20]  Contessa is ready to exit bankruptcy.  Given the advanced stage of Contessa's chapter 11 case, the court weighs this Pioneer factor narrowly in favor of Contessa.

---

[20]  Adversary No. 2:11-ap-01622-PC, Contessa Liquidating Co., Inc. v. Kanner filed on April 24, 2012.  Defendant was served with a summons and complaint on April 26, 2012, but did not file an answer or other responsive pleading by the deadline of May 25, 2012, and is in default.

### 2. Danger of Prejudice to the Debtor

Riverside contends that Contessa will not be prejudiced by the granting of Riverside's Motion because Contessa "has requested that this court dissolve the Post-Effective Date Committee, as all but three Class 3 claims have been resolved" and "[a]dding one more disputed claim to [Contessa's] agenda will not impede this request."[21]  Riverside further contends that "Class 3 creditors will not be prejudiced by a dilution of their recoveries if Riverside is permitted the opportunity to recover amounts rightfully owed to it, as they have already received a 100% distribution on account of their allowed claims."[22]  The court disagrees.

Under this factor, the court must examine the adverse effect, if any, that the granting Riverside's Motion will have on the debtor and the administration of the case.  In re Keene Corp., 188 B.R. 903, 912 (Bankr. S.D.N.Y. 1995).  Allowing Riverside to respond to Contessa's Sixth Omnibus Motion at this late date would be prejudicial -- adversely affecting Contessa's assessment of its liabilities under the confirmed Plan and substantially delaying final consummation of the Plan and entry of a final decree in the case.  As previously stated, Contessa has made distributions in full and complete payment of all but two Class 3 allowed unsecured non-priority claims under the Plan.  Contessa has less than $12,000 in its bank account.  Given the size of the disputed portion of Riverside's Claim # 73, Contessa would be forced to recalculate its distribution on account of allowed Class 3 claims and claw back over $59,600 in funds already distributed to claimants on account of allowed Class 3 claims to satisfy Riverside's Claim # 73 in the event reconsideration is granted, the objection is overruled, and the claim is allowed in its entirety.  Class 3 claimants will also be prejudiced, having received distributions from Contessa on account of their allowed claims and having cashed such distribution checks in reliance on Contessa's Plan and Contessa's letter that accompanied each such distribution.  Furthermore, Riverside accepted the benefit of the distribution made by Contessa on account of

---

[21]  Mot. 14:12-17.

[22]  Id. 14:21-23.

the allowed amount of Claim # 73 <u>before</u> complaining that it had been misled regarding the

status of Contessa's Sixth Omnibus Motion.  Given the court's finding of prejudice, this <u>Pioneer</u>

factor weighs in favor of Contessa.

     3.  <u>Reasons for the Delay, Including Whether it was within the Movant's Reasonable</u>

<u>Control</u>

     Riverside claims that it "had no idea that [Contessa] had filed the Sixth Omnibus Motion

and placed Claim # 73 back on this Court's calendar."[23]  Riverside points to a "continued

exchange" of emails between Contessa and Riverside after the filing of the Sixth Omnibus

Motion which, according to Riverside, "supported Riverside's belief that the parties were still in

the midst of negotiating."[24]

     At the hearing on June 5, 2012, the court questioned Riverside's counsel regarding the

specific acts or omissions by Contessa that ostensibly misled Riverside into failing to respond to

Contessa's Sixth Omnibus Motion or to attend the hearing on March 21, 2012:

> Court:  I did not see anything in the declaration in support of the motion
> where Riverside is taking the position that Riverside or ASM was not properly
> served with the [Sixth Omnibus Motion] and notice of the hearing.
>
> Counsel:  No, they haven't taken that position.  I do believe it was
> properly served.  They just . . . they did disregard it out of, you know, and shame
> on them for not.  But I think it was the result of the communication that had been
> ongoing and the course of conduct between the parties, where the previous
> objection had been continued and, at one point, taken off calendar with the option
> to re-notice it and they certainly did that.  But to its own detriment it relied on
> these communications rather than the pleadings that were served.
>
> Court:  The communications prior to the time that the Sixth Omnibus
> Motion and notice of hearing were served on your client?  Or communications
> after that fact?
>
> Counsel:  There were communications after.  There were two
> communications.  An email on February 24th.  The Sixth Omnibus [Motion] was
> filed on February 16th and served on February 16, 2012.  There were two

---

[23] <u>Id.</u> 8:20-21.

[24] <u>Id.</u> 8:24-26.

subsequent communications via email on February 24th and 29th which are included in the declaration of Robin Stern.

Court:  The two sentence email requesting that a disputed $22,000 promotional coupon be added back?

Counsel:  That's correct.  And a response that they disagreed.  And I think in that email on February 29th they could have said these settlement have concluded, protect yourself and protect your rights.  At no point did debtor's counsel make that representation that we're finished here and you should continue and that notice has been served – the Sixth Omnibus.

Court:  So your position basically is that, notwithstanding the Sixth Omnibus [Motion] that was filed and served and, in your words, disregarded, and the terms set forth in that objection and notice that says you must file a response with the court, the fact that the subsequent communications did not include similar language or similar representations misled your client into believing that they should continue to disregard?

Counsel:  That's basically our position . . . .

Court:  And then your client was served prior to the hearing with an agenda, isn't that correct?

Counsel:  That is correct.

Court:  And the agenda referred to the objection to your client's claim.

Counsel:  That is correct as well.

Court:  Was there anything in the objection that misled your client into not appearing at the hearing when, in fact, the agenda stated on its face that the matter would be taken up by the court that day?

Counsel:  Not to my knowledge, your Honor . . . .

Court:  Then there was a hearing at which your client did not attend or was represented, and an order was entered disallowing or reducing your client's claim. And my understanding is that a copy of the order was served on your client.

Counsel:  That's correct . . . .

Court:  And in addition to that, and I think prior to entry of the order, your client actually received a check in the mail that was the amount of the reduced claim which was consistent with the amount that the debtor had taken was the allowed amount of the claim under all of your negotiations from the inception.

Counsel:  That's also correct.

Court:  Which your client then cashed.

Counsel:  That's correct as well.  That's correct.

Court:  And took the benefit of that money.

Counsel:  That's correct.  Although the debtor would be hard pressed to say that they agreed to the reduced amount . . . .

Court:  Then after disregarding the notice, disregarding the objection, disregarding the agenda, not appearing at the hearing, receiving and cashing the check, and receiving the court's, the proposed order disallowing or reducing the claim, then your client took action.

Counsel:  After receiving the signed order . . . .

Riverside's counsel conceded that (1) Riverside received Contessa's Sixth Omnibus Motion and notice of the date and time of the hearing; (2) Riverside disregarded both the notice and the Sixth Omnibus Motion; (3) Riverside was not confused or misled by the substance of the Sixth Omnibus Motion and notice of hearing, nor by any actions, statements or omissions by either Contessa or its counsel during the negotiations preceding receipt of the Sixth Omnibus Motion; and (4) Riverside's claim that it failed to file written opposition to Contessa's Sixth Omnibus Motion and to appear at the hearing thereon resulted from excusable neglect or, alternatively, fraud or misrepresentation by Contessa, hinges <u>solely</u> on the fact that Alderson did not include in his February 29th email to Ellman a statement to the effect that negotiations regarding the allowed amount of Claim # 73 are concluded.

First, a cursory review of the email correspondence between the parties prior to the Sixth Omnibus Motion reveals that, despite an exchange of documents and comprehensive discussions regarding the claim, neither party was willing to compromise its position regarding the actual amount of the claim.  Neither party budged materially fom their respective positions regarding the proper allowed amount of Claim No. 73.  For example:

1. Alderson's email of December 22, 2011 to Ellman reflects debtor's belief that Claim # 73 should be allowed only in the amount of $52,647.86.[25]

2. Ellman's email of January 16, 2012 to Alderson reflects the claimant's belief that Claim # 73 should be allowed in the amount of $104,650.83.[26]

3. Alderson's email to Ellman on February 7, 2012 (and Stern of Riverside) again reflects debtor's belief that Claim # 73 should be allowed only in the amount of $52,647.86.[27]

Second, Contessa served Riverside with the Sixth Omnibus Motion and notice of hearing in accordance with the rules. Riverside had proper notice that Contessa was formally objecting to Claim # 73 and seeking an order from the court reducing the allowed amount of Claim # 73 to $52,647.86. Riverside admittedly disregarded the Sixth Omnibus Motion and notice of hearing. Even after receiving the February 29th email, Riverside received the Third Notice of Agenda advising it that Contessa's objection to Claim # 73 would be heard by the court on March 21, 2012. Riverside disregarded the Third Notice of Agenda and did not attend the hearing. The fact that Riverside and Contessa may have been involved in ongoing discussions regarding the allowed amount of Claim No. 73 prior to Contessa's Sixth Omnibus Motion did not excuse Riverside from complying with the LBRs by filing a timely response, attending the hearing, or seeking a continuance.

Third, Riverside's assertion that it disregarded Contessa's Sixth Omnibus Motion and notice of hearing in reliance on the absence of a statement in Alderson's February 29th email that settlement negotiations were concluded is incomprehensible, particularly given the unambiguous language of the Sixth Omnibus Motion and notice and the specific requirements of the court's LBRs. This is not a case where the deadline to respond was missed due to ill health or disability, a delay in the mail, a miscommunication or failure to communicate with the client, a misguided

---

[25] Opp'n Alderson Decl. ¶ 7, Ex. 1.

[26] Stern Decl. ¶ 9, Ex. A.

[27] Opp'n Alderson Decl. ¶ 12, Ex. 6.

instruction from a court clerk or judicial officer, or a "dramatic ambiguity" in a notice, communication between the parties, or between relevant procedural rules.  Because Riverside's ability to timely respond to Contessa's Sixth Omnibus Motion was squarely within its control, the court weighs this <u>Pioneer</u> factor heavily in favor of Contessa.

      4.  <u>Whether the Movant Acted in Good Faith</u>

      Riverside  asserts that "[i]t is beyond cavil that [it] acted in good faith . . . ."[28]  Other than the fact that Riverside cashed Check No. 160338 and took the benefit of Contessa's $52,647.86 distribution on account of Claim # 73 before seeking the relief requested in the Motion, there is no reason to believe Riverside acted in bad faith in filing the Motion.

      In its reply, Riverside cites <u>Keegel v. Key West & Caribbean Trading Co., Inc.</u>, 627 F.2d 372 (D.C. Cir. 1980) and <u>Friedman & Feigler, L.L.P. v. Ulofts Lubbock, LLC</u>, 2009 U.S. Dist. LEXIS 97341 (N.D. Tex. 2009) for the proposition that "good faith reliance on settlement discussions, punctuated by . . . diligence in securing continuances while engaged in those settlement discussions, form a basis for the type of excusable neglect that courts will allow when excusing a missed deadline."[29]

      In <u>Keegel</u>, the plaintiff obtained the defendant's default after a status conference at which the court directed the plaintiff to do so.  The court did not have knowledge of plaintiff's written agreement with the defendant that due to settlement negotiations defendant would have an extension of time to an agreed date to file an answer and that plaintiff would not seek a default judgment prior to such agreed date.  The D.C. Circuit reversed the district court's order denying the defendant's motion to set aside the default, holding that "the default was not willful, plaintiff would not be prejudiced if it were set aside, and defendants had alleged a meritorious defense." 627 F.2d at 374.

      In <u>Friedman & Feigler</u>, the court treated defendant's response in opposition to plaintiff's motion to strike its untimely answer as a motion seeking an extension of time to respond under

---

[28]  Mot. 12:27.

[29]  Reply 9:19 – 10:27.

F.R.Civ.P. 6(b)(1)(B).  The court then granted the defendant's motion based on the facts of the

case.  According to the evidence, the defendant failed to file a timely answer after his attorney

had contacted plaintiff's counsel during ongoing settlement negotiations seeking an extension of

time to respond and then, without obtaining an agreement regarding an extension, defaulted after

assuming that an extension would be granted.  In so holding the court stated:

> Henning's counsel's efforts to secure an extension of time to answer
> demonstrated Henning's good faith.  Henning's counsel's assumption that he
> could file a late responsive pleading, without an explicit agreement to that effect,
> was careless, but it fell within the Rule 6(b)(1)(B) excusable neglect standard.
> Additionally, the Clerk of Court entered a default against Henning before he was
> required to file a responsive pleading.  This could also constitute excusable
> neglect because a premature entry of default might reasonably lead a defendant to
> believe that filing an answer would be futile until the entry of default was set
> aside.  Finally, the court held that plaintiff would not suffer prejudice from filing
> an untimely responsive pleading because Henning's delay was short (he attempted
> to file a responsive pleading fewer than three weeks after the deadline had
> passed).

2009 U.S. Dist. LEXIS 97341. * 4-5.  The court noted that "[a] party's good faith but mistaken

reliance on settlement negotiations to defer the expense and effort of filing an unnecessary

responsive pleading can constitute excusable neglect in appropriate circumstances."  Id. * 6.

Neither Keegel nor Friedman & Feigler addressed reconsideration of an order under Rule

60(b).  To the extent that each case involved relief from the court due to ongoing settlement

negotiations, the facts are distinguishable from the matter before the court.  There is no evidence

that Contessa and Riverside had an explicit agreement extending the deadline for Riverside to

respond to Contessa's Sixth Omnibus Motion to a date certain pending ongoing settlement

negotiations.  Nor are there facts upon which the court can make a finding that Riverside could

reasonably have had a good faith belief that such an agreement existed between the parties when

it disregarded Contessa's Sixth Omnibus Motion and notice of hearing.

While one factor tips in favor of Riverside, the court balances the totality of the Pioneer

factors in favor of Contessa and finds that Riverside has not discharged its burden to establish

that its failure to timely respond to Contessa's Sixth Omnibus Motion was the result of excusable

neglect.  Therefore, Riverside's Motion for reconsideration of the Sixth Omnibus Order under

Rule 60(b)(1) is denied.

    C.  Rule 60(b)(3)

    Under Rule 60(b)(3), the court may grant relief from an order or judgment on the grounds

of "fraud . . . misrepresentation, or other misconduct by an opposing party."  FRCP 60(b)(3).  To

obtain relief under Rule 60(b)(3), "the moving party must prove by clear and convincing

evidence that the [order] was obtained through fraud, misrepresentation, or other misconduct and

the conduct complained of prevented the losing party from fully and fairly presenting the

defense."  De Saracho v. Custom Food Machinery, Inc., 206 F.3d 874, 880 (9th Cir. 2000).

"Rule 60(b)(3) 'is aimed at judgments which are unfairly obtained, not at those which are

factually incorrect.'"  Id. (quoting In re M/V Peacock, 809 F.2d 1403, 1405 (9th Cir. 1987)).

    Riverside argues that Contessa's "actions . . . qualify as the type of 'fraud,

misrepresentation, or misconduct' that justif[ies] vacating the Sixth Omnibus Order with respect

to Claim # 73."[30]  However, Riverside has not presented evidence sufficient to satisfy either

prong of the two-part test for relief from the Sixth Omnibus Order under Rule 60(b)(3).

    There is no evidence (let alone clear and convincing evidence) that Alderson, by not

specifically advising Riverside in his February 29th email that settlement negotiations had

concluded, intended by his silence to conceal material facts from Riverside regarding the status

of negotiations between Contessa and Riverside regarding the allowed amount of Claim # 73 and

to mislead Riverside regarding Contessa's intention to proceed with its objection, particularly

given the facts and circumstances that immediately preceded and followed the February 29th

email.  True, Alderson as a matter of professional courtesy could have reiterated in his February

29th email that Contessa's Sixth Omnibus Motion was pending before the court, that Contessa

was going forward with the hearing on March 21, 2012, and that Riverside should file a timely

response as directed in the notice and in accordance with LBR 9013-1(f).  But the fact that

Alderson did not do so is not sufficient, of and by itself, to support a finding that Alderson

---

[30]  Id. 12:3-5.

intended to conceal such facts from Riverside or to lull Riverside into believing that Contessa would not go forward with its objection at the hearing on March 21, 2012.  Nor is there evidence that Riverside was precluded from fully and fairly presenting its defense to Contessa's Sixth Omnibus Motion by what it claims was not included in Alderson's February 29th email. Riverside admits that it received Contessa's Sixth Omnibus Motion and notice of the March 21, 2012 hearing, but it chose to disregard the motion and notice rather than file and serve a timely response.

### III.  CONCLUSION

Based upon the foregoing, Riverside has failed to establish a basis for relief from the Sixth Omnibus Order under either Rule 60(b)(1) or (b)(3).  Accordingly, an order will be entered denying the relief requested in the Motion.

###

DATED: June 13, 2012

_____
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled    **MEMORANDUM DECISION**    was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **06-13-2012**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Allison R Axenrod    allison@claimsrecoveryllc.com
- Bart M Botta    bart@rjlaw.com
- Jacquelyn H Choi    jchoi@swjlaw.com
- Ronald Clifford    rclifford@blakeleyllp.com, ecf@blakeleyllp.com;seb@blakeleyllp.com
- Bradley L Cornell    bcornell@cornell-lawfirm.com
- Brian        L        Davidoff        bdavidoff@davidoffgold.com, bdavidoff@davidoffgold.com;jreinglass@davidoffgold.com;calendar@davidoffgold.com
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Kristin Knox Esche    kristinknoxesche@dwt.com, lisahernandez@dwt.com
- M Douglas Flahaut    flahaut.douglas@arentfox.com
- Jeffrey        B        Gardner        Jeff.Gardner@sbgk.com, mary.do@sbgk.com;christina.valenzuela@sbgk.com
- Barry S Glaser    bglaser@swjlaw.com
- Matthew A Gold    courts@argopartners.net
- Michael I Goldberg    info@sonarcredit.com
- Jeffrey M Goldman    goldmanj@pepperlaw.com, allenjs@pepperlaw.com
- Richard        H        Golubow        rgolubow@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com
- Jeffrey S Goodfried    jgoodfried@perkinscoie.com
- Jay W Hurst    jay.hurst@oag.state.tx.us, sherri.simpson@oag.state.tx.us
- Peter L Isola    peterisola@dwt.com
- Derek J Kaufman    derek.kaufman@mto.com
- John H Kim    jkim@cookseylaw.com
- Andy Kong    Kong.Andy@ArentFox.com
- Maya Krish    mkrish@cactuscollect.com
- Mette H Kurth    kurth.mette@arentfox.com
- Ian        Landsberg        ilandsberg@landsberg-law.com,        bgomelsky@landsberg-law.com;ssaad@landsberg-law.com
- Katie A Lane    lane.katie@arentfox.com
- Kenneth G Lau    kenneth.g.lau@usdoj.gov
- Michael M Lauter    mlauter@sheppardmullin.com
- Elan S Levey    elan.levey@usdoj.gov, louisa.lin@usdoj.gov
- Craig        A        Loren        aloren@debtacquisitiongroup.com, bschwab@debtacquisitiongroup.com;jsarachek@debtacquisitiongroup.com
- Nicole S Magaline    nmagaline@schiffhardin.com
- Scotta E McFarland    smcfarland@pszjlaw.com, smcfarland@pszjlaw.com
- Frank F McGinn    ffm@bostonbusinesslaw.com
- Lawrence        H        Meuers        lmeuers@meuerslawfirm.com, sdefalco@meuerslawfirm.com;nbucciarelli@meuerslawfirm.com;lcastle@meuerslawfirm.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Bertrand Pan    bertrand.pan@dlapiper.com

- David M Poitras    dpoitras@jmbm.com
- Jeffrey N Pomerantz    jpomerantz@pszjlaw.com
- Kurt Ramlo    kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com
- Christopher O Rivas    crivas@reedsmith.com
- Katherine A Traxler    katietraxler@paulhastings.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Elizabeth Weller    dallas.bankruptcy@publicans.com
- Marc    J    Winthrop    mwinthrop@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com
- Craig A Wolfe    kdwbankruptcydepartment@kelleydrye.com

☐ Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

☐ Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page